KATSKY KORINS LLP
605 Third Avenue
New York, New York 10158-0038
(212) 953-6000
Steven H. Newman, Esq.
Robert A. Abrams, Esq.

*Attorneys for MLF3 Atlantic LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

In re                                                          Chapter 11

     ATLANTIC 111ST LLC,                          Case No. 8-19-73137 (reg)

                Debtor.

------------------------------------------------------------------------x

## MOTION FOR AN ORDER (I) CONVERTING THIS CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(b), AND (II) GRANTING RELATED RELIEF

     MLF3 Atlantic LLC ("**Lender**"), by its undersigned counsel, submits this motion for the entry of an Order: (i) converting the Chapter 11 case of Atlantic 111st LLC (the "**Debtor**") to a case under Chapter 7 pursuant to §§ 1112(b)(1) and 1112(b)(4)(A), (B), (E), and (J) of the Bankruptcy Code, and (ii) granting Lender related relief (the "**Motion**").

## PRELIMINARY STATEMENT

     1.     The Debtor and its principal Jarnail Singh have engaged in a shameful pattern of intentional deceit and falsehoods in this case and have made clear through their multiple wrongful acts that they cannot be trusted and are unable to accomplish anything other than delay for the sake of delay.

     2.     After this single asset real estate Debtor's *fifth* attempt to confirm its Fifth

Amended Plan of Reorganization failed at the July 29, 2020 confirmation hearing (the "**Confirmation Hearing**"), due to among other things, (i) a complete lack of feasibility, (ii) the Debtor's inability to obtain its long promised financing, and (iii) Lender's unearthing that the Debtor secretly hid in its affiliate, Atlantic Commons LLC ("**Commons**")[1], a 50% ownership interest in its real property, the Debtor, Commons, Jarnail Singh, certain other third-parties related to Mr. Singh, and the Lender announced on the record that they reached a global settlement agreement, subject to documentation. Importantly, at the Confirmation Hearing, the Court made crystal clear that if the settlement agreement was not documented without protest and promptly presented to the Court for consideration, the Court would immediately convert this single asset real case from one under Chapter 11 to a case under Chapter 7 of the Bankruptcy Code. Specifically, the Court said:

> **THE COURT**:  Okay.  Let me -- you guys figure it out, do a stip. But I'm telling you now, I do not want to see the next hearing or any hearing between now and your dates that create any difficulties, litigation, the case is converted.  I was going to convert it today, but I have no idea why it's still in 11.  I would almost prefer a Chapter 7 trustee to watch this, but I don't want to put that layer on it as long as you guys cooperate.
>
> But the first hint that what appears to be a smooth deal because what's to prevent Richie Rich from filing down the road?  What's to prevent any number of things -- all of which can happen?  I'm fine with a deal and I'll give you the time because why not?  But I'm telling you, if anybody comes back and says you can't reach an agreement, which is fine, or during the course of this, people come back to me and say we had issues between each other, unless those issues have to do with what lunch was, I'm converting the case.  Then you will have a Chapter 7 trustee who then will deal with all of this directly and your whole agreement goes out the

---

[1] Commons is also the only creditor in this case other than the Lender, having acquired an assignment of such claim through a secret transaction between Harbans Singh, the Debtor and others as set forth below. Not only did the Debtor hide from the Court and the Lender that Commons held an unrecorded 50% interest in the Debtor's real property (which it secretly acquired from Harbans Singh), the Debtor hid its controlling relationship over Commons and used the very ballot cast by Commons as the Debtor's sole impaired accepting class when it filed its Certification of ballots (See ECF No. 223) in support of its attempt to approve Fifth Amended Plan.

window because then you won't have an opportunity to pay off
anything less because he'll cut a deal with the secured creditor.

So, I'll give you your time, but I'm telling you, and you can fight
among yourselves as long as I don't know it, but I do not want to
see in my court any more litigation or fighting over this matter.
The secured creditor -- and I give you all credit -- he's giving Mr.
Singh an opportunity. I've been involved in many of these.
Sometimes they work, sometimes they don't. They almost never
go smoothly. But in this case, any bump in the road that I have to
deal with will result in a conversion of the case.

So, fight all you want, just don't let me see it. I just don't want to
see it. But if you need the Court, you're getting converted. So
that's -- Mr. Singh, I'm warning your lawyers and the secured
creditor know just what I said. If anything in these negotiations --
and I'm not saying you have to do something you don't want to do.
As Mr. Ackerman has probably told you, never do anything you
don't think you can do or want to do. But this case from my mind
is over. You got this one shot, if you do it fine. If you don't, it's
going to a Chapter 7 trustee. I won't dismiss the case, I won't do
anything, but I'm not hearing any more litigation on this case.
None.

So, if your junior creditor wants to get paid or he wants to hold
something up, let him be warned if I convert the case today, he's
going to get nothing. So, that's up to him. But I can't be any
clearer. I'm glad you reached an agreement. I hope it works for
everybody. But I'm done. Court's done with this. We're not
doing any more litigation. It will last a minute and a half. The
case will be converted to a Chapter 7.

*See*, Exhibit 1, pp. 9-11.

3.    Notwithstanding the Court's admonishment, the Debtor proceeded to drag its feet

in documenting the settlement and failed to honor its promise under the settlement to cause its

affiliate, Commons, to immediately execute and record a deed transferring to the Debtor

Common's interest in the Debtor's real property. The Debtor failed (i) to have Commons (its

undisclosed puppet, used by Jarnail Singh to wrongfully mislead the Court and the Lender and

manipulate this case, as set forth below) convey to the Debtor its 50% interest in the Debtor's

real property, and (ii) to sign a settlement despite multiple assurances from its counsel it would do so. Accordingly, after more than a full month of active negotiations, the Lender advised the Court on August 31, 2020 that the parties were unable to reach an agreement.

4.      As a consequence, on September 1, 2020, the Court, *sua sponte*, supplemented the U.S. Trustee's August 9, 2019 motion to convert this Chapter 11 case (*see*, ECF No. 56) and issued its own Order to Show Cause, dated September 1, 2020 (ECF No. 227) (the "**Court's OSC**"), a copy of which is annexed hereto as Exhibit 2. Pursuant to the Court's OSC, the Court expressly determined that "cause" exists pursuant to 11 U.S.C. § 1112(b) to convert the Debtor's Chapter 11 case to Chapter 7, and directed the Debtor to show cause why the Debtor's Chapter 11 case should not be converted.

5.      Just minutes before the September 16, 2020 hearing on the Court's OSC, the Debtor finally caused Commons to release for recording a deed to the property and the fully signed proposed Stipulation and Order (the "**Settlement Agreement**") and all related transaction documents. A copy of the Settlement Agreement with all exhibits thereto is annexed hereto as Exhibit 3.[2] At the hearing on the Court's OSC, the Court (i) advised that it would approve the settlement only pursuant to a confirmed a plan and directed the Debtor to promptly file a sixth amended plan of reorganization and related disclosure statement incorporating the terms of the Settlement Agreement, and (ii) adjourned all pending matters, including the Court's OSC, to October 21, 2020.

6.      Unfortunately, the Debtor seized upon the Court's adjournment of the Court's

---

[2] As detailed below, under the terms of the Settlement Agreement, among other things, the Debtor was afforded an opportunity to refinance the Atlantic Property (defined below) and pay-off Lender at a discounted amount by date certain. In the event Lender was timely paid off, the Debtor would retain ownership of the Atlantic Property. However, in the absence of paying the Lender by November 26, 2020, the Atlantic Property would immediately proceed to an auction on December 15, 2020 pursuant to § 363(b) of the Bankruptcy Code or pursuant to a state law foreclosure sale. Given the Debtor's historical efforts to protract this bankruptcy proceeding, a critical component of the Settlement Agreement was a fixed timeline for events to occur.

OSC as an opportunity for further delay and to seek to re-trade that which the parties agreed to after a costly and extended negotiation. Further, while the Court afforded the Debtor more than a month to file its sixth amended plan of reorganization and related disclosure statement, in contravention of the Court's direction, no plan or disclosure statement whatsoever was filed prior to the adjourned October 21, 2020 hearing. Moreover, the Lender belatedly learned that the Debtor's affiliate, BMSL Management LLC ("**BMSL**"), which entity mortgaged certain property to the Lender to secure the Debtor's debt to Lender, filed for chapter 11 relief before this Court on October 14, 2020, after Jarnail Singh executed a voluntary Chapter 11 petition on behalf of BMSL. The Settlement Agreement expressly provided that the bankruptcy filing by BMSL is an event of default under the Settlement Agreement. Thus, the Debtor and Mr. Singh willfully breached the Settlement Agreement they just signed.

7.    Frustrated with the Debtor's blatant breach of the settlement and its continued delay tactics, the Lender advised the Debtor's counsel that the Lender fully intended to advise the Court at the adjourned October 21, 2020 hearing that the Lender supported the Court's OSC and the U.S. Trustee's motion to convert. However, unbeknownst to the Lender, more gamesmanship was afoot. Without Lender's knowledge or consent, Debtor's counsel communicated *ex parte* with the Court and requested an adjournment of the October 21, 2020 hearing; that request was granted. The Lender was never told of the Debtor's *ex parte* communications with the Court even though the Lender's counsel was in constant contact with the Debtor's counsel in the several days leading up to the October 21, 2020 hearing (including extended calls at 9:30 p.m. the night call before and at 7:30 a.m. on the morning of that hearing). The Lender first learned in open Court during the Court's October 21, 2020 hearings that all matters related to this case had been adjourned. Immediately after the hearing, Debtor's counsel,

with the Lender's counsel on the phone, left a detailed voice mail message with Chambers apologizing for blind siding the Lender and for previously calling the Court *ex parte* and advising that the Lender consented to an adjournment when it had not. The Court scheduled November 18, 2020 as an adjourned date for all pending matters.

8.    In light of (a) the Court's prior determination that cause exists to convert this case, (b) Debtor's willful breach of the Settlement Agreement, (c) Debtor's significant operating losses and a total absence of a reasonable likelihood of rehabilitation, (d) Debtor's refusal to timely file a sixth amended plan of reorganization and related disclosure statement consistent with the terms of Settlement Agreement within the time frame fixed by the Court, (e) Debtor's misrepresentations to the Court and its manipulation of the bankruptcy process, and (f) gross mismanagement, the Lender hereby joins in the U.S. Trustee's motion to convert and the Court's OSC, and separately moves this Court to convert this case  for "cause" pursuant to § 1112(b)(4)(A), (B), (E) and (J).

9.    Cause exists to convert this case pursuant to § 1112(b)(4)(A) of the Bankruptcy Code. As set forth in greater detail below, since its bankruptcy filing on April 18, 2019 (the "**Petition Date**"), this SARE Debtor has had negative cash flow of $198,498.23 through September 20, 2020 (*see*, ECF No. 230). Further, at the July 29, 2020 Confirmation Hearing, the Debtor withdrew, with prejudice, its Fifth Amended Plan of Reorganization and admitted that the Debtor lacked the ability to confirm any plan. It further affirmatively represented to the Court that it would not file another plan of reorganization that would be inconsistent with the terms of the Settlement Agreement. Consequently, § 1112(b)(4)(A) of the Bankruptcy Code is satisfied because there exists a substantial and continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.

10.    Cause also exists to convert this case pursuant to §§ 1112(b)(4)(E) and (J) of the

Bankruptcy Code. On the return date of the Court's OSC, the Court directed the Debtor to promptly file a proposed Sixth Amended Plan and related disclosure statement so that it could be confirmed at or about the adjourned October 21, 2020 hearing date. Despite the Court's direction, as of this date, the Debtor has failed to file a proposed sixth amended plan of reorganization and a disclosure statement. Consequently, §§ 1112(b)(4)(E) and (J) of the Bankruptcy Code are satisfied because the Debtor has failed to comply with the directions of the Court and file a sixth amended plan and related disclosure statement within the timeframe fixed by the Court.

11.     Moreover, Debtor has made material misrepresentations to the Court. For example, Lender has only recently learned that the Debtor manipulated the Bankruptcy Court by not disclosing in its Petition, its Schedules of Assets and Liabilities, its various iterations of the Debtor's disclosure statement, or anywhere else in this bankruptcy proceeding that the Debtor's sole general unsecured creditor -- Commons -- is, in fact, an insider of the Debtor and Jarnail Singh, since it is a shell entity created by Jarnail Singh and his long time lawyer, Jay Yackow, Esq., *and controlled by Jarnail Singh through Jay Yackow, Esq*. In other words, notwithstanding that the Debtor filed a certification of ballots that Commons is not an insider and had the capacity to vote in favor of the Debtor's now withdrawn Fifth Amended Plan, in truth, Commons was used as a secret shill in this bankruptcy case to create a wholly fabricated accepting impaired class of creditors for cram down purposes. Now that it is clear that the Lender and Debtor cannot agree, it is clear that even if the Debtor were to file a new plan that is inconsistent with the Settlement Agreement, such plan cannot be confirmed over the Lender's objections because Commons (the only known creditor in this case, and an entity controlled by Jarnail Singh) cannot vote as an impaired accepting class. Accordingly, to preserve the integrity

of the Bankruptcy Court, the Debtor's Chapter 11 case should be converted for this additional reason.

12.     In the end, after being in this Chapter 11 proceeding for nearly nineteen (19) months, the only goal achieved by this single asset real estate Debtor is delay and costly scorched earth litigation. The Court should put an end to the Debtor's and Mr. Singh's gamesmanship and convert this case for cause pursuant to §§ 1112(b)(4)(A), (B), (E) and (J).

**BACKGROUND**

### A.  **The Loan Documents**

13.     Lender is the owner and holder of a Purchase Money Note, dated May 3, 2011, made by the Debtor in the principal amount of $2,000,000.00 (the "**First Note**"), which First Note is secured by a Purchase Money Mortgage, dated May 3, 2011 (the "**First Mortgage**") encumbering the Debtor's property located at 110-19 Atlantic Avenue, Richmond Hill, New York 11418 (the "**Atlantic Property**"). The First Note is further personally guaranteed by a Guaranty of Jarnail Singh, dated May 3, 2011.

14.     Lender is also the owner and holder of a Second Mortgage Note (the "**Second Note**"), in the principal amount of $490,000.00, which Second Note is secured by a Second Mortgage (the "**Second Mortgage**") encumbering the Atlantic Property, and a Collateral Mortgage made by Jarnail Singh, his wife Salya Kaur, and BMSL (the "**Collateral Mortgage**") encumbering real property known as 131-09 Hillside Avenue, Richmond Hill, New York 11418 (the "**Hillside Property**"), and real property known as 95-25 120th Street, Richmond Hill, New York 11419 ( (the "**120th Street Property**"; and, together with the Atlantic Property and the Hillside Property, the "**Properties**"). The Second Note is also personal guaranteed by a Guaranty of Jarnail Singh. The First Note, the First Mortgage, the Second Note, the Second Mortgage, the

Collateral Mortgage, the Guarantees, and related loan documents are collectively referred to as the "**Loan Documents**").[3]

## B.  The Pre-Petition Defaults

15.    Almost immediately following the execution of the Loan Documents nine (9) years ago, the Debtor defaulted on its obligations by failing to repay the monthly principal and interest payment due July 1, 2011, and each month thereafter, constituting an event of default (the "**Existing Defaults**").

16.    On or about June 1, 2012, the Debtor entered into a Forbearance Agreement (the "**Forbearance Agreement**") concerning the Existing Defaults which, among other things, included an acknowledgment of the Existing Defaults and waiver of all defenses related to the Loan Documents. However, the Debtor defaulted under the Forbearance Agreement by failing to make the payments due (the "**Forbearance Defaults**").

## C.  The First Foreclosure Action

17.    **Commencement of the Actions**. As a result of the Forbearance Defaults and Existing Defaults, pursuant to the terms of the Loan Documents, Lender's predecessor-in-interest declared the balance of the principal indebtedness immediately due and payable and commenced a foreclosure action on December 30, 2015 in the State Court under Index No. 713435/2015 in the matter originally styled *Bibi N. Ahmad v. Atlantic 111st LLC, et. al.* (the "**First Foreclosure Action**").

18.    **Action Stayed Due To Jarnail Singh Bankruptcy**.  On December 9, 2016, Jarnail Singh, the guarantor, filed a personal bankruptcy petition which automatically stayed the

---

[3] To avoid clogging the Court's docket with Loan Documents that have already been filed with the Court, Lender respectfully refers the Court to Lender's motion to vacate the automatic stay which attaches the relevant Loan Documents (*see*, ECF No. 126) and such motion and Loan Documents are hereby incorporated by reference herein.

First Foreclosure Action. The Guarantor's personal bankruptcy case (Case No. 16-75721 (reg)) was dismissed by this Court on January 24, 2017 - - the 46th day after the filing of such petition due to his failure to file schedules.[4]

19.    **Final Judgment of Foreclosure Was Entered By State Court**. On December 27, 2018, the State Court entered a Judgement of Foreclosure and Sale confirming the Referee's Report and ordering the sale of the Atlantic Property at public auction by and under the direction of the appointed referee, free and clear of the interests of all persons. The Judgment of Foreclosure and Sale is now final and non-appealable.

20.    **Foreclosure Sale Scheduled**. Pursuant to the Foreclosure Judgment, the Lender scheduled the Foreclosure Sale of the Atlantic Property for April 19, 2019.

21.    **Debtor Sought and Failed to Obtain an Injunction**. On April 15, 2019, the Debtor filed an application by order to show cause seeking to stay the Foreclosure Sale. However, that application was denied by the Foreclosure Court.

22.    **Debtor Filed Petition the Day Prior to the Sale**. One day prior to the scheduled foreclosure sale, on April 18, 2019, the Debtor filed this bankruptcy proceeding.

D.  **The Second Foreclosure Action**

23.    As a result of the Forbearance Defaults and the Existing Defaults, pursuant to the terms of the Loan Documents, Lender declared the balance of the principal indebtedness immediately due and payable and on September 9, 2016 commenced the Second Foreclosure Action in the State Court under Index No. 710813/2016 in the matter originally styled *MLF3 Atlantic LLC v. Atlantic 111st LLC, et. al*.  The Second Foreclosure Action was still pending at the time the Debtor commenced this bankruptcy proceeding.

---

[4] Mr. Singh is no stranger to the bankruptcy process. His earlier bankruptcy petition (Case No. 09-76782) was also dismissed as a result of his failure to pay the filing fees for his Chapter 13 proceeding and failure to file schedules.

## **THE DEBTOR'S WRONGFUL CONDUCT IN THIS CHAPTER 11 CASE**

24.   Since the Petition Date, the Debtor has made repeated misrepresentations to the

Court and engaged in dilatory tactics. For example,

a.   In its initial Petition, the Debtor conceded that it should be designated "single asset real estate" case ("**SARE**"). *See*, ECF No. 1, Question 7A. It subsequently amended its Petition and falsely represented that it no longer was SARE. This bad faith litigation tactic necessitated motion practice, and more than seven months later, in an *unopposed* motion, the Court issued an Order dated November 19, 2019, finding that the Debtor is a SARE. *See*, ECF No. 124.

b.   In connection with the Debtor's then pending plan of reorganization and claims objection motion, the Court approved a Stipulated Scheduling Order Regarding Motions and Discovery, dated December 3, 2019 (ECF No. 128) establishing the form, manner and timing of expedited discovery (the "**Consent Order**"). That Consent Order and discovery requests made to the Debtor, Jarnail Singh, and entities that Jarnail Singh controlled, including Richi Rich Palace NY Inc. (the "**Alleged Tenant**"), were promptly ignored by them necessitating motion practice. The Debtor's motions to quash subpoenas to Jarnail Singh and the Alleged Tenant were denied and Lender's motion to compel production of documents from the Debtor and Jarnail Singh were granted. Further, the Debtor's then counsel was disqualified due to its simultaneous representation of both the Debtor and Jarnail Singh. *See*, ECF No. 167.

c.   **Jarnail Singh, as the Debtor's sole member, made false sworn statements to this Court and the State Court. Specifically, in a sworn affidavit submitted in State Court, Jarnail Singh represented that there existed no written lease between the Debtor and the Alleged Tenant**. *See*, ECF No. 217, Exhibit 5. The Debtor further represented to this Court in its Schedules of Assets and Liabilities that it had no executory contracts. *See*, ECF No. 33, Schedules B and G.  In direct conflict with these sworn statements, and as part of its transparent attempt at derailing the Lender's ability to resolve this matter, Debtor now claims that it, as landlord, holds a 20-year lease with the Alleged Tenant dated December 5, 2013. *See*, ECF No. 207, p. 16.

d.   Jarnail Singh, as Manager of the Alleged Tenant, engaged in self-dealing by diverting rent payments due from the Alleged Tenant to the Debtor and instead wrote checks to himself and to family members. *See*, *e.g.,* ECF No. 217, Exhibit 35. Indeed, the checks written by Jarnail Singh on behalf of the Alleged Tenant occurred after a State Court appointed receiver demanded that the Alleged Tenant attorn to the Receiver.

e.   In addition to diverting rent from the Alleged Tenant, Jarnail Singh's mismanagement was compounded by the Debtor's admission that it did not

attempt to collect pre-petition rent from its sole tenant for years and that the Alleged Tenant owes pre-petition rent aggregating approximately $750,000. *See*, ECF No. 208, p. 16. Moreover, as evidenced by the Debtor's Operating Reports, the Alleged Tenant has only sporadically paid rent to the Debtor post-petition. The Debtor has made no attempt to collect the deficient post-petition rent receivable either.

25.    Lender has recently learned that the Debtor and Jarnail Singh have further

blatantly deceived the Lender and this Court in connection with their attempt to confirm its Fifth

Amended Plan of Reorganization. Among other things, we call to the Court's attention that:

a.    First, the Debtor never disclosed to the Bankruptcy Court that the Debtor only owned a fifty percent (50%) interest in the Atlantic Property; not in the Petition, not in the Debtor's Schedules of Assets and Liabilities, and not in the Fifth Amended Disclosure Statement. Rather, Harbans Singh also owned a 50% interest in the Atlantic Property.

b.    Second, the Debtor never disclosed to the Bankruptcy Court that, in the context of a foreclosure proceeding Six Lots LLC (an entity controlled by Harbans Singh) against Omni Home LLC, **the Debtor (without Bankruptcy Court authorization), Jarnail Singh, and Jay Yackow** entered into a Stipulation in Foreclosure Action (the "**Six Lots/Harbans Settlement Agreement**") dated September __, 2019 (sic) (but notarized on September 19, 2019) pursuant to which, among other things, **Jarnail Singh orchestrated (i) the transfer of Harbans Singh's 50% ownership interest in the Atlantic Property to Commons** -- a limited liability company as to which the sole member is Jay Yackow, Esq (Jarnail Singh's long time attorney and who signed the Six Lots/Harbans Settlement Agreement in such capacity); **and (ii) the transfer of Harbans Singh's unsecured claim -- the only unsecured claim in this case -- to Commons.** A copy of the Six Lots/Harbans Settlement Agreement is annexed as <u>Exhibit 4</u> hereto (¶ 10(b)(v)). [5]

c.    Third, the Debtor never disclosed to the Bankruptcy Court that Jay Yackow is Jarnail Singh's long-time lawyer or that Commons was controlled by Jarnail Singh. Indeed, in the context of the Debtor's refinancing efforts, the Debtor sent the Lender an affirmation from attorney Jay Yackow, dated September 20, 2020, in which attorney Yackow represented, among other things, that he is the attorney for six entities owned by Jarnail Singh (implicitly including the Debtor) which

---

[5] The Six Lots/Harbans Settlement Agreement was part of a global settlement and a series of agreements among a number of Harbans Singh affiliated entities and Jarnail Singh and his related entities. Of critical notes are that the Debtor was a signatory to the Six Lots/Harbans Settlement Agreement and the assignments by Harbans Singh to Commons of both the (i) the deed to the Atlantic Property and (ii) the sole unsecured claim in the Debtor's case were collectively attached as Exhibit C to the Six Lots/Harbans Settlement Agreement and were referred to therein as the "Atlantic Agreement".

entities own seventeen properties, and that according to Mr. Yackow, there would be sufficient funds to pay the Lender from the Debtor's refinancing which he expected to close by October 1, 2020. A copy of the Yackow Affirmation is annexed as <u>Exhibit 5</u>**.**

d.   Fourth, the Debtor never disclosed to the Bankruptcy Court that because Atlantic Commons is controlled by Jarnail Singh through his agent/puppet and long-time attorney Jay Yackow, that Commons was an insider and could not vote in favor of the Debtor's Fifth Amended Plan to create a valid accepting impaired class to cram down the Fifth Amended Plan pursuant to § 1129(b)(10) of the Bankruptcy Court. Nevertheless, the Debtor solicited the acceptance of its Fifth Amended Plan to Commons **and filed a Certification with the Court on July 27, 2020, a copy of which is annexed as <u>Exhibit 6</u> (ECF No. 223), confirming that Atlantic Commons properly voted in favor of such plan. In other words, the Debtor and Jarnail Singh deliberately manipulated the bankruptcy process by rigging the vote in this single asset real estate case and falsely representing by such certification that Commons was not an insider**.

e.   Fifth, the Debtor never disclosed to the Bankruptcy Court that the deed from Harbans Singh to Commons (the "**Harbans/Commons Deed**") pursuant to which Harbans Singh transferred his interests in the Atlantic Property was never recorded with the city registrar, and remained totally hidden from the world and in Jarnail Singh's possession and control through his attorney Mr. Yackow.

26.   Not only has the Debtor consistently made deliberate misrepresentations to the Bankruptcy Court, it has utterly failed to demonstrate any ability to reorganize or rehabilitate itself. In this regard, on June 30, 2020, the Debtor filed its Fifth Amended Plan (ECF No. 207) and related Fifth Amended Disclosure Statement (ECF No. 208), and on July 1, 2020, the Court approved the Debtor's Fifth Amended Disclosure Statement (ECF No. 211). However, the Court conditioned its approval by, among other things, directing the Debtor to deposit one day prior to the Confirmation Hearing $1,563,193.08 in escrow representing the supposed "undisputed" sum of Lender's claims. During a follow-up call among chambers and counsel for the parties the Court advised that it would not consider confirmation of Debtor's plan unless the $1,563,193.08 was deposited in escrow the day before the Confirmation Hearing.

27.   In the late afternoon of July 28, 2020 (one day prior to the Confirmation Hearing),

the Debtor advised the Bankruptcy Court that it failed to secure the required $1,563,193.08 deposit and that it would be unable to seek confirmation of the Fifth Amended Plan. As a consequence of that disclosure, the parties engaged in settlement discussions. In that regard, the parties placed on the record at the Confirmation Hearing a general outline of a settlement, subject to documentation. One of the critical parts of the settlement was that (i) the Harbans/Commons deed would be immediately recorded and (ii) Commons would immediately execute a deed conveying its interest in the Atlantic Property to the Debtor (the "**Commons/Debtor Deed**") and such deed would also be immediately recorded.  At the Confirmation Hearing, the Court made clear that if the parties were unable to reach settlement, it would convert this Chapter 11 to a case under Chapter 7. The Court said:

> But this case from my mind is over.  You got this one shot, if you do it fine.  If you don't, it's going to a Chapter 7 trustee.  I won't dismiss the case, I won't do anything, but I'm not hearing any more litigation on this case. None.

Exhibit 1, p. 11.

28.    True to its prior conduct, the Debtor continued to delay for over a month and kept coming up with new requests. Three times the Debtor's counsel represented to the Lender's counsel that the Debtor and Jarnail Singh would immediately sign the settlement agreement if a specified list of changes were made to the agreement; however, each time the Lender agreed to make such changes Jarnail Singh still refused to sign and still asked for yet more and more changes. Furthermore, the Debtor had still not recorded the deeds to the Atlantic Property. Accordingly, after more than one month of negotiations, the Lender advised the Court on August 31, 2020 that the parties were unable to reach a final settlement of the pending matters. Consequently, on September 1, 2020, this Court issued the Court's OSC, a copy of which is annexed as Exhibit 2 hereto.  Pursuant to the Court's OSC, the Court "determined that cause

exists pursuant to 11 U.S.C. § 1112(b) to convert the Debtor's Chapter 11 case to Chapter 7."

Specifically, the Court's OSC states, in relevant part:

> … the Debtor and MLF3 having advised the Court that the parties reached a global settlement of all matters pending in the Debtor's case, and the Court having directed the parties to submit a proposed stipulation of settlement to be so-ordered by the Court, and the Debtor and MLF3 having advised the Court that they have been unable to reach a final settlement of the pending matters, **and the Court having determined that cause exists pursuant to 11 U.S.C. § 1112(b) to convert the Debtor's Chapter 11 case to Chapter 7**,
>
> NOW THEEFORE, it is hereby
>
> ORDERED, that the Debtor and MLF3 show cause at **11:00 am** on the date of **September 16, 2020**…why the Debtor's case should not be converted to a case under Chapter 7 of the Bankruptcy Code…

Exhibit 2. (Emphasis supplied with regarding to the Court's determination).

29.     In the days prior to the hearing the Debtor advised that it wanted to go forward with the settlement and a revised agreement together with deeds were circulated for execution. However, Jarnail Singh refused to deliver signed deeds to the Atlantic Property or record them. The Lender advised the Debtor's counsel that the release of the deeds and the recording thereof was a condition precedent to the Lender's approval and execution of the Settlement Agreement and that it was prepared to ask for conversion of the case at the September 16th hearing. Miraculously, less than 30 minutes prior to the start of the September 16, 2020 hearing on the Court's OSC, Jarnail Singh's team authorized the release of the Harbans/Commons Deed and Commons/Debtor Deed to the title company and authorized them to be recorded.  A copy of the fully executed Settlement Agreement, with exhibits including the above referenced deeds, is annexed as Exhibit 3.  The Settlement Agreement, among other things, fixed and allowed the amounts of the Lender's two secured claims and provided the Debtor with an opportunity to

obtain financing and, if successful, pay a discounted amount to satisfy the Lender's allowed

claims. As set forth in greater detail in the Settlement Agreement,

    a.   The Debtor acknowledged that it was indebted to the Lender in connection with (i) the First Loan in the aggregate sum of $4,519,000 as of July 31, 2020, plus interest and related costs (See, <u>Exhibit 3</u>, ¶ 2(a)) and (ii) the Second Loan in the aggregate sum of $381,000 as of July 31, 2020, plus interest and related costs (See, <u>Exhibit 3</u>, ¶ 2(b));

    b.   Notwithstanding the foregoing, the Lender would accept a discounted payoff if it received, among other things, (x) $3,870,000 not later than September 27, 2020, (y) $4,020,000 not later than October 27, 2020, or (z) $4,120,000 not later than November 26, 2020 (See, <u>Exhibit 3</u>, ¶ 4(b));

    c.   In the absence of timely payment, the Lender was authorized to conduct an auction of the Atlantic Property pursuant to § 363 of the Bankruptcy Code or a state law foreclosure sale; however, no such sale would occur prior to December 15, 2020 if no Event of Default (as defined therein) had occurred (See, <u>Exhibit 3</u>, ¶ 5(a)); and

    d.   The Debtor and entities owned and controlled by Jarnail Singh, including BMSL Management LLC, represented and warranted that they would not file any petition under any chapter of the Bankruptcy Code, that any such filing would be deemed a bad faith filing, that the automatic stay would not apply to such bankrupt entity, and that such bankruptcy filing constitutes an Event of Default under the Settlement Agreement (See, <u>Exhibit 3</u>, ¶ 9(c)).[6]

30.    At the September 16, 2020 hearing, the Court directed the Debtor to file a Sixth

Amended Plan and related disclosure statement making the Settlement Agreement the

centerpiece of the Sixth Amended Plan. The Court adjourned all pending matters to October 21,

2020.

31.    Immediately after the September 16th hearing the Debtor's counsel advised that he

would draft an amended plan and circulate same. The Lender's counsel called or emailed

Debtor's counsel every few days to find out where the draft plan was and received assurances

that it would come soon and the sole reason for the delay was the busy schedule of Debtor's

---

[6] On October 14, 2020, BMSL Management LLC filed a Chapter 11 petition in the Bankruptcy Court (Case No. 8-20-73181) which filing constitutes an Event of Default under the Settlement Agreement.

counsel. However, three 3 weeks elapsed and no plan was in sight. In an effort to accommodate the Debtor's counsel's busy schedule, Lender's counsel took on the laboring oar (and significant cost) in drafting the Debtor's Sixth Amended Plan and related Sixth Amended Disclosure Statement. However, after delivering drafts of a plan and disclosure statement to Debtor's counsel on October 14, 2020, the Debtor once again attempted renegotiate the parties Settlement Agreement and engaged in more delay and gamesmanship. As a consequence, the Debtor never filed its proposed Sixth Amended Plan or proposed Sixth Amended Disclosure Statement.

32.    Moreover, in the early evening on October 16, 2020, Debtor's counsel called to advise that Jarnail Singh caused BMSL to file a chapter 11 petition through different counsel. He advised that it was done without his knowledge or the knowledge of Mr. Singh's personal attorney in this case, Fred Kantrow, and he acknowledged this was an Event of Default under the Settlement Agreement with the Lender.

33.    Frustrated with the Debtor's duplicitous acts, Lender fully intended to advise the Court at the October 21, 2020 hearing that it supported the Court's OSC and the U.S. Trustee's motion to convert. However, prior to being provided the opportunity to be heard, unbeknownst to the Lender, the Debtor contacted the Court *ex parte* and obtained an adjournment of the October 21, 2020 hearing. Lender first learned of Debtor's inappropriate communications with the Court in open Court at the October 21, 2020 hearing. The Court declined to reinstate the matters to the October 21, 2020 calendar and adjourned all matters to November 18, 2020.

34.    In the end, despite the fact that this Court has generously afforded this SARE Debtor nineteen (19) months to propose a confirmable plan, the Debtor has done nothing but make material falsehoods to the Lender and to this Court, and after *five* attempts, the Debtor still cannot confirm a plan of reorganization. Accordingly, the Lender supports the Court's OSC and

the U.S. Trustee's motion to convert this Chapter 11 case to a case under Chapter 7.

## ARGUMENT

## POINT I

### THE COURT HAS ALREADY DETERMINED THAT CAUSE EXISTS TO CONVERT THIS CASE TO CHAPTER 7 <u>PURSUANT TO § 1112(B) OF THE BANKRUPTCY CODE</u>

35.     Upon the Debtor's failure to confirm its Fifth Amended Plan and its further inability to document a settlement outlined to the Court approximately one month after the Confirmation Hearing, this Court determined that cause existed pursuant to 11 U.S.C. § 1112(b) to convert the Debtor's Chapter 11 case to Chapter 7. In that regard, the Court scheduled a hearing for September 16, 2020 and directed the Debtor to show cause why this case should not be converted to Chapter 7. *See*, <u>Exhibit 2</u>.

36.     Just minutes before the hearing on the Court's OSC, the Debtor finally released for recording the deeds to the Atlantic Property, which Lender advised were a condition precedent to its willingness to enter into the Settlement Agreement and which deeds the Debtor represented on July 29th would be signed and recorded within a day or so of such date. However, the Debtor then failed to follow the Court's directions and file with the Court a proposed Sixth Amended Plan incorporating the terms of the Settlement Agreement.

37.     In short, nothing has advanced since the Court issued the Court's OSC and there is no reason why the Court should permit this Debtor to remain in Chapter 11.

38.     Based on the Court's determination that cause exists to convert this case, Lender respectfully requests that the Court convert this Chapter 11 case to a case under Chapter 7.

## POINT II

## CAUSE EXISTS TO CONVERT THIS CASE TO CHAPTER 7

39.     Section 1112(b)(1) of the Bankruptcy Code provides, in part, that:

> Except as provided in paragraph (2) and subsection (c), on request of a
> party in interest, and after notice and a hearing, the court shall convert a
> case under this chapter to a case under chapter 7 or dismiss a case under
> this chapter, whichever is in the best interests of creditors and the
> estate, for cause unless the court determines that the appointment under
> section 1104(a) of a trustee or an examiner is in the best interests of
> creditors and the estate.

11 U.S.C. § 1112(b)(1).

40.     Section 1112(b)(4) then sets forth a non-exclusive list of grounds that constitute

"cause" under subsection 1112(b)(1). Cause includes "a substantial or continuing loss to or

diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. §

1112(b)(4)(A). Indeed, § 1112(b)(4)(A) is "intended to preserve estate assets by preventing the

debtor in possession from gambling on the enterprise at the creditors' expense when there is no

hope of rehabilitation." *In re Red Bull Taxi Inc.*, No. 16-13153 (MKV), 2017 WL 1753234, at *2

(Bankr. S.D.N.Y. May 3, 2017). Cause also includes gross mismanagement (§ 1112(b)(4)(B))

and a debtor's failure to file a disclosure statement or plan within the time fixed by the Court (§

1112(b)(4)(E) and (J)).

41.     Here, ample cause exists to convert this Chapter 11 single asset real estate case to

a case under Chapter 7 of the Bankruptcy Code because (i) there is approximately $200,000 in

continuing operating losses to the estate and the absence of any likelihood of rehabilitation, (ii)

the Debtor's failure to file an amended plan within the time fixed by the Court, (iii) gross

mismanagement, and (iv) the Debtor and Jarnail Singh knowingly breached the Settlement

Agreement.

19

A.  <u>**Cause Exists to Convert this Case Pursuant to § 1124(b)(4)(A)**</u>

42.    The basis for cause enumerated in § 1112(b)(4) includes a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A); *see also*, *In re Red Bull Taxi Inc.*, No. 16-13153 (MKV), 2017 WL 1753234, at *2 (Bankr. S.D.N.Y. May 3, 2017). Section 1112(b)(4)(A) requires a twofold inquiry. *Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.)*, 374 B.R. 556, 562 (Bankr. M.D. Pa. 2007). "First, the Court must look at the track record of the Debtor to determine if it is suffering losses or making gains. Second, the Court must determine whether rehabilitation is likely given the evidence presented." *Id.*

43.    "Courts have found that cause exists under section 1112(b)(4)(A) when a debtor has a negative cash flow post-petition, and an inability to pay current expenses." *In re Red Bull Taxi Inc.*, No. 16-13153 (MKV), 2017 WL 1753234, at *2 (Bankr. S.D.N.Y. May 3, 2017) *citing In re Adbrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003). *See also*, *In re Route 202 Corp. t/a Lionti's Villa,* 37 B.R. 367, 374 (Bankr.E.D.Pa.1984) ("Obviously, if the debtor has negative cash flow after entry of the order for relief in the chapter 11 case, the [elements of § 1112(b)(1) are] satisfied"); *In re Galvin,* 49 B.R. 665, 669 (Bankr.D.N.D.1985) ("Post-petition negative cash flow is considered by courts to be evidence of continuing losses required by section 1112(b)(1)").

44.    On the first prong, there is no doubt that the Debtor is suffering losses. Since the Petition Date, there has been a substantial and continuing loss to, and diminution of, the estate.  Indeed, even prior to the onset of the COVID-19 pandemic, the Debtor consistently reported *negative cash flow*. *See, e.g.,* ECF No. 177 -- February 2020 Operating Report (Statement of Operations (Income Statement)) showing negative cash flow of $76,483.79 since

the Petition Date, exclusive of capital contributions. According to the Debtor's most recent

Operating Report for the period ending September 2020, the Debtor had zero monthly income,

$37,303.48 in monthly operating expenses, and *negative cash flow of $198,498.23* since the

Petition Date, exclusive of capital contributions. *See*, ECF No. 230-1 (Statement of Operations

(Income Statement)).

45.    The Bankruptcy Court should be further mindful of the fact that prior to the

Petition Date the Alleged Tenant, managed by Jarnail Singh (*i.e.*, the Debtor's principal), failed

to pay over $750,000 in rent/use and occupancy to the Debtor for years, that there is significant

evidence that Mr. Singh wrote rent checks on behalf of the Alleged Tenant and delivered them

directly to Mr. Singh personally for his own account to avoid payment to a Court appointed

Receiver, and that the Alleged Tenant has only sporadically paid post-petition rent. Further, upon

information and belief, in light of Covid-19, the Alleged Tenant has only limited operations, *if*

*any operations at all*. Thus, it is a certainty that further diminution of the estate will occur if this

case proceeds in Chapter 11.

46.    With respect to the second prong of § 1112(b)(1), the term "rehabilitation" has

been interpreted by the courts to mean "to put back in good condition; re-establish on a firm,

sound basis." *In re Red Bull Taxi Inc.*, No. 16-13153 (MKV), 2017 WL 1753234, at *2 (Bankr.

S.D.N.Y. May 3, 2017) *citing In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y.

1995) (quoting 5 *Collier on Bankruptcy* ¶ 1112.03 at 1112–19 (Lawrence P. King *et al.* eds.,

15th ed. 1995)) (internal quotation marks omitted); *In re AdBrite Corp.*, 290 B.R. 209, 216

(Bankr. S.D.N.Y. 2003). It signifies that the applicable debtor will be reestablished on a secured

financial basis, which implies establishing a cash flow from which its current obligations can be

met. *In re Rundlett*, 136 B.R. 376, 380 (Bankr. S.D.N.Y. 1992).

47.     Here, the totality of the facts in this SARE case unequivocally demonstrate there is no likelihood of rehabilitation after a 19 month opportunity. First, the Debtor failed to come up with the funds needed to confirm its Fifth Amended Plan and at the Confirmation Hearing the Debtor withdrew that plan and represented to the Court that it would not file a new plan of reorganization without Lender's consent. *See* Exhibit 1, p. 8.  Although the Court subsequently directed the Debtor to incorporate the Settlement Agreement into a new plan of reorganization, it failed to do so. Even worse, the Debtor knowingly defaulted under its negotiated Settlement Agreement by filing a petition for BMSL in violation of the Settlement Agreement.

48.     Moreover, prior to the Debtor's Petition Date, the Debtor had represented to Lender that it was seeking to refinance and satisfy its indebtedness to Lender. This tale continued with the Debtor's filing of its initial plan of reorganization and continued through the filing of its Fifth Amended Plan of Reorganization. After several years of attempting to refinance the Atlantic Property, it is obvious -- especially now in the Covid-19 era -- that the Debtor has no hope of obtaining refinancing or for rehabilitation.

49.     Even if the Debtor were to file a new plan that is inconsistent with the Settlement Agreement, such plan cannot be confirmed over the Lender's objections -- especially in light of the recent revelation that Commons (an entity controlled by Jarnail Singh) cannot vote as an accepting impaired class.

50.     For these reasons, the case should be converted for cause pursuant to §§ 1112(b)(1) and 1112(b)(4)(A).

B.  **Cause Exists to Convert this Case Pursuant to § 1124(b)(4)(E) and (J)**

51.     Section 1124(b)(4)(J) provides that "cause" to convert a Chapter 11 case to Chapter 7 includes the Debtor's "failure to file a disclosure statement, or to file or confirm a

plan, within the time fixed by this title or by order of the court." Section 1124(b)(4)(E) further provides that cause exists by the Debtor's failure to comply with an order of the Court.

52.    At the September 16, 2020 hearing, the Court directed the Debtor to file a proposed Sixth Amended Plan and related disclosure statement making the Settlement Agreement the centerpiece of the Sixth Amended Plan. The Court then adjourned all pending matters so that there would be sufficient time for the Debtor to draft and file such proposed Sixth Amended Plan prior to the adjourned October 21, 2020 hearing date. However, despite affording the Debtor ample time to prepare a Sixth Amended Plan (and notwithstanding the Lender actually drafting and delivering to Debtor's counsel a proposed Sixth Amended Plan and related disclosure statement to be filed), the Debtor failed to file any plan or disclosure statement prior to the October 21, 2020 hearing as directed by the Court.

53.    Because the Debtor has failed to file the proposed Sixth Amended Plan and related disclosure statement within the time fixed by the Court, cause exists to convert this case pursuant to §§ 1112(b)(1) and 1112(b)(4)(E) and 1112(b)(4)(J).

### C. <u>Cause Exists to Convert this Case Pursuant to § 1124(b)(4)(B)</u>

54.    Section 1124(b)(4)(B) provides that "cause" to convert a Chapter 11 case to Chapter 7 includes the Debtor's "gross mismanagement of the estate."

55.    The Debtor's post-petition behavior supports a finding of gross mismanagement. Here, the Debtor has failed to file Schedules of Assets and Liabilities that accurately represents its interests in its sole asset - the Atlantic Property. It further failed to set forth on the Schedules that it has an executory contract with its sole tenant, Richi Rich Palace NY Inc. This alone is a sufficient basis to convert the Debtor's case. *In re Halal 4 U LLC*, No. 08-15216 (MG), 2010 WL 3810860, at *4 (Bankr. S.D.N.Y. Sept. 24, 2010) (finding mismanagement where Debtor

failed to accurately represent its interest in properties).

56.     Further, the Debtor failed to disclose to the Court that, without Bankruptcy Court approval, it entered into a Stipulation in Foreclosure Action with Six Lots, LLC, an entity owned and controlled by Harbans Singh. *See*, Exhibit 6.  Pursuant to that Stipulation in Foreclosure Action, Harbans Singh conveyed his 50% in the Atlantic Property to Atlantic Commons – an entity owned and controlled by Jay Yackow, Esq.  Importantly, Jay Yackow, Esq. is Jarnail Singh's (and the Debtor's) attorney. The Debtor deliberately chose not to disclose these facts to the Court because it would reveal that the Debtor manufactured an impaired accepting class of creditors controlled by Jarnail Singh to enable the Debtor to attempt to cram down its Fifth Amended Plan. Indeed, by filing with the Court its certification of ballots, the Debtor represented to the Court that Atlantic Commons was not an insider and that it had the capacity to vote for or against the Plan. That certification was patently false.

57.     Further, despite the Debtor's disclosure that it has a $750,000 pre-petition account receivable from the Alleged Tenant, the Debtor has done nothing to collect this rent. Indeed, it is likely that the Debtor made no such effort to collect rent from the Alleged Tenant because the Debtor's principal -- Jarnail Singh -- is the Manager of the Alleged Tenant. Moreover, the Alleged Tenant has only sporadically paid post-petition rent to the Debtor and the Debtor has made no effort to collect this rent either.  *See, e.g.*, *In re Fall*, 405 B.R. 863, 869 (Bankr. N.D. Ohio 2009), *aff'd sub nom. Fall v. Farmers & Merchants State Bank*, No. 3:08CV3012, 2009 WL 974538 (N.D. Ohio Apr. 9, 2009) (gross mismanagement exists where a debtor leased premises to insiders and debtor made no meaningful effort to collect rent from insiders).

58.     For these reasons, cause exists to convert this case pursuant to §§ 1112(b)(1) and 1112(b)(4)(B).

**WHEREFORE**, for the foregoing reasons, it is respectfully requested that the Court convert this Chapter 11 case to a case under Chapter 7, and grant the Lender such other and further relief as is just and proper.

Dated: New York, New York
         November 3, 2020

                                        Respectfully submitted,
                                        **KATSKY KORINS LLP**


                                        By: /s/ Steven H. Newman
                                             Steven H. Newman, Esq.
                                             snewman@katskykorins.com
                                             Robert A. Abrams, Esq.
                                             rabrams@katskykorins.com

                                        605 Third Avenue
                                        New York, New York 10158
                                        Telephone: (212) 953-6000
                                        Facsimile:  (212) 953-6899

                                        *Attorneys for MLF3 Atlantic LLC*