UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In re                                              Chapter 11

     ATLANTIC 111ST LLC,                 Case No. 8-19-73137 (reg)

            Debtor.

------------------------------------------------------------------x

### STIPULATION AND ORDER:
### (I) ALLOWING THE CLAIMS OF MLF3 ATLANTIC LLC;
### (II) CONDITIONALLY PERMITTING A DISCOUNTED PAYOFF WITHIN
### SPECIFIED TIME(S) SET FORTH HEREIN; (III) DIRECTING THE
### SALE OF THE DEBTOR'S REAL PROPERTY LOCATED AT
### 110-19 ATLANTIC AVENUE, RICHMOND HILL, NEW YORK;
### (IV) DETERMINING DEBTOR'S OWNERSHIP OF THE REAL
### <u>PROPERTY; AND (V) GRANTING RELATED RELIEF</u>

**THIS STIPULATION AND ORDER: (I) ALLOWING THE CLAIMS OF MLF3 ATLANTIC LLC; (II) CONDITIONALLY PERMITTING A DISCOUNTED PAYOFF WITHIN SPECIFIED TIME(S) SET FORTH HEREIN; (III) DIRECTING THE SALE OF THE DEBTOR'S REAL PROPERTY LOCATED AT 110-19 ATLANTIC AVENUE, RICHMOND HILL, NEW YORK; (IV) DETERMINING DEBTOR'S OWNERSHIP OF THE REAL PROPERTY; AND (V) GRANTING RELATED RELIEF** (this "**Stipulation**"), dated as of September 12, 2020, by and among (i) MLF3 Atlantic LLC, whose primary place of business is located at 100 Park Avenue, Suite 2805, New York, New York 10017 (the "**Lender**"), (ii) Atlantic 111st LLC, whose primary place of business is located at 110-19 Atlantic Avenue, Richmond Hill, New York 11418 (the "**Debtor**"), (iii) Jarnail Singh, an individual whose primary residence is located at 95-25 120th Street, South Richmond Hill, New York 11419 ("**Guarantor**"), (iv) Satya Kaur, an individual and the wife of Guarantor, whose primary residence is located at 95-25 120th Street, South Richmond Hill, New York 11419 ("**SK**"), (v) BMSL Management LLC, whose primary place of business is located at 131-09 Hillside Avenue, Richmond Hill, New York 11418 ("**BMSL**"), (vi) Richi Rich Palace NY Inc. a/k/a Richi Rich Restaurant, whose primary place of business is located at 110-19 Atlantic Avenue, Richmond Hill, New York 11418 (the "**Tenant**"), and (vii) Atlantic Avenue Commons LLC, whose primary place of business is located at c/o Jay L. Yackow, Esq., 355 Post Avenue, Suite 201, Westbury, New York 11590 ("**Commons**").

# R E C I T A L S:

**WHEREAS,** on May 3, 2011, the Debtor duly executed, acknowledged and delivered to Edul N. Ahmad ("**Edul**") that certain Purchase Money Note dated May 3, 2011 (the "**First Note**") evidencing a loan in the original principal amount of $2,000,000.00 (the "**First Loan**"), pursuant to which First Note the Debtor covenanted and agreed to repay Edul the principal amount of $2,000,000.00, together with interest thereon and such other amounts as set forth in the First Note;

**WHEREAS,** as security for the First Note, on May 3, 2011, the Debtor duly executed, acknowledged and delivered to Edul that certain Purchase Money Mortgage dated May 3, 2011 (the "**First Mortgage**"), pursuant to which First Mortgage the Debtor granted Edul a first priority mortgage and lien on, among other things, the real property located at 110-19 Atlantic Avenue, Richmond Hill, New York 11418 (Block 9317, Lot 21) together with all buildings, improvements and fixtures thereon (the "**Atlantic Property**"), all leases and rents related to the Atlantic Property, and all proceeds of all the foregoing;

**WHEREAS,** as further security for the First Note, on May 3, 2011, the Guarantor (Guarantor and the Debtor are collectively referred to herein as the "**Obligors**") duly executed, acknowledged and delivered to Edul that certain Continuing Guaranty dated May 3, 2011 (the "**Guaranty**"; and together with the First Note and the First Mortgage are collectively referred to herein as the "**First Loan Documents**"), pursuant to which Guaranty the Guarantor guaranteed payment to Edul of all obligations under, among other things, the First Note and First Mortgage;

**WHEREAS,** on May 3, 2011, the Debtor duly executed, acknowledged and delivered to Edul a certain Second Mortgage Note dated May 3, 2011 (the "**Second Note**") evidencing a second loan in the original principal amount of $490,000.00 (the "**Second Loan**"), pursuant to which Second Note the Debtor covenanted and agreed to repay Edul the principal amount of $490,000.00, together with interest thereon and such other amounts as set forth in the Second Note (the "**Second Loan**");

**WHEREAS,** as security for the Second Note, on May 3, 2011, the Debtor duly executed, acknowledged and delivered to Edul a certain Second Mortgage dated May 3, 2011 (the "**Second Mortgage**"), pursuant to which Second Mortgage the Debtor granted Edul a second priority mortgage and lien on, among other things, the Atlantic Property, all leases and rents related to the Atlantic Property, and all proceeds of all the foregoing;

**WHEREAS,** as further security for the Second Note, on May 3, 2011, the Guarantor guaranteed payment of all obligations under, among other things, the Second Note and Second Mortgage pursuant to the Guaranty;

**WHEREAS,** as further security for the Second Note, on May 3, 2011, the Guarantor, SK and BMSL duly executed, acknowledged and delivered to Edul a Collateral Mortgage dated May 3, 2011 (the "**Collateral Mortgage**"; and together with the Second Note, the Second Mortgage, the Guaranty are collectively referred to herein as the "**Second Loan Documents**"), pursuant to which the Guarantor, SK and BMSL granted Edul a first priority mortgage and lien on, among other things, (i) the real property commonly known as 131-09 Hillside Avenue, Richmond Hill,

New York 11418 (Block 9252, Lot 28) together with all buildings, improvements and fixtures thereon (the "**Hillside Property**"), (ii) the real property commonly known as 95-25 120th Street, Richmond Hill, New York 11419 (Block 9458, Lot 41) together with all buildings, improvements and fixtures thereon (the "**120th Street Property**"; and together with the Atlantic Property and the Hillside Property are collectively referred to herein as the "**Properties**"), (iii) all leases and rents related to the Hillside Property and the 120th Street Property, and (iv) all proceeds of all the foregoing;

**WHEREAS**, on May 3, 2011, Edul duly assigned the First Note, the First Mortgage, and any other First Loan Documents to Bibi N. Ahmad ("**Bibi**"), pursuant to, among other things, an Assignment of Mortgage without Covenant, dated May 3, 2011 (the "**Bibi First Mortgage Assignment**");

**WHEREAS**, on April 11, 2016, Bibi duly assigned the First Note, the First Mortgage, and any other First Loan Documents to the Lender, pursuant to, among other things, an Assignment of Purchase Money Mortgage, dated April 11, 2016 (the "**First Mortgage Assignment**");

**WHEREAS**, the assignment of the First Note to Lender is also evidenced by an Allonge dated April 11, 2016, duly indorsed by Bibi payable to the order of Lender and affixed to the First Note;

**WHEREAS**, on May 3, 2011, Edul duly assigned the Second Note, the Second Mortgage, and the other Second Loan Documents to Bibi as evidenced by, among other things, an Assignment of Mortgage Without Covenant, dated May 3, 2011 (the "**Bibi Second Mortgage Assignment**");

**WHEREAS**, on April 11, 2016, Bibi duly assigned the Second Note, the Mortgage, and the Second Loan Documents to the Lender, as evidenced by, among other things, an Assignment of Second Mortgage, dated April 11, 2016 (the "**Second Mortgage Assignment**");

**WHEREAS**, the assignment of the Second Note to the Lender is also evidenced by an Allonge dated April 11, 2016, duly indorsed by Bibi payable to the order of Lender affixed to the Second Note;

**WHEREAS**, on May 3, 2011, Edul duly assigned the Collateral Mortgage to Bibi as evidenced by an Assignment of Collateral Mortgage, dated May 3, 2011 (the "**Bibi Collateral Assignment**");

**WHEREAS**, on April 11, 2016, Bibi duly assigned the Collateral Mortgage to the Lender, as evidenced by an Assignment of Collateral Mortgage, dated April 11, 2016 (the "**Collateral Assignment**");

**WHEREAS**, on April 11, 2016, Bibi duly delivered to the Lender an Omnibus Assignment and Assumption Agreement dated April __, 2016 (the "**Omnibus Assignment**"). The First Loan Documents, the Second Loan Documents, together with the Omnibus Assignment and all allonges, and other assignments set forth herein above are collectively referred to herein as the "**Loan Documents**".  Pursuant to the Omnibus Assignment, among other things, the Loan Documents were duly assigned to the Lender;

**WHEREAS**, all of the Loan Documents have been duly filed and recorded in all necessary governmental offices in order to perfect the mortgages and liens granted thereunder;

**WHEREAS**, the Lender is the due and proper holder and owner of all of the Loan Documents and is entitled to exercise any and/or all of its remedies thereunder;

**WHEREAS**, the Debtor defaulted under the terms and provisions of Loan Documents by failing to repay the monthly principal and interest payment due July 1, 2011 and each month thereafter, constituting an event of default under the Loan Documents (the "**Existing Defaults**");

**WHEREAS**, Obligors and Bibi entered into a certain Forbearance Agreement dated June 1, 2012 (the "**Forbearance Agreement**") concerning the Existing Defaults;

**WHEREAS**, the Obligors thereafter defaulted under the Forbearance Agreement by failing to make the payments due and payable pursuant to the Forbearance Agreement (the "**Forbearance Defaults**"), and by letter dated September 28, 2015 (the "**Notice of Default**"), Bibi gave due and proper notice to the Obligors of the Obligors' Forbearance Defaults;

**WHEREAS**, on or about December 30, 2015, Bibi duly declared the balance of the principal indebtedness immediately due and payable and commenced a foreclosure action in the New York State Supreme Court, Queens County (the "**State Court**") respecting the First Loan by filing a Summons and Complaint under Index No. 713435/2015 in the matter originally styled *Bibi N. Ahmad v. Atlantic 111st LLC, et. al.* (the "**First Foreclosure Proceeding**");

**WHEREAS**, Harbans Singh ("**Harbans**") was named a party defendant based on his claim against the Debtor in a lawsuit filed in the State Court under Index No. 4550/2014 that he owned a fifty percent (50%) interest in the Atlantic Property;

**WHEREAS**, pursuant to a Deed dated May 18, 2011, and recorded with the City Register on May 18, 2018 ( the "**Harbans Deed**"), the Debtor transferred one-half of its interest in the Atlantic Property to Harbans Singh ("**Harbans**");

**WHEREAS**, pursuant to a Deed dated September 18, 2019, which Deed is unrecorded, Harbans transferred one-hundred percent (100%) of Harban's interests in the Atlantic Property (i.e. Harban's fifty percent (50%) interest therein) to Commons (the "**Harbans/Commons Deed**"). A copy of the Harbans/Commons Deed is attached hereto as **Exhibit A**;

**WHEREAS**, pursuant to a Deed dated August 24, 2020, which Deed is unrecorded, Commons transferred one-hundred percent (100%) of Commons interest in the Atlantic Property (i.e. Commons fifty percent (50%) interest therein) to the Debtor (the "**Commons/Debtor Deed**"). A copy of the Commons/Debtor Deed is attached hereto as **Exhibit B**;

**WHEREAS**, as of the date hereof the Debtor is the sole owner of 100% of the Atlantic Property;

**WHEREAS**, the Obligors, the Tenant, and Harbans each filed an Answer in the First Foreclosure Proceeding;

**WHEREAS**, the State Court granted summary judgment in favor of Lender in the First Foreclosure Proceeding pursuant to an Order of Reference dated March 8, 2018;

**WHEREAS**, the State Court granted Lender a Judgment of Foreclosure and Sale, dated February 7, 2019, in the First Foreclosure Action which was duly entered by the County Clerk of the Supreme Court, Queens County on February 27, 2019 (the "**Foreclosure Judgment**"), and a notice of entry of the Foreclosure Judgment was duly filed with the State Court on February 28, 2019. No person appealed the Foreclosure Judgment and the time to do so has expired. The Foreclosure Judgment is final and non-appealable;

**WHEREAS**, the Foreclosure Judgment granted a money judgment in favor of Lender in the amount of (i) $3,082,214.20 as of June 20, 2018 (the "**Principal/Interest Portion of Judgment**")[1]; plus (ii) $51,375.00 as of June 20, 2018 (the "**Attorneys' Fees Portion of Judgment**"); plus (iii) interest on $3,082,214.20 at the rate of 12% per annum from June 20, 2018 until the date that all obligations under the First Loan Documents are paid in full by the Debtor; plus (iv) all protective advances and all reasonable attorneys' fees and expenses incurred by the Lender after June 20, 2018, plus interest thereon at the rate of 12% per annum from the date of payment thereof or advance by Lender until the date that all obligations under the First Loan Documents are paid in full by the Debtor; plus (v) $2,310.00 in costs and disbursements in the First Foreclosure Proceeding, plus interest on $2,310.00 at the rate of 12% per annum from June 20, 2018 until the date that all obligations under the First Loan Documents are paid in full by the Debtor; plus (vi) $750.00 in fees to the referee in the First Foreclosure Proceeding;

**WHEREAS**, pursuant to the Foreclosure Judgment and the Memorandum decision of Justice Leonard Livote dated August 10, 2017 and filed on September 1, 2017, the State Court expressly ruled, among other things, (i) that the Harbans Deed was recorded after the First Mortgage was recorded and therefore is subordinate to the First Mortgage and (ii) the Lender can foreclose on it First Mortgage free and clear of the any interests of the Debtor and Harbans in the Atlantic Property;

**WHEREAS**, on or about September 9, 2016, Lender commenced a second foreclosure action in the State Court respecting the Second Loan under Index No. 710813/2016 in the matter styled *MLF3 Atlantic LLC v. Atlantic 111st LLC, et al.* (the "**Second Foreclosure Proceeding**");

**WHEREAS**, on April 18, 2019 (the "**Filing Date**"), one (1) day prior to a scheduled foreclosure sale of the Atlantic Property in the First Foreclosure Proceeding, the Debtor filed a petition for relief under  Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**");

**WHEREAS**, the Lender timely filed in the Debtor's bankruptcy case: (i) a Proof of Claim with respect to the First Loan in the secured amount of $4,056,801.88 as of the Filing Date, plus interest, protective advances and attorneys' fees and expenses as set forth therein all

---

[1] The amount of $3,133,589.20 is sometimes referred to herein as the "**Base Judgment Amount**", and represents the sum of (i) the $3,082,214.20 Principal/Interest Portion of Judgment, plus (ii) the $51,375.00 Attorneys' Fees Portion of Judgment.

of which continue to accrue, which Proof of Claim was assigned Claim Number 2 on the Claims Register maintained by the Bankruptcy Court ("**POC No. 2**"); and (ii) a Proof of Claim with respect to the Second Loan in the secured amount of $350,674.56 as of the Filing Date, plus interest, protective advances and attorneys' fees and expenses as set forth therein all of which continue to accrue, and such claim was assigned Claim Number 3 on the Claims Register maintained by the Bankruptcy Court ("**POC No. 3**"; and together with POC No. 2 are collectively referred to herein as the "**Proofs of Claim**");

**WHEREAS**, on or about October 23, 2019, the Debtor filed with the Bankruptcy Court a motion objecting to the Lender's Proofs of Claim and alleged, among other things, the existence of a Modification Agreement, dated February 4, 2014 (the "**Claims Objection Motion**");

**WHEREAS**, the Lender disputes all of the allegations contained in the Claims Objection Motion;

**WHEREAS**, on or about June 30, 2020, the Debtor filed with the Bankruptcy Court its Fifth Amended Disclosure Statement (the "**Disclosure Statement**") and its Fifth Amended Plan of Reorganization (the "**Plan**");

**WHEREAS**, on July 22, 2020, the Lender filed, among other things, an Objection to the Debtor's Plan;

**WHEREAS**, on July 28, 2020 counsel for the Debtor advised the Bankruptcy Court that the Debtor did not have the funds needed to proceed to confirmation of the Plan;

**WHEREAS**, at a July 29, 2020 hearing to consider confirmation of the Debtor's Plan, the Debtor advised the Bankruptcy Court, among other things, that (i) the Plan could not be confirmed, (ii) the Debtor withdrew its Plan in contemplation of the Court's approval of this Stipulation, and (iii) the Debtor was in the process of obtaining the Commons/Debtor Deed; and

**WHEREAS**, the parties hereto desire to amicably resolve and settle all disputes among them pursuant to the terms of this Stipulation.

**NOW, THEREFORE**, in consideration of the mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto do hereby covenant and agree as follows:

1.    **Affirmation of Recitals**.    The Debtor, the Guarantor, SK, BMSL, Tenant and Commons hereby ratify and confirm the facts in the Recitals set forth above, which Recitals are hereby incorporated by reference and shall have the same force and effect as if in the body of this Stipulation.

2.    **Allowance of Lender's Claims**.

(a)    Pursuant to the First Loan Documents, there is now due and owing to Lender (i) the aggregate sum of $4,519,000.00 as of July 31, 2020, plus (ii) interest at the rate of 12% per annum on the Base Judgment Amount of $3,133,589.20 from July 31, 2020 until the

date that all obligations under the First Loan Documents are paid in full by the Debtor, plus (iii) all protective advances and all reasonable attorneys' fees and expenses incurred by the Lender after July 31, 2020, plus interest thereon at the rate of 12% per annum from the date of payment thereof or advance by Lender until the date that all obligations under the First Loan Documents are paid in full by the Debtor. POC No. 2  be and hereby is determined to be an allowed secured claim against the Debtor and the Guarantor in the amount set forth in the immediately prior sentence and is enforceable against the Debtor, the Guarantor all other parties in interest in the Debtor's current bankruptcy proceeding (including, without limitation, such parties and a Chapter 7 trustee in the event the Debtor's Chapter 11 case is converted to a case under Chapter 7 of the Bankruptcy Code), in the First Foreclosure Action, the Second Foreclosure Action and in any other action or proceeding involving any of the parties hereto, whether now or hereinafter existing.

(b)     Pursuant to the Second Loan Documents, there is now due and owing to Lender (i) the aggregate sum of $381,000.00 as of July 31, 2020; plus (ii) interest at the rate of 12% per annum on the unpaid principal of the Second Loan in the amount of $192,288.00 from July 31, 2020 until the date that all obligations under the Second Loan Documents are paid in full by the Debtor; plus (iii) all protective advances and all reasonable attorneys' fees and expenses incurred by the Lender after July 31, 2020, plus interest thereon at the rate of 12% per annum from the date of payment thereof or advance by Lender until the date that all obligations under the Second Loan Documents are paid in full by the Debtor. POC No. 3 be and hereby is determined to be an allowed secured claim against the Debtor, the Guarantor, SK and BMSL in the amount set forth in the immediately prior sentence and is enforceable against the Debtor, the Guarantor, SK and BMSL and all other parties in interest in the Debtor's current bankruptcy proceeding (including, without limitation, such parties and a Chapter 7 trustee in the event the Debtor's Chapter 11 case is converted to a case under Chapter 7 of the Bankruptcy Code), in the First Foreclosure Action, the Second Foreclosure Action and in any other action or proceeding involving any of the parties hereto, whether now or hereinafter existing.

(c)     The Debtor, the Guarantor, SK, BMSL, Tenant, and Commons hereby forever waive any rights to object to the amount or enforceability of the Lender's claims in the amounts set forth in Paragraphs 2 (a) and (b) above.

3.     **Monthly Adequate Protection and Tax Payments**.  The Debtor shall pay to the Lender, not later than the 10th day of each and every month (starting in August  2020) until the date the obligations under the Loan Documents are paid in full: (i) an adequate protection payment in the amount of $23,771.70; and (ii) an additional amount of $8,833.33 for taxes. The Lender is entitled to forever retain all payments made pursuant to this Paragraph 3 and the Lender may apply same to the obligations under the Loan Documents in any manner as the Lender may elect in its sole discretion. For the avoidance of doubt, the Lender shall not be required to use any portion of such payments to pay any taxes on any of the Properties (or any insurance on any of the Properties or any other expenses related to any of the Properties), and the Debtor, SK and BMSL shall remain fully liable for all taxes, insurance and all carrying expenses on or in any way relating to the Properties. However, payments of adequate protection and taxes on or after August 1, 2020 (to the extent they are not subject to be returned or to disgorgement) will be credited to the "Discounted Payment Amount" (as defined in Paragraph 4(b) below) if and only if the Discounted Payment Amount is timely and fully made to Lender within the time

period set forth in Paragraph 4(b). All payments pursuant to this Paragraph 3 may be made by either wire transfer to the Lender or by Federal Express (but such that it is actually received by the Lender not later than the 10th day of each month). For the avoidance of doubt, (i) the requirements to pay adequate protection payments and taxes under this Paragraph 3 shall not be an independent basis for the accrual of new debt amounts owed under the Loan Documents or otherwise; and (ii) notwithstanding anything to the contrary, if any, the failure of the Debtor to timely and fully pay the Discounted Payment Amount shall not relieve the Debtor, the Guarantor, SK or BMSL of any obligations under the Loan Documents or to pay adequate protection in the Debtor's bankruptcy case or otherwise. In the event that a closing on a sale of the Atlantic Property actually closes and the proceeds are received by the Lender, the Debtor shall not be required to pay further adequate protection payments (but solely on account of the Atlantic Property) after the date that the Lender receives such proceeds of sale).

4.    **Right to a Discounted Payoff**.

(a)    If and only if (i) the "Discounted Payment Amount" (as defined in Paragraph 4(b) below) is actually and timely received by the Lender by a wire transfer in good funds by the applicable date(s) set forth in Paragraph 4(b) below, (ii) all adequate protection payments and tax payments required under Paragraph 3 above have been timely made, (iii) the Debtor has paid Lender, by a wire transfer in good funds by the applicable date(s) set forth in Paragraph 4(b) below, all reasonable attorneys' fees and expenses incurred by Lender up to $15,000.00 in connection with the preparation, review, delivery and recording of any documents described in this Paragraph 4(a), and (iv) the Debtor has paid by wire transfer all expenses of the auctioneer and/or Lender (including, without limitation, the costs of any notices of the auction sale, whether published or otherwise, time being of the essence as to all such payments in the immediately preceding clauses (i), (ii), (iii) and (iv), then, notwithstanding the amount of the allowed POC No. 2 and POC No. 3 set forth in Paragraph 2, (v) the Lender will accept the applicable Discounted Payment Amount set forth in Paragraph 4(b) below plus the Lender's above described attorney's fees and expenses in full settlement and satisfaction of POC No. 2 and POC No. 3 and execute and deliver to the Debtor, within three business days after the payment of the Discounted Payment Amount clears the Lender's bank account, a satisfaction of the First Note, the First Mortgage, the Second Note, the Second Mortgage, and the Collateral Mortgage, a termination of any *lis pendens* filed by the Lender against the Properties and release of the Debtor, the Guarantor, SK, BMSL, Commons and Tenant (provided however, no such release shall release any obligations under this Stipulation of any party hereto, including without limitation, the indemnities set forth in Paragraph 7.1 below) of any and all claims based on the Loan Documents, in form satisfactory to the Lender; (x) the Lender will either deliver to Debtor's counsel satisfaction of the Tenant CJ (as defined below) or the original Tenant CJ, (y) the counsel for the Debtor, the Guarantor, SK, BMSL, Tenant, and Commons (as successor-in-interest to Harbans Singh) shall execute a stipulation of dismissal of the First Foreclosure Proceeding and the Second Foreclosure Proceeding, and (z) counsel for the Debtor, Amarjit Singh a/k/a A.J. Singh ("**AJS**"), the Guarantor, Tenant, and Lender shall execute a stipulation of dismissal of the L&T Action (as defined below). If Debtor prefers, instead of a satisfaction of the First Note, the First Mortgage, the Second Note, the Second Mortgage, and the Collateral Mortgage, the Lender will issue an assignment of such documents, but without any representations or warranties whatsoever and provided Debtor pays the Lender its reasonable legal fees and expenses in connection with same. The Lender will provide counsel for the Debtor

with wire instructions for payments to be made to the Lender under this Stipulation.

(b)     The "**Discounted Payment Amount**" shall mean (i) the sum of all legal fees incurred by the Lender after the date hereof in connection with the preparation of the documents described in Paragraph 4(a) above plus (ii) (x) $3,870,000.00, if such sum is actually received by the Lender not later than September 27, 2020; (y) the sum of $4,020,000.00, if such sum is actually received by the Lender not later than October 27, 2020; or (z) the sum of $4,120,000.00, if such sum is actually received by the Lender not later than November 26, 2020.

(c)     The Debtor shall give the Lender at least five (5) business days' prior written notice of the date that it will pay the Discounted Payment Amount. The Lender will issue an invoice to the Debtor for the attorneys' fees and expenses in connection with the preparation of the documents described in Paragraph 4(a), one (1) business day prior to the proposed date of the Discounted Payment Amount which shall be transmitted via email to na@pryormandelup.com.

5.     <u>**Sale of the Atlantic Property**</u>.

(a)     The Lender is hereby irrevocably entitled and authorized to immediately sell 100% of the fee simple interests in the Atlantic Property pursuant to Section 363 of the Bankruptcy Code, free and clear of all liens and interests, with any and all such liens to attach to the proceeds of any sale, including without limitation any contracts of sale and any deposits under any such contracts. However, such sale shall not occur prior to December 15, 2020 if and only if (i) no Event of Default has occurred and (ii) the Lender has actually and timely received (x) all payments owed under Paragraph 3 and (y) the full amount of the Discounted Payment as set forth in Paragraph 4, time being of the essence, and none of such payments are subject to disgorgement. For the avoidance of doubt, the Lender shall have a first priority lien on all such proceeds of sale of the Atlantic Property, which lien shall secure the full amounts of its claims under POC No. 2 and POC No. 3 in the amounts set forth in Paragraph 2 above.

(b)     The Debtor, the Guarantor and their counsel shall use best efforts to timely and fully cooperate with the Lender in connection with all matters related to the sale of the Atlantic Property, including, without limitation, (i) providing information about the Atlantic Property, (ii) providing access to the Atlantic Property to any auctioneer, broker, the Lender, any prospective purchaser of the Atlantic Property and all agents and representatives of all of the foregoing, and (iii) executing all documents and performing all acts requested by the Lender in connection with or related to the sale (including, without limitation, an auctioneer's agreement, advertisement, a deed, transfer tax forms). The Debtor hereby grants the Lender a power of attorney, coupled with an interest, to take any and all acts on behalf of the Debtor in connection with the sale, including, without limitation, to execute and deliver any and all documents in connection with the sale of the Atlantic Property (including, without limitation, an auctioneer's agreement, advertisement of sale, a deed, and transfer tax forms). Notwithstanding, the foregoing nothing herein shall require the Lender to take any act and the Lender shall have no obligation to do so. In addition, the Lender shall be fully exonerated and shall have no liability to any the Debtor, its estate or any person for any acts taken or not taken by the Lender in connection with the sale of the Atlantic Property.

(c)    Without limiting any of the foregoing, the Lender may immediately retain an auctioneer to auction the Atlantic Property and execute a retention agreement of such auctioneer using its power of attorney of the Debtor. The auctioneer's payment structure for the auction and the auctioneer's fees and expenses in the event the sale is canceled as a result of the Debtor's payment of the Discounted Payment Amount within the time provided in Paragraph 4(b) above, shall be negotiated in good faith by counsel for the Lender, the Debtor and the Guarantor and the parties. The Lender will request that the auctioneer agree to payment of its fees by a buyer's premium to be paid by the buyer at a sale (provided, however, in all events that the Lender shall not be liable for the payment of any commission, fee, or buyer's premium, unless the Lender is the successful bidder and further provided that the Lender's buyer's premium shall not exceed 0.25% of its bid). However, for the avoidance of any doubt, if counsel for the Lender, the Debtor and the Guarantor fail for any or no reason to agree on the auctioneer's commission structure within five (5) days of the date of this Stipulation, then the Lender may in its sole discretion determine the auctioneer's fee structure.

(d)    An auction for the sale of the Atlantic Property shall be held on December 15, 2000 at 10:00 a.m. at the offices of Katsky Korins LLP, 605 Third Avenue, New York, New York 10158 or at any other location (which may be online or virtual if the Lender so decides in its sole discretion) or on any other date thereafter, each as determined by the Lender, in its sole and absolute discretion. Notwithstanding the foregoing or anything in this Stipulation to the contrary, if any "Event of Default" (as defined below) occurs, then the Lender may conduct a sale of the Atlantic Property on any date determined by the Lender in its sole and absolute discretion, whether such date is before or after December 15, 2020. The Lender in its sole and absolute discretion shall determine the terms of sale at the auction and/or foreclosure sale. Without limiting the foregoing, the terms of sale will require, among other things, that (i) the sale will be via a quit claim deed,  where is and as is, and without any representation or warranty whatsoever, (ii) only qualified bidders may bid at the auction, (iii) in order for any potential bidder to be a qualified bidder, the potential bidder must, at least 24 hours before the start of the auction, (x) demonstrate to the Lender, in its sole and absolute discretion, that the potential bidder has its financial ability to close on the purchase of the Atlantic Property, (y) deposit $500,000 (the "**Initial Deposit**") by wire transfer in good funds with the Lender's counsel in escrow, and (z) disclose in writing any relationships such potential bidder has to the Debtor, the Guarantor, SK, Commons, and/ or the Tenant, (iv) within 24 hours after the conclusion of the auction the successful bidder must deposit with the Lender's counsel by wire transfer in good funds an additional amount equal to 10% of the amount bid <u>PLUS</u> the amount of the buyer's premium (collectively the "**Additional Deposit**"; and together with the Initial Deposit are collectively referred to herein as the "**Deposit**") and the failure to timely deliver the Additional Deposit, time being of the essence, shall result in the automatic forfeiture of the Initial Deposit; and (v) a closing on the purchase of the Atlantic Property shall take place not later than thirty (30) days after the date of the auction or foreclosure sale time being of the essence  as to such closing and all of the purchaser's obligations. For the avoidance of any doubt, any references in this Stipulation to an auction or sale of the Atlantic Property shall apply equally to any auction sale conducted pursuant to Section 363 of the Bankruptcy Code or any auction conducted pursuant to a foreclosure sale of the Atlantic Property.   The term "**Event of Default**" shall mean (i) the breach of any representation or obligation hereunder by the Debtor, the Guarantor, SK, BMSL, or the Tenant (including, without limitation, any obligations under Paragraphs 3, 6, 8, or 9 hereof); or (ii) the failure of the Atlantic Property to be insured in an

amount satisfactory to the Lender or failure of any insurance policy to provide that the Lender is the sole loss payee and that the Lender is an additional insured under such policy.

(e)     Provided that no Event of Default has occurred, (i) the auctioneer will not publish an advertisement for the sale on the internet or in print prior to October 28, 2020; and (ii) on and after October 28, 2020, (x) the auctioneer and/ or the Lender shall be free to advertise the Atlantic Property, and (y) the Debtor and Tenant shall give the auctioneer and the Lender access at all times requested by the auctioneer and the Lender, including, but not limited to, for showing the Atlantic Property to potential bidders and taking pictures. Notwithstanding the forgoing, (i) from and after the date hereof, the Debtor and Tenant shall allow the auctioneer and the Lender to access the Atlantic Property on at least four (4) occasions to inspect the Atlantic Property and take pictures of same; and (ii) notwithstanding anything to the contrary, if any Event of Default occurs (x) the auctioneer and the Lender shall be free to advertise the Atlantic Property at any time, (y) the Atlantic Property may be sold on any date determined by the Lender in its sole and absolute discretion, and (z) the Debtor and Tenant shall give the auctioneer, the Lender, any potential purchasers, and each of their respective agents and representatives access at all times requested by the auctioneer and/or the Lender, including, but not limited to, for showing the Atlantic Property to potential bidders and taking pictures.

(f)     The Debtor, the Guarantor, SK, and BMSL may bid at the auction sale provided such person or entity, respectively, complies with the announced terms of sale, including, without limitation, delivering to the Lender evidence of proof of funds and ability to close in form and substance satisfactory to the Lender. Debtor shall be solely liable for the auctioneer's fees if the Debtor, any insider of the Debtor, the Guarantor, SK, BMSL, or any relative or direct or indirect affiliate or agent of any of them is the successful bidder or if the Debtor effectuates a payoff of the debt and the sale is canceled.

(g)     The Lender is hereby irrevocably authorized to credit bid up to the full amount of its claims as set forth in Paragraph 2 above at any auction or sale of the Atlantic Property.

(h)     Any amount paid at the auction sale (whether by the Debtor or any other person, or by the Lender via a credit bid), will be applied first to the Lender's claim pursuant to POC No. 2 based on its claims under the First Loan Documents, and after such claim is satisfied in full, the excess, if any, will be applied to the Lender's claim pursuant to POC No. 3 based on its claims under the Second Loan Documents.

(i)     In the event that the full amount of the Lender's claims (as allowed in Paragraph 2 above) are not paid in full from the proceeds of the auction (whether the auction is conducted pursuant to Section 363 of the Bankruptcy Code or pursuant to a foreclosure sale) of the Atlantic Property, then, for the avoidance of doubt, the Lender shall retain all of its claims, rights and liens under its Loan Documents and hereunder, including, without limitation, the right to collect any deficiency from the Guarantor, SK, BMSL and the Tenant.

(j)     Notwithstanding anything to the contrary, the Debtor, the Guarantor, Tenant, and Commons shall, within 48 hours of a request, execute and deliver any deeds, affidavits, resolutions ACRIS forms, transfer tax documents or documents that may be requested

by any auctioneer, the Lender or any potential purchaser of the Atlantic Property in order to evidence and or effectuate that the Debtor is the sole owner of 100% of the fee simple interest in the Atlantic Property free and clear of any and all interests whatsoever, including, without limitation, any rights of Harbans Singh, Commons, and any tenants and/or rights to possession of any person as to the Atlantic Property. The Debtor, the Guarantor, Tenant, and Commons shall promptly record both the Harbans/Commons Deed and the Commons/Debtor Deed and they shall be responsible for payment of all filing fees and or penalties imposed by any governmental office in connection with recording of such deeds (or any replacement deeds thereof) to the Atlantic Property.

6. **Representations and Warranties.** In order to induce the Lender to enter into this Stipulation, the Debtor, the Guarantor, SK, BMSL, Tenant and Commons represent and warrant to the Lender as follows, all of which representations and warranties shall survive the execution of this Stipulation:

6.1 **Binding Obligations.** The First Note, the First Mortgage, the Second Note, the Second Mortgage, the Collateral Mortgage and the Guaranty, and all of the other Loan Documents to which they are a party, respectively, have been duly executed and delivered by the Debtor, the Guarantor, SK, and BMSL and constitute legal, valid and binding obligations of the Debtor, the Guarantor, SK, BMSL (as applicable), enforceable in accordance with their respective terms, as the aggregate amount owed under the First Loan Documents is modified and fixed as set forth in Paragraph 2(a) above.

6.2 **Due Execution of Stipulation.** This Stipulation has been duly executed and delivered by the Debtor, the Guarantor, SK, BMSL, Tenant and Commons and constitutes legal, valid and binding obligations of the Debtor, the Guarantor, SK, BMSL, Tenant and Commons enforceable in accordance with its terms. Without limiting the foregoing, this Stipulation has been duly authorized by all necessary corporate or limited liability action and the person executing and delivering this Stipulation on behalf of Debtor, the Guarantor, SK, BMSL, Tenant and Commons has been duly authorized and empowered to do so.

6.3 **No Defenses or Claims.** (a) The Debtor, the Guarantor, SK, BMSL, Tenant and Commons represent, warrant and acknowledge that: (i) the Lender is fully entitled to foreclose on any and/or all of its collateral and otherwise exercise all of its remedies, but for the automatic stay in the Debtor's bankruptcy case; (ii) all amounts owed to the Lender under the Loan Documents (as the aggregate amount owed under the First Loan Documents is modified and fixed as set forth in Paragraph 2(a) above) are now due and payable; (iii) there are no defenses, offsets or counterclaims of any nature whatsoever to any of the Loan Documents or to Lender's ownership thereof or Lender's status as the due holder of the First Note, the First Mortgage, the Second Note, the Second Mortgage, the Collateral Mortgage and the Guaranty, and all of the other Loan Documents or Lender's standing to enforce all of the foregoing (provided however, (x) the Debtor may have claims against Edul or Bibi; and further provided however (y) that the immediately preceding subclause (x) shall not in any way or in any manner be used against Lender; and further provided however (z) that nothing herein shall be used in any way against Lender or as a basis to defend against or delay in any way any of Lender's claims, liens, rights and amounts owed under the Loan Documents or the Foreclosure Judgment,

it being the express representation and warranty of the Debtor, the Guarantor, SK, BMSL, Tenant and Commons that none of them has any claims or defenses of any kind or nature whatsoever against Lender or the Foreclosure Judgment based on any matter or thing whatsoever, and the Debtor, the Guarantor, SK, BMSL, Tenant and Commons hereby expressly covenant not to sue the Lender or any other Released Parties (as defined below) based on any matter or thing whatsoever); (iv) the Loan Documents are in full force and effect and Lender shall not be deemed to waive any of its rights thereunder, at law or in equity by virtue of this Stipulation, except to the extent Lender agrees to accept a Discounted Payment Amount as specifically provided in Paragraphs 4(a) and (b) above (and as the aggregate amount owed under the First Loan Documents is modified and fixed as set forth in Paragraph 2(a) above); and (v) neither the Guarantor, SK, BMSL, Tenant nor Commons is the subject of a bankruptcy proceeding as of the date of this Stipulation.

(b)    Neither the Debtor, the Guarantor, SK, BMSL, Tenant nor Commons has any defense, affirmative defense, setoff, claim, counterclaim, action, or cause of action of any kind or nature whatsoever against the Lender or any of its past, present, or future directors, officers, employees, agents, attorneys, legal representatives, predecessors, affiliates, successors, or assigns, directly or indirectly, arising out of, based upon, or in any manner connected with any act, transaction, event, circumstance, action, failure to act, or occurrence of any sort or type, whether known or unknown, which occurred, existed, was taken, permitted, or begun prior to the execution of this Stipulation or which occurred, existed, was taken, permitted, or begun in accordance with, pursuant to, or relating to, or by virtue of the First Loan or Second Loan any of the terms of any of the Loan Documents, or which directly or indirectly relates to or arises out of, or in any manner is connected with, the First Loan or the Second Loan or any or all of the Loan Documents (including, without limitation, the enforcement by the Lender or its predecessor of any of its rights and remedies under any or all of the Loan Documents); and if any such defense, affirmative defense, setoff, claim, counterclaim, action or cause of action exists without the knowledge of any of the Debtor, the Guarantor, SK, BMSL, Tenant nor Commons, the same is hereby unconditionally forever waived with prejudice.

6.4    **Insurance Policies.** Insurance policies complying with the terms of the Loan Documents are in full force and effect. Prior to the execution of this Stipulation the Debtor has provided evidence that the Debtor has prepaid all insurance premiums due on the Atlantic Property through December 31, 2020.

6.5    **Compliance with Laws.** The Debtor, the Guarantor, SK, BMSL, and Tenant are in compliance with all material laws, ordinances, rules and regulations of all governmental entities (and all agencies, bodies and subdivisions thereof) affecting the ownership, use, or operation of the Properties, and none of the Debtor, the Guarantor, SK, BMSL, and Tenant has received any notice of noncompliance from any such governmental entity with respect to any of the Properties or that appropriate corrective action is being taken to promptly cure any non-compliance issues(s), except with respect to violations that currently exist. If any violation on any of the Properties is issued after the date hereof, then within five business days after the issuance of any such violation Debtor, the Guarantor, SK, and/or BMSL,

as applicable, shall provide Lender with written notice of such violation and with reasonable evidence that such persons have taken acts to promptly begin cure such violations.

6.6 **No Breach of Other Agreements**. Neither the execution or delivery of this Stipulation, nor the consummation of this transactions contemplated by this Stipulation, nor the compliance with the terms and provisions hereof: (i) will constitute or result in a breach of any of the Debtor's, BMSL's, Tenant's or Commons articles of incorporation or operating agreement, as applicable, or will constitute or result in a violation of any law, order, writ, injunction, or decree of any court or governmental department, commission, board, bureau, agency, or instrumentality applicable to any of the Debtor, the Guarantor, SK, BMSL, Tenant or Commons; (ii) will conflict or will be inconsistent with, or will result in any breach of, any of the terms, covenants, conditions, or provisions thereof; or (iii) will constitute a default under any indenture, mortgage, instrument, documents, agreement, or contract of any kind to which any of the Debtor, the Guarantor, SK, BMSL, Tenant or Commons may be bound or subject.

6.7 **Benefitted From This Stipulation**. The Debtor, the Guarantor, SK, BMSL, Tenant and Commons have each derived direct and substantial benefits from this Stipulation and the transactions contemplated by this Stipulation.

6.8 **Other Documents**. (a) All documents, deeds, stipulations, affidavits, reports, certificates, and other statements of any kind furnished to the Lender by or on behalf of each of the Debtor, the Guarantor, SK, BMSL, Tenant or Commons, as applicable, in connection with the transactions contemplated by this Stipulation: (i) are true, correct, and complete in all material respects; (ii) do not contain any untrue statement of material fact; and (iii) do not omit any fact necessary to make the information contained therein not misleading.

(b) The continued validity in all respects of all representations and warranties made by each of the Debtor, the Guarantor, SK, BMSL, Tenant or Commons in this Stipulation and any other documents delivered by each of the Debtor, the Guarantor, SK, BMSL, Tenant or Commons in connection with this Stipulation constitutes a condition precedent to Lender's agreements under this Stipulation.

6.9 **Stipulation Is Duly Executed and Enforceable**. Each of the signatories, on behalf of each of the Debtor, the Guarantor, SK, BMSL, Tenant or Commons, to this Stipulation has full and complete authorization and power to execute and deliver this Stipulation in the capacity herein stated. This Stipulation is a valid, binding and enforceable obligation of each of each of the Debtor, the Guarantor, SK, BMSL, Tenant and Commons and does not violate any law, rule or regulation, or any contract or agreement to which any of the foregoing is a party. Neither the Debtor, the Guarantor, SK, BMSL, Tenant or Commons has in any way conveyed, transferred, assigned, pledged or otherwise encumbered any claim or causes of action covered by the releases set forth in this Stipulation.

7. **Release of the Lender**.

7.1 **Release of Claims**. The Debtor, the Guarantor, SK, BMSL, Tenant and Commons, for itself and on behalf of its agents, employees, representatives, affiliates, predecessors-in-interest, successors, and assigns (such persons and entities other than the

Obligors being collectively referred to herein as the "**Other Releasors**"), does hereby release, discharge and acquit the Lender, and Lender's past, present and future officers, directors, shareholders, agents, employees, professionals, predecessors, successors, assigns and affiliates, and their respective successors, heirs and assigns (collectively, the "**Released Parties**"), of and from any and all rights, claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, causes of action, promises, damages, costs, losses and expenses of every kind, nature, description or character, and irrespective of how, why, or by reason of what facts, which could or may be claimed to exist, whether known or unknown, matured or contingent, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, from the beginning of the world to the date of execution of this Stipulation (collectively, the "**Released Claims**"), based on any matter or thing whatsoever, including, without limitation, any matters which directly or indirectly in any way arise out of, are connected with or relate to the First Loan, the Second Loan, the Properties, the administration of any or all of the First Loan, Second Loan or any or all of the Loan Documents, as well as any action or inaction of any of the Released Parties. Notwithstanding the foregoing, the Released Claims do not include the Debtor's claims against Edul or Bibi; provided however (i) in no event shall the reservation of such claims against Edul and/or Bibi be any defense whatsoever to any of the obligations of the Debtor, the Guarantor, SK, BMSL, and/or Tenant under any of the Loan Documents or this Stipulation and (ii) the Guarantor, SK and BMSL hereby, jointly and severally, agree to indemnify and hold harmless the Lender and all other Released Parties for and from any and all damages, claims, costs and expenses, including, without limitation, any attorneys' fees and expenses, that the Lender and/or any of the other Released Parties may at any time incur for any reason whatsoever, relating directly or indirectly to the assertion by Debtor, the Guarantor, SK, and/or BMSL of any claims against Edul and/or Bibi.

7.2 **Waiver**. Each of the Debtor, the Guarantor, SK, BMSL and/or Tenant hereby: (i) waives any and all defenses to the Lender's exercise of any or all of its rights under the Loan Documents (as the aggregate amount owed under the First Loan Documents is modified and fixed as set forth in Paragraph 2(a) above), including, without limitation, the defenses of payment, waiver, estoppel, laches, unclean hands, unconscionability, the election of remedies defense, or any claim that the Debtor, the Guarantor, SK, and/or BMSL are not in default under the Loan Documents, or any claim that any notice was not given by the Lender (provided however, (x) that the Debtor reserves any claims against Edul or Bibi; and further provided however (y) that the immediately preceding subclause (x) shall not in any way or in any manner be used against Lender; and further provided however (z) that nothing herein shall be used in any way against Lender or as a basis to defend against or delay in any way any of Lender's claims, liens, rights and amounts owed under the Loan Documents or the Foreclosure Judgment, it being the express representation and warranty of the Debtor, the Guarantor, SK, BMSL, Tenant and Commons that none of them has any claims or defenses of any kind or nature whatsoever against Lender or the Foreclosure Judgment based on any matter or thing whatsoever, and the Debtor, the Guarantor, SK, BMSL, Tenant and Commons hereby expressly covenant not to sue the Lender or any other Released Parties based on any matter or thing whatsoever); (ii) acknowledges and re-affirms its due execution and delivery of the Loan Documents; (iii) expressly waives the appointment of a referee in any action to foreclose the First Mortgage, the Second Mortgage, or the Collateral Mortgage to compute the sums due and owing to the Lender;

15

and (iv) waives any claim or defense that the First Loan, the Second Loan, the Loan Documents or this Stipulation is usurious or requires Debtor, the Guarantor, SK, and/or BMSL to pay "hidden" or "disguised" interest.

       7.3    **Waivers of Unknown Claims**. As to all matters being released by the Debtor, the Guarantor, SK, BMSL, Tenant and/or Commons pursuant to the provisions hereof, each of the Debtor, the Guarantor, SK, BMSL, Tenant and Commons for itself and on behalf of the Other Releasors, expressly acknowledges that the release of the Released Claims set forth in Paragraph 7.1 hereof applies to all Released Claims whether or not known to, or suspected by the Debtor, the Guarantor, SK, BMSL, Tenant and/or Commons to exist. Each of the Debtor, the Guarantor, SK, BMSL, Tenant and Commons, for itself and on behalf of all Other Releasors, acknowledges and agrees that the facts with respect to which the release of the Released Claims contained in Paragraph 7.1 is executed may hereafter be found to be different from the facts now believed by the Debtor, the Guarantor, SK, BMSL, Tenant and/or Commons to be true, and each of the Debtor, the Guarantor, SK, BMSL, Tenant and Commons, for itself and on behalf of all Other Releasors, expressly accepts and assumes the risk of all such possible differences, and agrees that the release of Released Claims contained in this Paragraph shall be and remain effective notwithstanding any such difference in facts.

       7.4    **No Assignment**. Each of the Debtor, the Guarantor, SK, BMSL, Tenant and Commons, for itself and on behalf of all Other Releasors, warrants and represents to the Lender that none of the Debtor, the Guarantor, SK, BMSL, Tenant or Commons and none of the Other Releasors have sold, assigned, transferred, conveyed or otherwise disposed of any Released Claims which are the subject of Paragraph 7.1.

       8.    **Additional Tenant and Debtor Representations**. Tenant, the Debtor, the and Guarantor each hereby represents and warrants to the Lender and declares to the Bankruptcy Court, under penalty of perjury, that:

       (a)    Tenant and the Debtor are parties to a certain alleged Commercial Lease Agreement, dated as of December 5, 2013, between the Debtor and Tenant (the "**RR Lease**"), a copy of which is attached hereto as **Exhibit C**. The RR Lease has not been and will not be amended or modified in any way or manner.

       (b)    Neither the Debtor, Tenant, nor any one on the Debtor's behalf or Tenant's behalf has entered into any lease, sublease, license or other agreement whatsoever with any person to use, occupy or sell the Atlantic Property or any portion thereof, other than the RR Lease. No person or entity has any rights or claims of any kind or nature whatsoever to lease, use, occupy or purchase any portion of the Atlantic Property other than (i) the alleged right of Richi Rich to lease the Atlantic Property pursuant to the RR Lease; and (ii) the Guarantor is currently occupying an office at the Atlantic Property however the Guarantor has absolutely no legal right to such occupancy or use of the Atlantic Property (other than in his capacity as the sole member of the Debtor). The Guarantor's affidavit sworn to on May 1, 2018 in the case Nicole Katsorhis, Esq., as Temporary Receiver v. Richi Rich Restaurant, et al., in the Civil Court of the City of New York, County of Queens, Index No. 53951-2018, shall not be used to declare an Event of Default under this Stipulation; provided, however, for the avoidance of doubt, Lender reserves all rights to use such affidavit in a connection with all other matters.

(c)     As of the date hereof Richi Rich owes the Debtor $750,000 in past due unpaid rent, which unpaid rent constitutes the Lender's collateral under the Loan Documents (the "**Past Due Rent**").    Lender has a perfected, unavoidable and allowed first priority lien on the Past Due Rent.

(d)     Guarantor is the sole manager of Tenant. Dhan Singh is the Chief Executive Officer and President of Tenant. Each of Guarantor and Dhan Singh has the authority, acting singularly, to take any actions on behalf of Tenant, including causing Tenant to perform any and all obligations under this Stipulation.  SK is the wife of the Guarantor. Dhan Singh is a friend of the Guarantor.

9.      **Additional Agreements and Covenants Regarding Tenant and the Collateral**.
The Debtor, Tenant, and the Guarantor hereby, jointly and severally, agree, promise, represent and covenant that:

(a)     The RR Lease is hereby amended and modified such that the term of the RR lease ends on November 27, 2020 (the "**RR Lease Termination Date**"). The RR Lease may not be modified without the Lender's express prior written consent, and any amendment of the RR Lease without the Lender's express prior written consent shall be void *ab initio*. Neither the Debtor nor Tenant shall enter into any agreement of any kind or nature concerning the lease, license, use or sale of Atlantic Property, or any part thereof, without the Lender's express prior written consent, and any such agreement entered into by the Debtor or Tenant without the Lender's express prior written consent shall be void *ab initio*.

(b)     Tenant's right to lease, use or occupy any part of the Atlantic Property after the date hereof shall be governed exclusively by this Stipulation and the L&T Stipulation[2] (as defined below).  Tenant has no right whatsoever to lease, use or occupy any part of the Atlantic Property at any time after the RR Lease Termination Date. The Guarantor has no right to use or occupy the Atlantic Property from and after the date hereof (other than in his capacity as the sole member of the Debtor). On the RR Lease Termination Date:

i)      The RR Lease shall be automatically deemed terminated and of no further force an effect; <u>provided however</u>, notwithstanding such termination, Tenant shall remain liable for all obligations and rent owed under the RR Lease prior to the RR Lease Termination Date;

ii)     Tenant and the Guarantor shall forever vacate and surrender the Atlantic Property to the Lender in broom clean condition and free of any and all occupants, and deliver all keys and security codes for any locks and alarms to the Lender; and

iii)    Tenant and the Guarantor shall be deemed to forever abandon any property of any kind that is not physically removed from the Atlantic Property on or prior to the RR Lease Termination Date,

---

[2] In the event of any conflict between this Stipulation and the L&T Stipulation, the provisions which shall be more favorable to Lender and/or which enlarge Lender's rights shall apply.

and the Lender is hereby authorized to dispose, sell or discard any property remaining at the Atlantic Property on the RR Lease Termination Date, in any manner that the Lender may elect in its sole discretion without any liability or obligation whatsoever to the Debtor, the Tenant, the Guarantor or any other person or entity.

(c)    In the event that either (i) Tenant, the Guarantor, SK, BMSL, or Commons files any petition under any chapter of the Bankruptcy Code or (ii) any person or entity files an involuntary petition against the Tenant, the Guarantor, SK, BMSL, or Commons under any chapter of the Bankruptcy Code, then (x) any such filing shall be deemed a bad faith filing, (y) the automatic stay is hereby prospectively terminated as to the Lender and the Lender shall be free to take any and all actions against any of them and with respect to the Atlantic Property and the other Properties, including, without limitation, conducting a foreclosure sale of the Atlantic Property, and continuing the First Foreclosure Proceeding and the Second Foreclosure Proceeding, and conducting a foreclosure sale of the other Properties, and (z) Tenant, the Guarantor, SK, BMSL, Commons and all other persons and entities within their active and/or constructive control shall immediately vacate and the Atlantic Property and the other Properties.

(d)    Simultaneously herewith Tenant shall execute and deliver to the Lender a confession of judgment (the "**Tenant CJ**"), in the form of **Exhibit D** hereto, in the amount of the Past Due Rent. Tenant shall pay all Past Due Rent directly to the Lender and if any payment of any portion of the Past Due Rent is made to the Debtor or any other person or entity, the payment shall not reduce the amount owed by Tenant to the Lender. If any Past Due Rent actually paid to the Lender and is not subject to disgorgement, the Lender will apply such payment to the outstanding balance of its claims in such manner as the Lender shall elect in its sole discretion.

(e)    Without limiting any obligations or provisions herein, the Guarantor agrees that he shall be liable for all of Tenant's obligations hereunder and under the L&T Stipulation (as defined below), provided that Lender shall not enforce such guaranty against the Guarantor if Tenant, the Guarantor and the Debtor (a) have complied with their obligations under Paragraph 9(a), and (b) prior to November 27, 2020, have both vacated and surrendered possession of the Atlantic Property to the Lender in broom clean condition and free of any occupants and delivered all keys and security codes for any locks and alarms to the Lender.

10.    **Lender's Additional Remedies**.  If as of the RR Lease Termination Date (i) the Lender has not been paid in full on its claims as allowed in Paragraph 2 and (ii) Tenant has not timely and fully vacated and surrendered the Atlantic Property, then:

(a)    The Bankruptcy Court, at request of the Lender (which may be by letter to the Bankruptcy Court) shall immediately direct the United States Marshal to physically evict Tenant and any other occupant of the Atlantic Property and its property from the Atlantic Property premises;

(b)    The Guarantor shall be liable to the Lender in the sum of $100,000.00 as liquidated damages for Tenant's breach of its obligation to timely vacate hereunder and the Lender may enforce the "Guarantor CJ" against the Guarantor. The "**Guarantor CJ**" shall mean the Confession of Judgment by the Guarantor in the form of **Exhibit E** hereto, which the

Guarantor is executing and delivering to the Lender simultaneously herewith.

(c)     Simultaneously herewith Tenant, AJS, and their counsel shall execute and deliver to the Lender that certain Stipulation of Settlement, in the form of **Exhibit F** hereto (the "**L&T Stipulation**"), in the proceeding captioned *Nicole Katsorhis, Esq., Temporary Receiver v. Richie Rich Restaurant, A.J. Singh, "XYZ Corp"*, bearing Index No. L&T 52740/2019 (the "**L&T Action**"), pending in the Civil Court of the City of New York, Queens County, Part 52. Tenant, AJS and their counsel shall fully cooperate with the Lender and Nicole Katsorhis, Esq. (the "**Receiver**") and timely comply in all respects with the L&T Stipulation. The Lender, any of its agents and/or successors and the Receiver may enforce the L&T stipulation in all respects.

11.     **Termination of the Automatic Stay**.

(a)     The automatic stay pursuant to Section 362(a) of the Bankruptcy Code is hereby permanently terminated, pursuant to Sections 362(d)(1) and 362(d)(4), as to the Lender. From and after the date hereof the Lender shall be free to enforce any and all of its rights and remedies whatsoever against the Debtor, its estate and their property, whether under any of the Loan Documents, under this Stipulation, at law, in equity or otherwise, including without limitation the right to continue the prosecution of the First Foreclosure Proceeding and the Second Foreclosure Proceeding and conducting a foreclosure sale of the Atlantic Property pursuant to the Foreclosure Judgment. The Debtor hereby waives any right to seek an injunction, whether under Section 105 of the Bankruptcy Code or otherwise, against the Lender for any reason whatsoever. Provided that no Event of Default has occurred, then (i) a sale of the Atlantic Property will not be conducted until a date that is on or after December 15, 2020; and (ii) prior to November 27, 2020 the Lender will not (a) take action to continue the Second Foreclosure Proceeding or evict any tenants at the Hillside Property or the 120th Street Property or (b) bring a motion to enforce any deficiency amount against the Guarantor; provided however it is expressly agreed that nothing herein shall prevent or restrict the Lender from scheduling or conducting sale of the Atlantic Property pursuant to Section 363 of the Bankruptcy Code or pursuant to the Foreclosure Judgment.

(b)     Notwithstanding anything to the contrary whatsoever, it is the express intention of the parties hereto that the Lender shall have the option, in its sole and absolute discretion, as to whether any sale of the Atlantic Property shall be conducted pursuant to Section 363 of the Bankruptcy Code or pursuant to the Foreclosure Judgment.

(c)     The Guarantor, SK, BMSL, Tenant and Commons each agrees that (i) it will not file any voluntary bankruptcy petition or solicit or conspire or cooperate with any person or entity to file any involuntary petition against any of the foregoing persons or entities at any time prior to the actual closing of the sale of the Atlantic Property; (ii) and bankruptcy filing by or against any of them shall be conclusively deemed a bad faith filing, done for the primary purpose of hindering or delaying the Lender; (iii) that pursuant to Bankruptcy Code Section 362(d)(4), any future filings by any person or entity with an interest in the Atlantic Property will not operate as an automatic stay against the Lender and its successors and/or assigns with respect to the Atlantic Property for a period of two years from the date of entry of this Stipulation; (iv) any automatic stay in any bankruptcy case filed by or against the Debtor, Guarantor, SK, BMSL, Tenant and/or Commons is without effect and the Lender shall be entitled to conduct and close

on the sale of the Atlantic Property notwithstanding any such bankruptcy filing; and (v) the Guarantor, SK, BMSL, Tenant and Commons shall be liable to the Lender for any and all costs, damages, and expenses incurred by the Lender as a result of any such bankruptcy filing, including, without limitation, all of the Lender's reasonable attorneys' fees and expenses in connection with any such bankruptcy filing, and interest at the rate of 12% per annum on the amount of the Lender' then outstanding claims. Any federal, state, municipality, county and local governmental agency or department, including without limitation, the Office of the City Register of the City of New York, County of Queens, shall record this Stipulation in the land records, as necessary or appropriate to effectuate the intent of this Stipulation.

12. **No Plan or Interference with the Lender's Rights**. The Debtor hereby irrevocably withdraws its Fifth Amended Plan of Reorganization and the Objection that it filed to the Lender's POC No. 2 and POC No. 3. The Debtor, the Guarantor, SK, BMSL, Tenant and Commons shall not file any plan of reorganization or liquidation whatsoever in the Debtor's case without the express prior written consent of the Lender and shall not take any act to interfere with or to in any way hinder, delay, or frustrate any of the Lender's rights, whether under the Loan Documents, this Stipulation, the L&T Stipulation or otherwise. Notwithstanding the immediately prior sentence, after the date that the Lender has either (i) issued a satisfaction of the First Mortgage and Second Mortgage or (ii) has issued an assignment of the First Mortgage and Second Mortgage, the consent of the Lender shall not be required to file a plan in the Debtor's case.

13. **Debtor is Sole Owner of the Atlantic Property**. Upon this Stipulation being "So-Ordered" by the Bankruptcy Court, this Stipulation shall constitute a determination that the Debtor is the owner of 100% of the fee simple interest in the Atlantic Property, free and clear of any rights or claim of Harbans Singh and/or Commons in and to the Atlantic Property.

14. **Retention of Jurisdiction**. The Chapter 11 bankruptcy case of the Debtor shall remain open after this Stipulation has been "So-Ordered" by the Bankruptcy Court, and the Debtor shall remain obligated to timely file any and all reports with the Bankruptcy Court and shall timely pay any and all quarterly fees of the Office of the United States Trustee. If the Debtor actually and timely pays to the Lender both the Discounted Payment under Paragraph 4 and the other payments required under Paragraph 3, then the Debtor shall report this to the Bankruptcy Court. If the Debtor fails to actually and timely pay to the Lender both the Discounted Payment under Paragraph 4 and the other payments required under Paragraph 3, after a closing on the sale of the Atlantic Property, the Debtor and the Lender will report to the Bankruptcy Court the results of the sale. If the Lender and the Debtor cannot agree as to whether the bankruptcy case should stay open or be dismissed, then the Chapter 11 case shall be converted to a case under Chapter 7 at the request of the Lender. Notwithstanding the immediately prior sentence, after the date that the Lender has either (i) issued a satisfaction of the First Mortgage and Second Mortgage or (ii) has issued an assignment of the First Mortgage and Second Mortgage, the consent of the Lender shall not be required as to whether the bankruptcy case should stay open or be dismissed.

15. **Miscellaneous**.

(a) **Further Instruments**. The Debtor, the Guarantor, SK, BMSL, Tenant and Commons shall, whenever and as often as they shall be requested to do so by the Lender,

promptly cause to be executed, acknowledged or delivered any and all such further instruments and documents as may be necessary or desirable, in the sole discretion of the Lender, in order to carry out the intent and purpose of this Stipulation, including without limitation enforcement of any of the Lender's rights hereunder, including, without limitation, in connection with effectuating the sale of the Atlantic Property, including without limitation, any deeds, ACRIS documents, transfer tax documents and affidavits with respect to title and/or authority to act.

(b)    **Written Waiver Only**. No waiver by the Lender of any of its rights or remedies in connection with any Loan Documents, this Stipulation or otherwise shall be effective unless such waiver is in writing and signed and delivered by the Lender. Without limiting the generality of the preceding sentence, nothing contained in this Stipulation nor any delay or omission by the Lender in exercising or enforcing any of its rights and remedies in connection with the Loan Documents or this Stipulation constitutes or shall be construed as a waiver by the Lender of: (i) any defaults or any other breach or default by any of the Obligors under any of the Loan Documents; or (ii) any of Lender's rights or remedies in connection with the First Loan or the Second Loan any of the provisions of any of the Loan Documents, this Stipulation or otherwise.

(c)    **Governing Law**. This Stipulation shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the law on conflicts of law.

(d)    **Relationship of Parties**. Nothing contained in this Stipulation or any of the Loan Documents constitutes or shall be construed as the formation of a partnership, joint venture, tenancy-in-common, or any other form of co-ownership, or the creation of any confidential or fiduciary relationship of any kind between the Lender, on the one hand, and any of the Debtor, the Guarantor, SK, BMSL, Tenant and Commons and/or any other person or entity on the other hand. The Debtor, the Guarantor, SK, BMSL, Tenant and Commons acknowledge and agree that the Lender has at all times acted and shall at all times continue to be acting only as a lender to the Obligors within the normal and usual scope of activities of a lender.

(e)    **Descriptive Headings; Interpretation**. The headings to paragraphs of this Stipulation are for convenient reference only, do not in any way limit or amplify the terms of this Stipulation, and shall not be used in interpreting this Stipulation. For purposes of this Stipulation: (i) the term "including" shall be deemed to mean "including, without limitation,"; (ii) the term "person" means any natural person or any entity, including any corporation, partnership, joint venture, trust, limited liability company, unincorporated organization or association, or trustee; and (iv) whenever the context of this Stipulation reasonably requires, all words used in the singular shall be deemed to have been used in the plural, and the neuter gender shall be deemed to include the masculine and feminine gender, and vice versa. This Stipulation has been prepared and drafted through a joint effort of the parties hereto and, therefore it shall not be construed against any of the parties as the person who prepared or drafted this Stipulation.

(f)    **Time of the Essence**. Time is of the essence with respect to each of the obligations of the Debtor, the Guarantor, SK, BMSL, Tenant and Commons hereunder.

(g)    **Notices**. All notices and other communications provided for in this

Stipulation shall be in writing and shall be given by Federal Express or hand delivery:

If to Lender, at:

>          MLF3 Atlantic LLC
>          100 Park Avenue, Suite 2305
>          New York, New York 10012
>          Attn: Jason S. Leibowitz, Esq.
>
>          with a copy to:
>
>          Katsky Korins LLP
>          605 Third Avenue, 16th Floor
>          New York, New York 10158
>          Attn.: Steven H. Newman, Esq.

If to the Debtor, at:

>          Atlantic 111st LLC
>          110-19 Atlantic Avenue
>          Richmond Hill, NY 11418
>          Attn: Jarnail Singh, Managing Member
>
>          with a copy to:
>
>          Pryor & Mandelup, L.L.P.
>          675 Old Country Road
>          Westbury, New York 11590
>          Attn.: Neil H. Ackerman, Esq.

If to the Guarantor, SK, BMSL, or Tenant, at:

>          Mr. Jarnail Singh
>          95-25 120th Street
>          South Richmond Hill, New York 11419
>
>          with a copy to:
>
>          Rosen & Kantrow
>          38 New Street
>          Huntington, New York 11743
>          Attn.: Fred S. Kantrow, Esq.

If to Commons, at:

> Jay L. Yackow, Esq.
> 355 Post Avenue, Suite 201
> Westbury, New York 11590

Notices shall be deemed given when sent, if by hand, and one (1) business day thereafter, if by Federal Express.

(h)  **Counterparts, Etc**. This Stipulation may be executed in any number of counterparts so long as each signatory hereto executes at least one such counterpart. Each such counterpart shall constitute one original, but all such counterparts taken together shall constitute one and the same instrument.  This Stipulation may be executed by electronic signatures, including without limitation, by PDF, and all electronic signatures shall have the same force and effect as an original signature.

(i)  **Subject to Bankruptcy Court Approval**. This Stipulation is subject to the Bankruptcy Court so-ordering this Stipulation. If this Stipulation is not "So-Ordered" by the Bankruptcy Court then this Stipulation shall be void *ab initio* and the Bankruptcy Court shall convert the Debtor's case to a case under Chapter 7 of the Bankruptcy Code.

(j)  **REVIEW WITH COUNSEL**. THE DEBTOR, THE GUARANTOR, SK, BMSL, TENANT AND COMMONS HEREBY ACKNOWLEDGE AND AGREE THAT: (A) THEY HAVE CAREFULLY READ AND UNDERSTAND ALL OF THE TERMS OF THIS STIPULATION; (B) THEY HAVE EXECUTED THIS STIPULATION FREELY AND VOLUNTARILY AND WITHOUT ANY DURESS, AFTER HAVING CONSULTED WITH THEIR RESPECTIVE INDEPENDENT LEGAL COUNSEL AND AFTER HAVING ALL OF THE TERMS OF THIS STIPULATION EXPLAINED TO EACH OF THEM BY THEIR INDEPENDENT LEGAL COUNSEL; (C) THE OBLIGATIONS AND RELEASES CONTAINED IN THIS STIPULATION ARE REASONABLE, NOT CONTRARY TO PUBLIC POLICY OR LAW, AND HAVE BEEN INTENTIONALLY, INTELLIGENTLY, KNOWINGLY AND VOLUNTARILY AGREED TO BY EACH OF THEM; (D) THE PROVISIONS CONTAINED IN THIS STIPULATION HAVE BEEN AGREED TO BY EACH OF THEM WITH FULL KNOWLEDGE OF THEIR SIGNIFICANCE AND CONSEQUENCES; (E) THEY HAVE HAD A FULL AND ADEQUATE OPPORTUNITY TO NEGOTIATE THE TERMS CONTAINED IN THIS STIPULATION; (F) THEY ARE EXPERIENCED IN AND FAMILIAR WITH LOAN TRANSACTIONS OF THE TYPE EVIDENCED BY THIS STIPULATION; AND (G) THE OBLIGATIONS, WAIVERS AND RELEASES CONTAINED IN THIS STIPULATION ARE MATERIAL INDUCEMENTS TO THE LENDER'S EXECUTION OF THIS STIPULATION, AND THE LENDER HAS MATERIALLY RELIED ON ALL PROVSIONS IN THIS AGREEMENT IN ENTERING INTO THIS STIPULATION AND WILL CONTINUE TO RELY ON ALL SUCH PROVSIONS IN ANY RELATED FUTURE DEALINGS WITH ANY OF THEM.

(k)  **Successors and Assigns**.  This Stipulation shall inure to the benefit of any successors and assigns of Lender.

DocuSign Envelope ID: 3F18F9C4-CD7C-4E99-975E-BD16382871BB

**IN WITNESS WHEREOF**, the Debtor, the Guarantor, SK, BMSL, Tenant, Commons, and the Lender have executed and delivered this Stipulation on the date first set forth above.

**ATLANTIC 111ST LLC**
a New York limited liability company

By: _____
Name:  Jarnail Singh
Title:    Managing Member

**RICHI RICH PALACE NY INC.**
**A/K/A RICHI RICH RESTAURANT**
a New York corporation

By: _____
Name:  Dhan Singh
Title:    Chief Executive Officer / President

By: _____
Name:  Jarnail Singh
Title:    Manager

**BMSL MANAGEMENT LLC**
a New York limited liability company

By: _____
Name:  Jarnail Singh
Title:    Managing Member

_____
**JARNAIL SINGH, individually**

_____
**SATYA KAUR, individually**

24

**ATLANTIC AVENUE COMMONS LLC,**
a New York corporation

By : _____
Name:  Jay Yackow
Title:   Managing Member


**MLF3 ATLANTIC LLC**


By: _____
Name:   David Aviram
Title:    Manager


**"SO-ORDERED"**

This _____ day of _____ 2020


_____
United States Bankruptcy Judge