**SILVERMANACAMPORA LLP**
Counsel to Kenneth P. Silverman, Esq.,
  The Chapter 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Brian Powers
Nicholas J. Bebirian

**Hearing Date: March 8, 2021**
**Time: 09:30 a.m.**

**Objection Date: March 1, 2021**
**Time: 4:00 p.m.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

In re:                                                                Chapter 7

              ATLANTIC 111ST LLC,                     Case No.: 19-73137 (REG)

                            Debtor.
----------------------------------------------------------------x

   **PLEASE TAKE NOTICE**, that by motion dated February 12, 2021 (the "Motion")[1],

Kenneth P. Silverman, Esq., the Chapter 7 Trustee (the "Trustee") of the estate (the "Estate") of

Atlantic 111st LLC (the "Debtor"), will move before the Honorable Robert E. Grossman, United

States Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of New York,

Alfonse M. D'Amato U.S. Courthouse, 290 Federal Plaza, Central Islip, New York 11722, on

**March 8, 2021 at 09:30 a.m.** (the "Hearing"), or as soon thereafter as the Trustee can be heard,

pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

and section 105 of title 11, United States Code (the "Bankruptcy Code"), seeking approval of the

terms of a Stipulation and Order (the "Stipulation') by and between the Trustee and MLF3 Atlantic

LLC (the "Lender" and, together with the Trustee, the "Parties" and each a "Party").

   **PLEASE TAKE FURTHER NOTICE**, that objections to the Motion and/or the

Stipulation, if any, must be: (i) filed with the Court electronically by registered users of the Court's

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

electronic case filing system and, by all other parties in interest, mailed to the Clerk of the United States Bankruptcy Court for the Eastern District of New York, 290 Federal Plaza, Central Islip, New York 11722 with a hard copy delivered directly to the Chambers of the Robert E. Grossman; and (ii) served electronically and mailed to: (a) counsel to the Trustee, SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York, 11753, Attn: Brian Powers, Esq.; and (b) the Office of the United States Trustee, 560 Federal Plaza, Central Islip, New York 11722-4456, so as to be filed and received no later than **March 1, 2021 at 4:00 p.m.**

       **PLEASE TAKE FURTHER NOTICE**, that the Hearing may be adjourned without further notice other than the announcement of such adjournment in open court, or the filing of a notice of adjournment on the docket.

Dated: Jericho, New York
       February 12, 2021

                  **SILVERMANACAMPORA LLP**
                  Counsel to Kenneth P. Silverman, Esq.,
                  the Chapter 7 Trustee

                  By: *s/ Brian Powers*
                      Brian Powers
                  Member of the Firm
                  100 Jericho Quadrangle, Suite 300
                  Jericho, New York 11753
                  (516) 479-6300

**SILVERMANACAMPORA LLP**
Counsel to Kenneth P. Silverman, Esq.,
 The Chapter 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Brian Powers
Nicholas J. Bebirian

**Hearing Date: March 8, 2021**
**Time: 09:30 a.m.**

**Objection Date: March 1, 2021**
**Time: 4:00 p.m.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re                                                                        Chapter 7

     ATLANTIC 111ST LLC,                    Case No. 8-19-73137 (reg)

           Debtor.

-------------------------------------------------------------------x

### TRUSTEE'S MOTION PURSUANT TO BANKRUPTCY
### RULE 9019 FOR THE ENTRY OF AN ORDER APPROVING THE
### <u>STIPULATION BY AND BETWEEN THE TRUSTEE AND MLF3 ATLANTIC LLC</u>

     Kenneth P. Silverman, Esq., the chapter 7 trustee (the "<u>Trustee</u>") of the bankruptcy estate of Atlantic 111st LLC (the "<u>Debtor</u>"), respectfully submits this motion (the "<u>Motion</u>") seeking the approval, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and section 105 of title 11, United States Code (the "<u>Bankruptcy Code</u>"), of the terms of a Stipulation and Order (the "<u>Stipulation</u>') by and between the Trustee and MLF3 Atlantic LLC (the "<u>Lender</u>" and, together with the Trustee, the "<u>Parties</u>" and each a "<u>Party</u>"), and states as follows:

### <u>BACKGROUND</u>

     1.     On April 18, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "<u>Court</u>").

2. On November 18, 2020, the Court entered an order converting the Debtor's chapter 11 case to a case under chapter 7.

3. On November 18, 2020, the Office of the United States Trustee filed the Notice of Appointment of Kenneth P. Silverman as interim Chapter 7 Trustee.

4. On December 18, 2020, the initial Bankruptcy Code §341 meeting was held and the Trustee was duly qualified as the permanent trustee and is currently acting in that capacity.

5. As described at length in the Stipulation, the Debtor is the fee owner of real property commonly known as 110-19 Atlantic Avenue, Richmond Hill, New York (the "<u>Real Property</u>" or "<u>Atlantic Property</u>").

**<u>The Loans Against the Real Property</u>**

6. As discussed at length in the Stipulation, on April 11, 2016, pursuant to (a) an omnibus assignment, (b) assignment of collateral mortgage, (c) assignment of first purchase money mortgage, and (d) assignment of second purchase money mortgage (the "<u>Assignments</u>"), the (i) collateral mortgage, (ii) the first underlying note, mortgage and other related loan documents and (iii) the second underlying note, mortgage and other related loan documents (collectively, the "<u>Loan Documents</u>") were assigned to MLF3 Atlantic LLC (the "<u>Lender</u>").

**<u>Pre-petition Litigation with the Debtor</u>**

7. The Debtor defaulted under the terms and provisions of Loan Documents by failing to repay the monthly principal and interest payment due July 1, 2011 and each month thereafter, constituting an event of default under the Loan Documents (the "<u>Initial Defaults</u>").

8. Jarnal Singh (the "<u>Guarantor</u>") and Debtor (collectively, the "<u>Obligors</u>") and Bibi N. Ahman, the assignor of the Loan Documents to the Lender ("<u>Bibi</u>"), entered into a certain Forbearance Agreement dated June 1, 2012 (the "<u>Forbearance Agreement</u>") concerning the Initial Defaults.

9.     The Obligors thereafter defaulted under the Forbearance Agreement by failing to make the payments due and payable pursuant to the Forbearance Agreement (the "Forbearance Defaults"), and by letter dated September 28, 2015 Bibi gave due and proper notice to the Obligors of the Obligors' Forbearance Defaults.

10.     On or about December 30, 2015, Bibi duly declared the balance of the principal indebtedness immediately due and payable and commenced a foreclosure action in the New York State Supreme Court, Queens County (the "State Court") respecting the First Loan by filing a Summons and Complaint under Index No. 713435/2015 in the matter originally styled *Bibi N. Ahmad v. Atlantic 111st LLC, et. al.* (the "First Foreclosure Proceeding").

11.     The Obligors, Harbans Singh, and Richie Rich Palace NY Inc., a/k/a Richi Rich Restaurant ("RR") each filed an Answer in the First Foreclosure Proceeding.

12.     The State Court granted summary judgment in favor of Lender in the First Foreclosure Proceeding pursuant to an Order of Reference dated March 8, 2018.

13.     The State Court granted Lender a Judgment of Foreclosure and Sale, dated February 7, 2019, in the First Foreclosure Action which was duly entered by the County Clerk of the Supreme Court, Queens County on February 27, 2019 (the "Foreclosure Judgment"), and a notice of entry of the Foreclosure Judgment was duly filed with the State Court on February 28, 2019. No person appealed the Foreclosure Judgment and the time to do so has expired. The Foreclosure Judgment is final and non-appealable.

14.     The Foreclosure Judgment granted a money judgment in favor of Lender in the amount of (i) $3,082,214.20 as of June 20, 2018 (the "Principal/Interest Portion of Judgment")[2]; plus

---

[2] The amount of $3,133,589.20 is sometimes referred to herein as the "Base Judgment Amount", and represents the sum of (i) the $3,082,214.20 Principal/Interest Portion of Judgment, plus (ii) the $51,375.00 Attorneys' Fees Portion of Judgment.

(ii) $51,375.00 as of June 20, 2018 (the "Attorneys' Fees Portion of Judgment"); plus (iii) interest on $3,082,214.20 at the rate of 12% per annum from June 20, 2018 until the date that all obligations under the First Loan Documents are paid in full by the Debtor; plus (iv) all protective advances and all reasonable attorneys' fees and expenses incurred by the Lender after June 20, 2018, plus interest thereon at the rate of 12% per annum from the date of payment thereof or advance by Lender until the date that all obligations under the First Loan Documents are paid in full by the Debtor; plus (v) $2,310.00 in costs and disbursements in the First Foreclosure Proceeding, plus interest on $2,310.00 at the rate of 12% per annum from June 20, 2018 until the date that all obligations under the First Loan Documents are paid in full by the Debtor; plus (vi) $750.00 in fees to the referee in the First Foreclosure Proceeding.

15.     On or about September 9, 2016, Lender commenced a second foreclosure action in the State Court respecting the Second Loan under Index No. 710813/2016 in the matter styled *MLF3 Atlantic LLC v. Atlantic 111st LLC, et al.* (the "Second Foreclosure Proceeding").

**The Lender's Claims**

16.     The Lender timely filed in the Debtor's bankruptcy case: (i) a Proof of Claim with respect to the First Loan in the secured amount of $4,056,801.88 as of the Petition Date, plus interest, protective advances and attorneys' fees and expenses as set forth therein all of which continue to accrue, which Proof of Claim was assigned Claim Number 2 on the Claims Register maintained by the Bankruptcy Court ("POC No. 2"); and (ii) a  Proof of Claim with respect to the Second Loan in the secured amount of $350,674.56 as of the Petition Date, plus interest, protective advances and attorneys' fees and expenses as set forth therein all of which continue to accrue, and such claim was assigned Claim Number 3 on the Claims Register maintained by the Bankruptcy

Court ("POC No. 3"; and together with POC No. 2 are collectively referred to herein as the "Proofs of Claim").

17.     On or about October 23, 2019, while the case was still a Chapter 11 case, the Debtor filed with the Bankruptcy Court a motion objecting to the Lender's Proofs of Claim and alleged, among other things, the existence of a so called Modification Agreement, dated February 4, 2014 (the "Modification Agreement"), which the Debtor asserted was signed by Bibi (the "Claims Objection Motion").

18.     The Lender disputes all of the allegations contained in the Claims Objection Motion and Lender and has asserted, among other things, that Bibi never signed the Modification Agreement, Bibi's signature on the purported Modification Agreement is forgery, and that the Debtor is defrauding this Court by asserting the existence of such agreement.

19.     On account of the First Loan, First Loan Documents and POC. No.2, the Lender asserts a first priority secured claim against the Atlantic Property and the Lender's other collateral in the amount in excess of $5.1 million (the "Asserted First Priority Secured Claim").

20.     On account of the Second Loan, Second Loan Documents and POC. No.3, the Lender asserts a second priority secured claim against the Atlantic Property and the Lender's other collateral in the amount in excess of $930,000 (the "Asserted Second Priority Secured Claim"). The Asserted First Priority Secured Claim and the Asserted Second Priority Secured Claim are sometimes collectively referred to herein as the "Asserted Secured Claims".

21.     Pursuant to the Loan Documents and the Foreclosure Judgment interest on the Asserted Secured Claims has accrued and continues to accrue at the rate of 12% per annum (the "Default Rate").

22. Both the Parties are desirous of resolving all issues between them and liquidating the Atlantic Property expeditiously consistent with the Trustee's duties under Section 704(a)(1) and other applicable provisions of the Bankruptcy Code, and have engaged in extensive communications and discussions concerning the relative merits of the Parties' positions, and the most appropriate and fair mechanism for the Trustee's liquidation of the Atlantic Property, resulting in the Stipulation.

## THE SETTLEMENT

23. As a result of the Trustee's negotiations with the Lender, the Trustee has determined in his business judgment to enter into the settlement with the Lender, thereby eliminating the costs, risks, and delays attendant to administering the Real Property and contesting the Asserted Secured Claims. Accordingly, the Parties have concluded that the Stipulation represents a fair and equitable resolution and will provide an immediate benefit to the Debtor's estate.

24. The salient terms of the Stipulation are as follows:[3]

    a. **Allowance of The Lender's Claims and Liens**

        i. The Lender's claim under the First Loan Documents and POC No. 2 is hereby permanently settled, fixed, liquidated and allowed in the following sums (the aggregate amount set forth below in this Section 3(b) is hereinafter referred to as the "Allowed First Priority Secured Claim"): (i) sum of $4,852,159.57,[4] as of November 30, 2020, **PLUS** (ii) interest at the rate of

---

[3] The following is a summary of some of the important terms of the Stipulation, but does not include all terms of the Stipulation. All parties are encouraged to review the Stipulation in its entirety for a full recitation of its terms. A copy of the Stipulation is annexed hereto as **Exhibit A**.

[4] This sum includes interest, default rate interest, attorneys' fees and expenses and protective advances only through November 30, 2020. For the avoidance of doubt, all advances (including without limitation all Lender Advances) made by the Lender on or after December 1, 2020 (together with interest thereon at the rate of 12% per annum from

12% per annum on the Base Judgment Amount of $3,133,589.20 from December 1, 2020 until the date that all obligations under the First Loan Documents are paid in full by the Trustee and the Debtor's estate, **PLUS** (iii) all protective advances (including, without limitation, all Lender Advances, as defined below), and all fees, costs, expenses (including, without limitation, attorneys' fees and expenses), and reasonable attorneys' fees and expenses incurred by the Lender after December 1, 2020, plus interest thereon at the rate of 12% per annum from the date of payment thereof or advance by Lender until the date that all obligations under the First Loan Documents are paid in full by the Debtor.

ii. The Lender's claim under the Second Loan Documents and POC No. 3 is hereby permanently settled, fixed, liquidated and allowed in the following sums (the aggregate amount set forth below in this Section 3(c) is hereinafter referred to as the "Allowed Second Priority Secured Claim"): (i) the sum of $872,133.37 as of November 30, 2020, plus (ii) interest at the rate of 12% on such sum from December 1, 2020 until the date that all obligations under the Second Loan Documents are paid in full by the Trustee and the Debtor's estate, plus (iii) all protective advances (including, without limitation, all Lender Advances, as defined below) and all fees, costs, expenses (including, without limitation, attorneys' fees and expenses), and all reasonable attorneys' fees and expenses incurred by the Lender after December 1, 2020, plus interest thereon at the rate of 12% per annum from the date of

---

the date of any advance) and the amount of any Carve Out Expenses shall be automatically added to the amount of, and be part of, each of the Allowed Secured Claims.

payment thereof or advance by Lender until the date that all obligations under the Second Loan Documents are paid in full by the Debtor. The Allowed First Priority Secured Claim and Allowed Second Priority Secured Claim are (i) sometimes hereinafter referred to collectively as the "<u>Allowed Claims</u>" or "<u>Allowed Secured Claims</u>"; and (ii) are sometimes hereinafter referred to individually as an "<u>Allowed Claim</u>" or an "<u>Allowed Secured Claim</u>").

iii.   The Lender expressly reserves any and all rights to pursue any claims against any third parties, including without limitation, BMSL, SK, the Guarantor and any other guarantor or obligor of or under the Loans and Loan Documents.

iv.   As adequate protection to the Lender for the liens, rights, priorities, claims and protections granted to it pursuant to the Loan Documents and this Stipulation, the Lender is hereby granted: (a) replacement liens on all property of the Debtor's Estate, including without limitation, the Atlantic Property, Rents, contract rights, deposits, cash collateral, and bank accounts of the Debtor and its Estate (whether in the name of the Debtor or the Trustee, and including, without limitation, the Rent Account, as defined below), and on any "Jarnail Singh Claims" (as defined below),  all of the foregoing whether existing or arising before, on or after the Petition Date (collectively, the  "<u>Replacement Liens</u>"), to secure the Allowed Secured Claims and the Lender's claims hereunder, which Replacement Liens (i) shall be and shall continue to be first and senior in priority to all other interests, security interests,

mortgages, liens and encumbrances of every kind, nature and description, whether created consensually, by an order of this Bankruptcy Court or any other court, or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with Sections 363, 364, and/or any other Sections of the Bankruptcy Code or other applicable law, and (ii) shall not at any time whatsoever be made subject or subordinate to, or made *pari passu* with, any other lien, security interest or claim against any property of the Trustee or the Debtor's Estate, whether any such liens now exist or are hereafter created, pursuant to Sections 363 or 364 of the Bankruptcy Code or otherwise; and (b) a priority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code in the amount of any decline in the value of any Pre-Petition Collateral and any Rents or other property of the Debtor's Estate paid by the Trustee to any third person from and after the Petition Date (the "Adequate Protection Administrative Claim") having priority over all any and all other administrative claims and other unsecured obligations, liabilities, indebtedness, and claims of any kind and nature, now in existence or hereafter incurred by the Debtor or the Trustee (or any successor trustee in this case), including, without limitation, any and all administrative expenses of the kinds specified or ordered pursuant to Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1114, and other Sections of the Bankruptcy Code, and shall at all times be senior to the rights of the Trustee, any successor trustee, or any creditor or other party in interest in this case or any subsequent proceedings or cases

under the Bankruptcy Code; provided, however, the Replacement Liens and Adequate Protection Administrative Claim shall be subject and subordinate in all respects to the Carve Out Expenses (as defined in Paragraph 8 below), and shall not apply to the proceeds of any cause of action of the Debtor's Estate under Chapter 5 of the Bankruptcy Code (other than the Jarnail Singh Claims, as defined below).

b. **Management and Sale of the Atlantic Property**.

    i. The Trustee will proceed expeditiously with the marketing and sale of the Atlantic Property (the "Sale") pursuant to Section 363 and other applicable provisions of the Bankruptcy Code in a manner that the Trustee and the Lender agree will maximize the value of the Atlantic Property and liquidate the Atlantic Property as quickly as possible. The marketing plan, the method and terms of sale, and the mechanics of the auction will be subject to the Lender's consent and the Bankruptcy Court's approval. The Trustee will seek the Bankruptcy Court's approval of the proposed auction and sale mechanics and procedures.

c. **Carve Out of Liens**.

    i. The Lender's liens, claims and security interests in the Atlantic Property shall be subject only to the right of payment of the following expenses ("Carve Out Expenses"):

        1. Subject to the terms and conditions of this Stipulation, in the event of the closing of a sale of the Atlantic Property, which sale is conducted in accordance with terms and conditions of this

Stipulation, subject to the Lender's rights to oppose any motion of the Trustee for approval of the Sale to the successful bidder after an auction, the commissions (but not expenses) of the retained Broker but only to the extent: (i) the Lender has agreed in writing to the retention of such particular broker(s) and the terms and fees (in the form of a buyer's premium) and/or commissions thereof; (ii) in the event that the Lender (or any designee or assignee thereof, provided such designee or assignee is affiliated with the Lender, and is not an unrelated third party) is not the successful bidder at an auction of the Atlantic Property and such successful bidder takes title to the Atlantic Property, such fees (in the form of a buyer's premium) does not exceed the aggregate sum of three and one-half (3.50%) percent of the amount bid by such successful bidder, but only to the extent that such fees are actually paid by such successful bidder (in the form of a buyer's premium in excess of the sale price at auction); and (iii) in the event that the Lender (or any designee or assignee thereof, provided such designee or assignee is affiliated with the Lender, and is not an unrelated third party) is the successful bidder at an auction of the Atlantic Property and takes title to the Atlantic Property, such commissions do not exceed the aggregate sum of three quarters of one (0.75%) percent of the amount bid by the Lender (or any designee or assignee thereof, provided such designee or assignee is affiliated with the Lender, and is not an unrelated third

party) (the applicable amount set forth in this Paragraph 8(a) is referred to herein as the "Broker Carve Out");

2.  Subject to the terms and conditions of this Stipulation, the sum of $275,000.00 plus the amount, if any, of an "Enhanced Amount", as defined below (collectively the "Estate Carve Out" or "Estate Pot"). The Estate Carve Out shall be used to pay (i) the reasonable commissions, fees and expenses of the Trustee approved by a final order of the Bankruptcy Court pursuant to Section 326 of the Bankruptcy Code ("Allowed Trustee Fees"); (ii) the reasonable fees and expenses actually incurred and approved by a final order of the Bankruptcy Court pursuant to Sections 327, 328, 330, or 331 of the Bankruptcy Code (collectively, "Allowed Professional Fees") by the attorneys and accountants retained under Section 327 of the Bankruptcy Code by the Trustee (collectively, the "Professionals"); and (iii) a potential distribution to other creditors of the Estate in accordance with the priority set forth in the Bankruptcy Code. Notwithstanding anything to the contrary, the Estate Pot shall include the Enhanced Amount, if and only if, the Sale Proceeds (as defined below, and for the avoidance of doubt, exclusive of any buyer's premium and amounts to clear title) exceed the sum of $5,000,000.00. The "Enhanced Amount" shall mean the sum equal to: (x) 0.025 multiplied by (y) the sum that is equal to (i) the amount of Sale Proceeds paid in cash to the Trustee at the closing of the Sale

(excluding the amount of any buyer's premium and excluding the amount of any taxes or similar amounts that are paid at closing in order to remove any liens, charges or violations on the Atlantic Property) **MINUS** (ii) $5,000,000.00.

d. **Payment of The Lender's Allowed Secured Claims and Lender's Deficiency Claim**.

    i. No later than one (1) business day following the clearance of any proceeds of sale of the Atlantic Property whether from a third-party bidder or from the Lender Bid Cash Component (collectively, the "Sale Proceeds"), the Trustee shall initiate a wire transfer to the Lender (pursuant to such wire instructions as the Lender shall provide to the Trustee) in an amount equal to the gross amount of all the Sale Proceeds, plus all Rents collected and then held by the Trustee, with respect to the Atlantic Property, less (i) the amount of a 0.75% Broker's commission, and (ii) the sum of $275,000.00 plus (iii) the amount, if applicable, of an Enhanced Amount (the amount to be paid to the Lender pursuant to this Section 16 (a) being referred to herein as the "Lender Payment").[5]

    ii. In the event that the Sale Proceeds from all Sales of the Atlantic Property are not sufficient to pay the Lender's Allowed Secured Claims in full, then the Lender shall automatically have a deficiency claim (the "Deficiency

---

[5] The Trustee has explained to the Lender the United States Trustee's general limitations on the use of wire transfers pursuant to Section 5(F)(2) of the United States Trustee's Handbook for Chapter 7 Trustee, effective October 1, 2012, and requested to make this payment by Estate check. The Lender insisted that the payment be made by wire and that it was a material condition to entry into this Stipulation.

Claim") on account of both its Allowed First Priority Secured Claim and its Allowed Second Priority Secured Claim in the amount equal to the sum of:

1. the amount of the Lender's Allowed Secured Claims on the date of the Lender's receipt of the Lender Payment; **PLUS**

2. any amount of Sale Proceeds, if any, required to be paid to NYC under Paragraph 22 below; **PLUS**

3. the amount of the Lender Bid Cash Component, if the Lender (or its assignee or designee) is the purchaser of the Atlantic Property and such amount was paid to the Trustee; **LESS**

4. the amount of the Lender Payment; **LESS** (but, if and only if the Lender or its assignee or designee is the purchaser of the Atlantic Property and made a Lender Credit Bid)

5. (A) if the Lender Bid Cash Component was paid to the Trustee, the amount of the Resulting Credit Bid, or (B) if no Lender Bid Cash Component was paid to the Trustee, the amount of the actual Lender Credit Bid.

iii.   The Deficiency Claim shall be an allowed claim, enforceable against the Debtor, the Estate and all obligors under the Loan Documents. Lender's Deficiency Claim shall have the following priorities in the Debtor's Chapter 7 bankruptcy case:

1. Lender shall have a super priority administrative claim under Section 507(b), 507(a)(2), and 364(c), subject only to the Carve Out Expenses, in the amount of equal to the aggregate of (a) all Carve

Out Expenses paid or payable to any person or entity, (b) the buyer's premium, if any, paid in connection with the Sale, and (c) all protective advances made by the Lender from and after December 1, 2020 (including, without limitation, the aggregate amount of all Lender Advances), which claim shall be senior to all other administrative claims in the Debtor's Chapter 7 case; and

2. the balance of the amount of the Deficiency Claim in excess of the amount set forth in subclause (x) of this Section 16(b) immediately hereinabove, will be a general unsecured claim in the Debtor's Chapter 7 case.

iv.   The Lender shall not be entitled to share in the Estate Pot on account of its Deficiency Claim unless and until all other claims are paid in full. For the avoidance of doubt, the Lender shall be entitled to share in all other assets of the Estate and receive distributions on account of its Deficiency Claim.

e.   **Lien On Jarnail Singh Claims**.

i.   The term "Jarnail Singh Claims" shall mean any and all claims and causes of action of any kind whatsoever of the Debtor and/or the Estate (including, but not limited to, any avoidance actions and any and all Chapter 5 claims), against Jarnail Singh, SK, BMSL, RR and/or any other affiliate, relative, successor, transferee or assignee of any of the foregoing (all of the foregoing persons and entities, together with Jarnail Singh, are collectively referred to herein as the "Jarnail Related Persons". For the avoidance of doubt, (i) the Jarnail Singh Claims shall not include any claims of the Lender against

Jarnail Singh or any of the other Jarnail Related Persons, including, but not limited to the Deficiency Claim, any claims under any of the Loan Documents, and any claims under that certain Stipulation of Settlement, dated September 2020 signed by RR, A.J. Singh, and Jarnail Singh, and their respective attorneys, in that certain action captioned <u>Nicole Katsorhis, temporary receiver v. Richi Rich Restaurant, A.J. Singh, "XYZ Corp", et. al.</u>, in the Civil Court of the City of New York, County of Queens, bearing Index No. L&T 52740/2019; and (ii) the Lender is hereby granted relief from the automatic stay under Section 362(a) to in any way commence, continue, prosecute, collect and enforce in any way those claims to extent the Lender elects to do so in the Lender's sole discretion. Within 90 days after the closing date of the Sale of the Atlantic Property (such 90th day being referred to herein as the "<u>Election Date</u>"), the Trustee shall confer with the Lender as to the prosecution of the Estate's Jarnail Singh Claims. In the event that on or prior to the Election Date, the Trustee commences any actions based on the Jarnail Singh Claims and at least $250,000 of the Estate Pot has been paid to (or set aside for payment to) the Trustee for the Allowed Trustee Fees and Allowed Professional Fees, then any recovery on the Jarnail Singh Claims shall be paid to the Lender after payment of all reasonable and allowed professional fees and expenses of the Trustee (to the extent incurred by the Trustee after the closing date of the Sale) and Trustee commissions, in each case directly associated with the recovery on the Jarnail Singh Claims, up to the amount of the Deficiency Claim. The

Trustee shall (i) seek authority to make such payment to the Lender promptly after the Trustee's receipt of any recovery from any of the Jarnail Singh Claims; and (ii) not settle or abandon any of the Jarnail Singh Claims that are the subject of any action or proceeding commenced by the Trustee without the Lender's prior written consent. All of the Jarnail Singh Claims, as to which the Trustee has not commenced an action on or prior to the Election Date, are hereby automatically deemed forever transferred and assigned by the Trustee and the Debtor's Estate to the Lender (such claims being referred to herein as the "Assigned Jarnail Singh Claims"), as of the Election Date, without any additional consideration therefore and without the need for any other act or document whatsoever. The Lender may abandon and may commence, prosecute, collect, enforce, settle, collect on any and all of the Assigned Jarnail Singh Claims in such manner as the Lender elects, in the Lender's sole and absolute discretion, without the consent or approval of any person and without the requirement of Bankruptcy Court approval. The Bankruptcy Court shall retain non-exclusive jurisdiction to hear any Assigned Jarnail Singh Claims.

ii. To the extent that the Lender pursues any Assigned Jarnail Singh Claims against Jarnail Singh Related Persons, then the Debtor's Estate shall be entitled to five (5%) percent of the net proceeds of the recovery on those claims after payment of all fees and expenses, including, without limitation, all attorneys' fees and expenses, of the Lender associated with the prosecution and/or recovery on all of the Deficiency Claim and all Assigned

Jarnail Singh Claims (including but not limited to the Assigned Jarnail Singh Claim that is the subject of any recovery). The Lender shall promptly make such payment to the Trustee after such recovery has become indefeasible. The Lender's attorneys' fees and expenses shall not be subject to the approval of the Bankruptcy Court. The Lender shall be free to abandon or settle any or all of the Assigned Jarnail Singh Claims at any time whatsoever without the consent of the Trustee or approval of the Bankruptcy Court.

iii. If and only if both (i) the Lender pursues any Assigned Jarnail Singh Claims against Jarnail Singh Related Persons; and (ii) the First Foreclosure Action and the Second Foreclosure Action have been removed to the Bankruptcy Court and are thereafter actually adjudicated by the Bankruptcy Court, then the Trustee shall be entitled to two and one-half (2.5%) percent of the net proceeds of the recovery on those claims after payment of all fees and expenses, including, without limitation, all attorneys' fees and expenses, of the Lender associated with the prosecution and/or recovery on the Deficiency Claim and all Assigned Jarnail Singh Claims against any persons and entities. The Lender shall promptly make such payment to the Trustee after such recovery has become indefeasible. The Lender's attorneys' fees and expenses shall not be subject to the approval of the Bankruptcy Court. The Lender shall be free to abandon or settle the Deficiency Claim without the consent of the Trustee or approval of the Bankruptcy Court.

iv. The Lender may prosecute the First Foreclosure Action or the Second Foreclosure Action, including claims against all Jarnail Related Persons and all other persons without interference by the Trustee. Specifically, the Trustee and the Debtor's Estate do not object to the Lender's continuation of the First Foreclosure Action and/or the Second Foreclosure Action or to the removal of either or both such actions to the Bankruptcy Court.).

## **BASIS FOR THE RELIEF REQUESTED**

25.     Rule 9019(a) of the Bankruptcy Rules governs the approval of compromises and settlements, and provides as follows:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a).

26.     In approving the compromise and settlement, the Court is required to make an "informed and independent judgment" as to whether the compromise and settlement is fair and equitable based on an:

> [e]ducated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.[6]

---

[6] *In re Iridium Operating LLC*, 478 F.3d 452, 462 n.15 (2d Cir. 2007) (quoting *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425, reh'g denied, 391 U.S. 909 (1968)). See *In re Arrow Air, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988); *In re Bell & Beckwith*, 77 B.R. 606, 611 (Bankr. N.D.Ohio), aff'd, 87 B.R. 472 (N.D.Ohio 1987); *Cf. Magill v. Springfield Marine Bank (In re Heissinger Resources Ltd.)*, 67 B.R. 378, 383 (C.D. Ill. 1986) ("the law favors compromise").

27.     In making its determination on the "propriety of the settlement", the Court should consider whether the proposed settlement is in the "best interest of the estate."[7]  As stated in *Arrow Air*, the "approval of [a] proposed compromise and settlement is a matter of this Court's sound discretion."[8]  In passing upon a proposed settlement, "the bankruptcy court does not substitute its judgment for that of the trustee".[9]  The bankruptcy court is not required "to decide the numerous questions of law and fact raised by [objectors] . . . .  [R]ather [the Court should] canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness."[10]  In passing upon the reasonableness of a proposed compromise, the Court "may give weight to the opinions of the Trustee, the parties and their counsel."

28.     The Second Circuit in *re Iridium Operating LLC*[11] outlined the following seven factors (the "Iridium Criteria") to be considered by a court in deciding whether to approve a compromise or settlement:

> i.      the balance between the litigation's possibility of success and the settlement's present and future benefits;
>
> ii.     the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment if the settlement is not approved;
>
> iii.    the paramount interest of the creditors, including the proportion of class members who do not object to or who affirmatively support the settlement;

---

[7] *Handler v. Roth (In re Handler)*, 386 B.R. 411, 420 (Bankr. E.D.N.Y. 2007)(quoting *In re Adelphia Communications Corp.*, 327 B.R. 143, 158 (Bankr. S.D.N.Y. 2005)); *Depo v. Chase Lincoln First Bank, N.A.* (In re Depo), 77 B.R. 381, 383 (N.D.N.Y. 1987), *aff'd*, 863 F.2d 45 (2d Cir. 1988).

[8] *Arrow Air,* supra, 85.B.R. at 891.

[9] *In re Depo*, 77 B.R. at 384 (citations omitted).

[10] *Bell & Beckwith*, 77 B.R. at 612; see also *In re Handler*, 386 B.R. at 421.

[11] 478 F.3d 452, 462 (2d Cir. 2007).

<ol type="i" start="4">
<li>whether other parties in interest support the settlement;</li>
<li>the competency and experience of the counsel who support the proposed settlement;</li>
<li>the relative benefits to be received by individuals or groups within the class; and</li>
<li>the extent to which the settlement is the product of arm's length bargaining.[12]</li>
</ol>

29. The Trustee has determined in his business judgment that entering into the Stipulation is in the best interest of the Debtor's estate, falls within the lowest range of reasonableness, and is the most economical and efficient way to realize value for the Real Property without the need to incur additional administrative costs.

30. The Trustee and his professionals have reviewed the information provided by the Lender in support of its Asserted Secured Claims, including the Loan Documents and documents filed in the First Foreclosure Proceeding and Second Foreclosure Proceeding, and have had numerous discussions with Lender's counsel regarding the Asserted Secured Claims. Based upon his analysis of the information gathered, the Trustee believes, in his business judgment, that the Stipulation provides the estate with a fair, reasonable settlement of all outstanding issues relating to the Lender's Proofs of Claim and the Real Property.

31. Importantly, litigation relating to the validity of the Modification Agreement presented to the Court in the Debtor's Claims Objection Motion would likely be exceedingly fact-intensive and costly. Accordingly, the Trustee, in his business judgment, does not believe that the prosecution of such litigation, which would likely require testimony from several third-party

---

[12] See *In re Iridium Operating LLC*, 478 F.3d at 462; See also *In re Handler*, 386 B.R. at 421.

witnesses, would provide sufficient benefit to the Debtor's estate when compared to the proposed settlement with the Lender.

32.     The Stipulation also provides for an Estate Carve Out which, as discussed above, shall be used to pay the costs of administration of the Debtor's estate and to make a distribution to creditors of the estate in accordance with the priorities set forth in the Bankruptcy Code.

33.     The Stipulation is the product of arm's length bargaining and the Parties to the Stipulation are represented by competent and experienced counsel.

34.     Moreover, it is not anticipated that the Debtor's creditors will object to the Stipulation.

35.     Based on the foregoing, the settlement far exceeds the lowest point in a range of reasonableness consistent with applicable law and, the settlement, as embodied by the Stipulation, satisfies the *Iridium* Criteria.

36.     Therefore, after considering the foregoing factors, the Trustee believes in his business judgment that the terms of the Stipulation are fair and reasonable, and respectfully requests that the Court approves the Stipulation.

37.     No previous motion for the relief requested herein has been made in this case or any other court.

## NOTICE

38.     The Trustee will be serving this Motion upon (a) the Lender and its counsel, (b) the Debtor and its counsel; (c) the Office of the United States Trustee for Region 2; (d) all parties, if any, that have filed a notice of appearance in the Debtor's case; and (e) all creditors of the Debtor's estate as set forth on the schedules filed by the Debtor with this Court or having filed a proof of

claim with this Court, by first class mail on no less than twenty-four (24) days notice. The Trustee submits that no other or further notice need be provided.

**WHEREFORE**, the Trustee respectfully requests that this Court grant this Motion, approve and "So Order" the Stipulation, and grant such other and further relief as this Court deems just and proper.

Dated: Jericho, New York
   February 12, 2021

S<span style="font-variant:small-caps">ILVERMAN</span>A<span style="font-variant:small-caps">CAMPORA</span> **LLP**
Counsel to Kenneth P. Silverman, Esq.,
 The Chapter 7 Trustee

By: _s/ Brian Powers_
   Brian Powers
   Member of the Firm
   100 Jericho Quadrangle, Suite 300
   Jericho, New York 11753
   (516) 479-6300
