**SILVERMANACAMPORA LLP**
Counsel to Kenneth P. Silverman, Esq.,
  The Chapter 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Brian Powers
Nicholas J. Bebirian

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

In re:                                                                    Chapter 7

       ATLANTIC 111ST LLC,                          Case No.: 19-73137 (REG)

                 Debtor.
----------------------------------------------------------------x

     **PLEASE TAKE NOTICE**, that by motion dated February 12, 2021 (the "Motion")[1],

Kenneth P. Silverman, Esq., the Chapter 7 Trustee (the "Trustee") of the estate (the "Estate") of

Atlantic 111st LLC (the "Debtor"), will move before the Honorable Robert E. Grossman, United

States Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of New York,

Alfonse M. D'Amato U.S. Courthouse, 290 Federal Plaza, Central Islip, New York 11722, on

**March 8, 2021 at 09:30 a.m.** (the "Hearing"), or as soon thereafter as the Trustee can be heard,

seeking the entry of an order: (i) under §§ 105 and 363 of Title 11, United States Code (the

"Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rule 6004-1 of the Court's Local Bankruptcy Rules (the "Local Rules"),

authorizing and approving the terms and conditions of sale (the "Terms of Sale"), substantially in

the form annexed hereto as **Exhibit A**, for the sale of the Debtor's estate's rights, title and interest

in real property commonly known as 110-19 Atlantic Avenue, Richmond Hill, New York (the

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

"Real Property"), subject to higher and/or better offers at a public auction sale (the "Auction"), free and clear of all liens, claims, encumbrances, security interests (collectively, the "Liens"), tenancies and other restrictions on transfer (collectively, "Interests"), including any alleged interests of Richi Rich Palace NY Inc. d/b/a Richie Rich Restaurant ("Richie Rich") and Jarnail Singh ("Singh") in and to the Real Property, with such Liens and Interests, if any, to attach to the proceeds of the sale in the amount and priority as they currently exist; (ii) approving certain auction procedures for the Auction (the "Auction Procedures"); (iii) approving the form, time and scope of the notice of the Auction (the "Notice Procedures"), together with the Auction Procedures, the "Sale Procedures"); (iv) fixing the date for the Sale Confirmation Hearing; and (vi) such other and further relief as this Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE**, that objections to the Motion and/or the Stipulation, if any, must be: (i) filed with the Court electronically by registered users of the Court's electronic case filing system and, by all other parties in interest, mailed to the Clerk of the United States Bankruptcy Court for the Eastern District of New York, 290 Federal Plaza, Central Islip, New York 11722 with a hard copy delivered directly to the Chambers of the Robert E. Grossman; and (ii) served electronically and mailed to: (a) counsel to the Trustee, SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York, 11753, Attn: Brian Powers, Esq.; and (b) the Office of the United States Trustee, 560 Federal Plaza, Central Islip, New York 11722-4456, so as to be filed and received no later than **March 1, 2021 at 4:00 p.m.**

**PLEASE TAKE FURTHER NOTICE**, that the Hearing may be adjourned without further notice other than the announcement of such adjournment in open court, or the filing of a notice of adjournment on the docket.

Dated: Jericho, New York
      February 12, 2021

                        **SILVERMANACAMPORA LLP**
                        Counsel to Kenneth P. Silverman, Esq.,
                        the Chapter 7 Trustee

                        By: _s/ Brian Powers_
                              Brian Powers
                        Member of the Firm
                        100 Jericho Quadrangle, Suite 300
                        Jericho, New York 11753
                        (516) 479-6300

**SILVERMANACAMPORA LLP**
Counsel to Kenneth P. Silverman, Esq.,
 The Chapter 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Brian Powers
Nicholas J. Bebirian

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re:                                                                              Chapter 7

      ATLANTIC 111ST LLC,                                      Case No.: 19-73137 (REG)

                 Debtor.
-----------------------------------------------------------------x

**TRUSTEE'S MOTION FOR
ENTRY OF AN ORDER AUTHORIZING AND
APPROVING TERMS OF SALE OF THE DEBTOR'S REAL
PROPERTY, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES,
LEASES, RIGHTS OF POSSESSION AND OTHER INTERESTS; (II) ESTABLISHING
AUCTION AND NOTICE PROCEDURES; (III) FIXING DATE FOR SALE
CONFIRMATION HEARING; AND (IV) GRANTING RELATED RELIEF**

      Kenneth P. Silverman, Esq., the Chapter 7 Trustee (the "Trustee") of the estate (the

"Estate") of Atlantic 111st LLC (the "Debtor"), respectfully submits this motion (the "Motion"),

seeking the entry of an order: (i) under §§ 105 and 363 of Title 11, United States Code (the

"Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rule 6004-1 of the Court's Local Bankruptcy Rules (the "Local Rules"),

authorizing and approving the terms and conditions of sale (the "Terms of Sale"), substantially in

the form annexed hereto as **Exhibit A**, for the sale of the Debtor's Estate's rights, title and interest

in real property commonly known as 110-19 Atlantic Avenue, Richmond Hill, New York (the

"Real Property"), subject to higher and/or better offers at a public auction sale (the "Auction"),

free and clear of all (i) liens, claims, encumbrances, security interests (collectively, the "Liens"),

tenancies, (ii) leases, licenses and any other rights whatsoever of any person or entity to use or

possess any part whatsoever of the Real Property (collectively, referred to as "Possessory Interests"), including any alleged interests of Richi Rich Palace NY Inc. d/b/a Richie Rich Restaurant ("Richie Rich") and Jarnail Singh ("Singh") in and to the Real Property, with such Liens, if any, to attach to the proceeds of the sale in the amount and priority as they exist on the date of closing of the sale of Real Property; (ii) approving certain auction procedures for the Auction (the "Auction Procedures"); (iii) approving the form, time and scope of the notice of the Auction (the "Notice Procedures"), together with the Auction Procedures, the "Sale Procedures"); (iv) fixing the date for the Sale Confirmation Hearing (defined below); and (vi) such other and further relief as this Court deems just and proper, and respectfully represents as follows:

## BACKGROUND

1.      On April 18, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

2.      On November 18, 2020, the Court entered an order converting the Debtor's chapter 11 case to a case under chapter 7.

3.      On November 18, 2020, the Office of the United States Trustee filed the Notice of Appointment of Kenneth P. Silverman as interim Chapter 7 Trustee.

4.      On December 18, 2020, the initial Bankruptcy Code §341 meeting was held and the Trustee was duly qualified as the permanent trustee and is currently acting in that capacity.

5.      The Debtor is the fee owner of the Real Property.

The Foreclosure Proceeding

6.      Prior to the Petition Date, the Debtor's lender, MLF3 Atlantic LLC (the "Lender"), commenced a foreclosure proceeding in the New York State Supreme Court, Queens County (the

"Supreme Court"), Index No. 713435/2015 (the "Foreclosure Proceeding").

7.      As part of the Foreclosure Proceeding, the Lender requested that the State Court appoint a receiver for the Real Property.  Accordingly, the Supreme Court appointed Nicole Katsorhis, Esq. (the "Receiver") as receiver of the Real Property.

8.      On or about February 27, 2019, the Supreme Court entered a judgment of foreclosure in favor of the Lender in the Foreclosure Proceeding.

9.      Due to the filing of the Debtor's bankruptcy case, the Foreclosure Proceeding and the sale of the Real Property have been stayed.

The L&T Actions

10.     During the pendency of the Foreclosure Proceeding, the Receiver commenced two actions in the Civil Court for the City of New York, Landlord Tenant Part, Index Nos. L&T 53951/2018 (the "First L&T Action") and L&T 52740/2019 (the "Second L&T Action" and, together with the First L&T Action, the "L&T Actions"), respectively.  In the L&T Actions, the Receiver sought to evict Richie Rich from the premises due to, among other things, non-payment of use and occupancy and/or rent.

11.     Richie Rich moved to dismiss the First L&T Action, primarily based upon the sworn testimony of Singh in the affidavit annexed hereto as **Exhibit B**.  In the Singh Affidavit, Singh swore that:

- "At all times relevant, none of the occupants of the [Real] Property has had a month-to-month agreement or lease" (Singh Affidavit, ¶4);

- "Atlantic 111st LLC has had a long-term understanding that it will permit Richie Rich to operate on the property without a lease" (Singh Affidavit, ¶5);

- "There are no tenants occupying the [Real] Property" (Singh Affidavit, ¶7);

- "There are no leasees [sic]" (Singh Affidavit, ¶9);

- "No rent has been collected" (Singh Affidavit, ¶10); and

- "Quite simply there is no landlord/tenant relationship or any such other relationship that would bring the respondent without [sic] the limited subject matter jurisdiction of the court." (Singh Affidavit, ¶15).

12.     Based upon the representations made in the Singh Affidavit, the court dismissed the First L&T Action.

13.     As part of the Second L&T Action, and in connection with their collective attempts to settle with the Lender and avoid the sale of the Real Property, Defendants (along with counsel to Richie Rich) executed the Stipulation of Settlement annexed hereto as **Exhibit C** (the "L&T Stipulation").

14.     Pursuant to the L&T Stipulation, Defendants agreed, among other things, that they would vacate the premises on or before November 27, 2020.[2]  Further, The L&T Stipulation provides that any personal property of Defendants remaining at the premises after November 27, 2020 shall be deemed abandoned by Defendants.

15.     Accordingly, as of the date hereof no party, including Defendants, has a right to occupy the Real Property.

The Trustee's Investigation

16.     Since his appointment, the Trustee and his professionals have investigated the pre- and post-petition financial affairs of the Debtor, including analyzing the Debtor's bank statements and the chapter 11 operating reports filed by the Debtor prior to the conversion of this case.

---

[2] The L&T Stipulation provides for November 27, 2020 as the outside date for Defendants to vacate, and also provides for the potential of certain events to cause this requirement to have been accelerated.

17. In connection with his investigation, the Trustee has also requested certain standard documents from the Debtor and Richie Rich, including the Debtor's tax returns and information relating to the taxes and insurance for the Real Property. Counsel to the Debtor and counsel to Singh have provided certain information, but substantial documentation has not been provided. Importantly, the Trustee's analysis of the documents provided reveals that the Debtor may not currently have property insurance covering the Real Property.

18. The Trustee's investigation has also revealed that Singh has never collected use and occupancy charges from Richie Rich (or rent, despite Singh, through the Debtor and Richie Rich, now asserting that Richie Rich has a valid Lease).

19. In fact, upon information and belief, both pre- and post-petition Singh has used his control over both the Debtor and Richie Rich to direct the proceeds of Richie Rich's operations directly to himself in an effort to divert the funds from the Debtor's creditors.

20. Based upon the Debtor's chapter 11 operating reports, instead of directing Richie Rich to pay use and occupancy (or rent pursuant to the alleged Lease), Singh would make "capital contributions" to the Debtor to cover any necessary expenses of the Debtor.

The Adversary Proceeding

21. The Trustee commenced an adversary proceeding (the "Adversary Proceeding") on December 22, 2020 seeking (i) a judgment against Defendants and declaring the L&T Stipulation is enforceable by the Trustee against Defendants; (ii) a judgment against Defendants and declaring that the Lease is of no force and effect; (iii) preliminary and permanent injunctions enjoining Defendants from entering upon the Real Property and/or exercising any control over property of the Debtor's estate; (iv) a judgment against Richie Rich for unjust enrichment in an amount to be proven at trial but in no event less than $1,000,000.00; and (v) costs and disbursements of the Adversary Proceeding, together with

such other and further relief as the Court may deem just, proper and equitable.

22.     On December 23, 2020, the Trustee filed an application for an order enjoining Defendants from entering upon the Debtor's Real Property and/or exercising any control over personal property of the Debtor's estate contained therein (the "Preliminary Injunction Motion"). On December __, 2020, the Court entered an order to show cause which, among other things, scheduled an emergency hearing to consider the Preliminary Injunction Motion.

23.     On December 30, 2020, after an emergency hearing on the Preliminary Injunction Motion, the Court entered an order (i) preliminarily enjoining and restraining Defendants from entering upon the Debtor's real property and/or exercising any control over personal property of the Debtor's estate contained therein, and (ii) scheduling a continued hearing.

24.     Simultaneously with this Motion, the Trustee filed a motion to approve a stipulation of settlement with the Lender (the "Stipulation"). The Stipulation, among other things, requires the Trustee to obtain authorization to sell the Real Property free and clear of Liens and Interests, including the purported interests of Richie Rich and Singh.

## JURISDICTION AND VENUE

25.     This Court has jurisdiction to hear the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this case and to hear the Motion is proper in this District pursuant 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Bankruptcy Code §§ 105, 323 and 363 and Bankruptcy Rules 2002 and 6004, and the Court's Local Rules 6004-1(i).

## THE PROPOSED SALE AND RELATED PROCEDURES

26.     By this Motion, the Trustee seeks this Court's approval of the Sale Procedures, which are set forth below in greater detail, as well as the authorization to sell the Real Property free and clear of all Liens and Interests, subject to higher or better offers, and "as is", "where is",

without any warranties, guarantees and/or representations regarding the Real Property.

## A.  Auction Procedures

27.  The Trustee proposes that the Real Property be sold at the <u>Auction</u> by the Trustee's proposed broker, Maltz Auctions, Inc. ("<u>Maltz</u>").  The Trustee proposes that online bidding be made available for pre-registered bidders via Maltz's online bidding App available for download in the App Store or on Google Play, and via desktop bidding at RemoteBidding.MaltzAuctions.com.

28.  The Terms of Sale annexed hereto as **Exhibit A** are the terms that the Trustee proposes to provide to all prospective bidders at the Auction.  All parties-in-interest are advised to read the Terms of Sale in their entirety for a complete description of all of the terms and conditions of the Trustee's proposed Auction process.  However, some of the more salient terms are set forth below:

    a.  The Real Property is being sold "**AS IS**" "**WHERE IS**", "**WITH ALL FAULTS**", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free and clear of any and all liens, possessory interests, and adverse claims to title, of whatever kind or nature.

    b.  The Auction shall be held online-only on a date to be determined by the Trustee. (the "<u>Auction Date</u> for pre-registered bidders via the Broker's online bidding App available for download in the App Store or on Google Play, and via desktop bidding at RemoteBidding.MaltzAuctions.com.

    c.  In order to be permitted to bid on the Real Property, prior to the commencement of the Auction, each prospective bidder ("<u>Bidder</u>") must not later than 10:00 a.m. least one (1) business day prior to the Auction Date (as defined below), (i) deliver to the Broker an executed copy of these Terms of Sale and Sale Procedures, agree to be bound thereby (the "<u>Bid</u>"), (ii) remit to the Broker or Trustee the Qualifying Deposit (as defined below) as provided herein, and (iii) deliver to the Broker with the Bid submission a writing and documents meeting the following requirements and containing the

following terms and conditions:

i. it sets forth the Bidder's opening offer for the Real Property; it is in writing and is irrevocable through a closing of the sale of the Real Property; it provides for a cash purchase price for the Real Property, expressed in U.S. Dollars;

ii. it includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Trustee and the Lienholder to make a reasonable determination as to the Bidder's financial and other capabilities to consummate the transaction contemplated by bid;

iii. it is not conditioned on any contingencies whatsoever, such as, without limitation: (i) the outcome of unperformed due diligence by the Bidder, (ii) the granting or extension of any permit rights, and/or (iii) obtaining financing;

iv. it includes an acknowledgement and representation that the Bidder: (i) has had an opportunity to conduct any and all required diligence regarding the Real Property prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Real Property in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Real Property or the completeness of any information provided in connection therewith or the Auction; and (iv) is not entitled to any expense reimbursement or break-up fee;

v. it includes evidence, in form and substance reasonably satisfactory to the Trustee (who will confer with the Lienholder), of authorization and approval from the Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of a sale pursuant to these Terms of Sale and Sale Procedures; and

vi. it is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Trustee), or certified check or such other form acceptable to the Trustee,

payable to the order of the "Silverman Acampora LLP Attorney Escrow IOLA Account" and in the amount of $350,000.00 to be qualified to bid (the "<u>Qualifying Deposit</u>"), which shall serve as a partial good faith deposit against payment of the Purchase Price (as defined below).

d.  If the Real Property is sold to a party other than the Lender or one of its' affiliates, the sale will be subject to a buyer's premium (the "<u>Buyer's Premium</u>") in the amount of Three and 1/2 (3.5%) Percent of the gross sales price of the Real Property.

e.  Within 48 hours after conclusion of the Auction, the Successful Bidder shall deliver to Silverman Acampora, by bank check or bank teller's check made payable to "Silverman Acampora LLP Attorney Escrow IOLA Account" or by wire in immediately available federal funds, an amount equal to ten (10%) percent of such Successful Bid minus the Qualifying Deposit (together with the Qualifying Deposit, collectively the "<u>Initial Deposit</u>") plus the Buyer's Premium. Failure of the Successful Bidder to tender the Initial Deposit and Buyer's Premium within 48 hours after the conclusion of the Auction shall result in an immediate and automatic default under the terms of these Terms of Sale and Sale Procedures and the Memorandum of Sale and shall result in the immediate and automatic forfeiture of all earnest monies paid, including any part of the Initial Deposit paid. If the Qualifying Bid exceeds 10% of the Successful Bid the Trustee shall retain the Qualifying Bid as the Initial Deposit. At the conclusion of the Auction, the competing Bidder who the Trustee (after consultation with the Lender) determines to have made the second highest or best bid for the Real Property (the "<u>Second Highest Bidder</u>") must also execute and deliver to the Trustee a Memorandum of Sale agreeing to be bound thereby and to these Terms of Sale and Sale Procedures. **At the conclusion of the Auction, the Trustee will return the Qualifying Deposits to all Bidders, except for the Successful Bidder and Second Highest Bidder. The Second Highest Bidder's Qualifying Deposit shall be returned within five (5) business days following approval of the Auction by the Bankruptcy Court ("<u>Court Approval Date</u>"). Notwithstanding anything to the contrary, the Lender shall not be required at any time to pay any Qualifying Deposit, Initial Deposit, Additional Deposit (as defined below), or Deposit (as defined below), or any other deposit**.

f.  The Successful Bidder shall pay the balance of the Purchase Price for the Real Property to the Trustee solely by wire transfer in immediately available federal funds. The Successful Bidder must

close title to the Real Property at a date that is no more than thirty (30) days after the Court Approval Date, **TIME BEING OF THE ESSENCE as to the Successful Bidder**, although such date may be extended solely by the Trustee if consented to by the Lender. If consented to by the Lender, the Trustee may grant the Successful Bidder a single thirty (30) day extension (the "Extension"), at the request of the Successful Bidder, provided the Successful Bidder posts an additional, non-refundable deposit of ten (10%) percent of the Purchase Price, for an aggregate non-refundable deposit equal to twenty percent (20%) of the Purchase Price prior to the twentieth (20th) day following the Court Approval Date (the "Additional Deposit"). The Additional Deposit shall be made by wire transfer to the Trustee in immediately available federal funds and, together with the Successful Bidder's Initial Deposit, shall be deemed the "Deposit." If the Successful Bidder elects to exercise the Extension, the Closing shall take place on or before the sixtieth (60th) day following the date the Court Approval Date, **TIME BEING OF THE ESSENCE as to the Successful Bidder.** If the Successful Bidder elects to exercise the Extension, the Successful Bidder shall pay interest on the Purchase Price at a nine (9%) percent annual rate from the 30th day after the Court Approval Date through to the actual day of closing.

g.  If the Successful Bidder fails to post the total required Initial Deposit within 48 hours following the Auction ("Successful Bidder's Default"), the Trustee, in his sole and absolute discretion, may, within three (3) business days of the Successful Bidder's Default, deem the Second Highest Bidder to hold all benefits and obligations under the Terms of Sale and Sale Procedures and the Memorandum of Sale, as a new Successful Bidder (the "New Successful Bidder"). The New Successful Bidder shall not receive credit for any Initial Deposit or other deposit forfeited by the initial Successful Bidder. The New Successful Bidder must close title to the Real Property no later than thirty (30) days following receipt of written notice to the New Successful Bidder of the Successful Bidder's Default (the "New Successful Bidder's Closing"), **TIME BEING OF THE ESSENCE as to such New Successful Bidder**, although such date may be extended by the Trustee if the Lender consents to such extension. If the Lender consents, the Trustee may grant the New Successful Bidder a single thirty (30) day extension (the "New Successful Bidder's Extension"), at the request of the New Successful Bidder, provided the New Successful Bidder posts an additional, non-refundable deposit of ten percent (10%), so that the New Successful Bidder's aggregate non-refundable deposit is equal to twenty percent (20%) of the New Successful Bidder's Purchase

Price prior to the twentieth (20th) day following the New Successful Bidder's receipt of notification of the Successful Bidder's Default (the "New Successful Bidder's Additional Deposit"). The New Successful Bidder's Additional Deposit shall be made by wire transfer in immediately available federal funds and, together with the New Successful Bidder's Initial Deposit, shall be deemed the "Deposit." If the New Successful Bidder elects to exercise the New Successful Bidder's Extension, the Closing shall take place on or before the sixtieth (60th) day following receipt of notification of the Successful Bidder's Default, **TIME BEING OF THE ESSENCE as to the New Successful Bidder,** although such date may be extended solely by the Trustee if the lender consents thereto. If a New Successful Bidder elects to exercise a New Successful Bidder's Extension, the New Successful Bidder shall pay interest on the Purchase Price at a nine (9%) percent annual rate from the 30th day following receipt of notification of Successful Bidder's Default through to the actual day of closing.

h.  The Successful Bidder, or the New Successful Bidder, as the case may be, shall pay any and all costs and expenses in connection with the Closing related to obtaining a survey; all unpaid property taxes and water and sewer charges and violations on the Real Property; fee title or mortgage insurance; title company endorsement, search and escrow charges; environmental, engineering or other property inspections; appraisals, reports and other costs of property due diligence; and County, State, New York City, or other real property transfer, deed or documentary tax, or other taxes imposed upon the sale due in connection with the transfer of the Real Property from the Trustee at Closing. The Successful Bidder acknowledges that it will be responsible for the completion of any ACRIS forms, if required. The Trustee shall not be required to execute any form of title affidavit (but may in his sole and absolute discretion) and all title exceptions customarily omitted from a title policy on account of such title affidavit shall be deemed permitted exceptions. The Successful Bidder, or the New Successful Bidder, as the case may be, acknowledges it will be responsible for the preparation of all Closing documents required including, but not limited to, transfer tax forms, if required. In connection with the Closing and Closing date, the Successful Bidder or the New Successful Bidder, as the case may be, is hereby given notice that **TIME IS OF THE ESSENCE against the Successful Bidder or the New Successful Bidder, as the case may be, and the failure of the Successful Bidder or the New Successful Bidder, as the case may be, to close for any reason whatsoever (except as otherwise provided herein) including its failure to pay the balance of the Purchase Price on**

**the Closing date, will result in an immediate and automatic forfeiture (without any notice or opportunity to cure) of the Inital Deposit, any Additional Deposit and the Deposit, and the termination of the Successful Bidder's or the New Successful Bidder's, as the case may be, right to acquire the Real Property under** these Terms of Sale and Sale Procedures **and the Memorandum of Sale**. The Successful Bidder or the New Successful Bidder, as the case may be, shall be obligated to close title to the Real Property and, except as expressly set forth herein, there is no contingency of any kind or nature that will permit the Successful Bidder, or the New Successful Bidder, as the case may be, to cancel or avoid its obligation under these Terms of Sale and Sale Procedures and the Memorandum of Sale other than the Trustee's inability to deliver insurable title to the Real Property. Further, the Successful Bidder or the New Successful Bidder, as the case may be, shall have demonstrated, to the satisfaction of the Trustee and the Lienholder, evidence of its ability to conclude the transaction upon these Terms of Sale and Sale Procedures and the Memorandum of Sale, without delay. The Trustee reserves the right to reject any Bidder who the Trustee believes, after consultation with the Lender, is not financially capable of consummating the purchase of the Real Property. Expenses incurred by the Successful Bidder, or any other Bidder, concerning any due diligence shall be the sole responsibility of such Bidder and, under no circumstances shall the Trustee, the Debtor, the Lender or their professionals be responsible for, or pay, such expenses.

i. The Successful Bidder or the New Successful Bidder shall have ten (10) days from the Court Approval Date to order title, a copy of which shall promptly be provided to the Trustee, otherwise the Successful Bidder or New Successful Bidder shall be required to utilize a reputable title insurance company of the Trustee's selection licensed in the State of New York which shall provide the title insurance. The Successful Bidder or the New Successful Bidder has twenty (20) days from the Court Approval Date to advise the Trustee (by electronic mail to bpowers@silvermanacampora.com) of any and all title issues or defects that would in any way be an impediment to the Closing on the sale of the Real Property, or any portion thereof. Failure of the Successful Bidder or the New Successful Bidder to advise the Trustee within twenty (20) days from the Court Approval Date of any such title issues or defects shall be deemed a waiver of any and all rights to raise any such title issues or defects, with Trustee reserving the right to specify a particular title company to insure title, provided said company is licensed in the State of New York.

j.  All of the rights, title, and interests of the Debtor in and to the Real Property, or any portion thereof, will be sold, conveyed, transferred, and assigned free and clear of all liens, claims, interests, and encumbrances pursuant to Sections 363 and 365 of the Bankruptcy Code, such liens, claims, interests, and encumbrances to attach to the gross proceeds of the sale of the Real Property. Notwithstanding anything to the contrary: (i) the Lender shall have a first priority lien on all proceeds of the sale of the Real Property (including, without limitation, on any and all deposits paid, all proceeds paid at any closing, and all contract rights with respect to any contract to sell the Real Property), which liens shall secure the Lender's Allowed Secured Claims (a defined in the Stipulation and Order Allowing Lender's Claims); and (ii) if (x) the Successful Bidder (or the New Successful Bidder, if and only if the Successful Bidder has defaulted and the Second Highest Bidder has become the New Successful Bidder) and (y) the Lender both agree, in their sole and absolute discretion, the Lender's mortgages on the Real Property on account of the Lender's "Allowed First Priority Secured Claim" (as defined in the Stipulation and Order Allowing Lender's Claims) and/or the Lender's "Allowed Second Priority Secured Claim" (as defined in the Stipulation and Order Allowing Lender's Claims) shall remain of record on the Real Property and may be assigned by the Lender (in Lender's sole and absolute discretion) at the Closing of the sale of the Real Property for a fee to be agreed upon between the Lender and Successful Bidder (or New Successful Bidder, if applicable).

k.  The Real Property being sold "**AS IS**" "**WHERE IS**", "**WITH ALL FAULTS**", without any representations, covenants, guarantees or warranties of any kind or nature, and free and clear of any liens, claims, or encumbrances of whatever kind or nature, with such liens, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the Closing, provided that the Lender's mortgages on the Real Property shall remain on the Real Property if the Lender and the Successful Bidder (or New Successful Bidder, if applicable) agree to keep the Lender's mortgages on the Real Property in accordance with Paragraph 29 above. The sale of the Real Property is subject to, among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions; provided, however, **the Real Property shall be delivered (x) vacant and unoccupied, and (y) free and clear of any and all (A) monetary liens and (B) leases**

**or licenses or rights of any person or entity to use or occupy any portion of the Real Property. Without limiting the foregoing Notwithstanding anything to the contrary, if Lender is the Successful Bidder or New Successful Bidder, any obligation of the Lender to close on any sale of the Real Property pursuant to these Terms of Sale and Sale Procedures is expressly conditioned upon (i) the Trustee's delivery of the Real Property vacant and unoccupied by any person or entity; and (ii) the entry of an order of the Bankruptcy Court, in form satisfactory to the Lender, that the sale of the Real Property is free and clear of any and all (A) monetary liens and (B) leases or licenses or rights of any person or entity whatsoever to use or occupy any portion of the Real Property.** By delivering their respective Qualifying Deposits, all Bidders acknowledge that they have had the opportunity to review and inspect the Real Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and inspections of the Real Property in making their bids. Neither the Broker, the Trustee, the Debtor nor any of their collective representatives makes any representations or warrantees with respect to the permissible uses of the Real Property including, but not limited to, the zoning of the Real Property. All Bidders acknowledge that they have conducted their own due diligence in connection with the Real Property and are not relying on any information provided by the Broker, the Trustee, the Debtor, or their respective professionals. The Real Property will be sold subject to any and all violations requiring corrective action.

l. The Auction of the Real Property is subject to confirmation by the Trustee and pursuant to a further order of the Bankruptcy Court confirming the results of the Auction.

## B.  Notice and Marketing Procedures

Pursuant to Bankruptcy Rules 2002(c) and 6004, the Trustee is required to give twenty-one (21) days notice of any proposed sale of property not in the ordinary course of business. Bankruptcy Rule 2002(c) further provides that such notice must include the time and place of any auction, a sale hearing and the time fixed for objections to the sale.

29.  The Trustee has served this Motion and all exhibits, which includes the Terms of

Sale, and the proposed sales procedure order upon: (i) the Debtor; (ii) the Office of the United States Trustee; (iii) Singh; (iv) Richie Rich; (v) the Lender; (vi) the appropriate taxing authorities; (vii) those persons or entities who have formally appeared and requested service in this case pursuant to Bankruptcy Rule 2002; (viii) all other parties who have asserted an interest in the Real Property, if any; and (ix) all other creditors of the Debtor's estate, including those creditors who may be asserting a lien against the Real Property.

30.     A copy of the Terms of Sale and information regarding the inspection of the documents relating to the Real Property can be obtained by contacting Maltz at the telephone number contained in the Notice of Sale.  For ease of reference, contact can be made to:

Maltz Auctions
Trustee's Broker
39 Windsor Place
Central Islip, NY 11722
(516) 349-7022
www.MaltzAuctions.com

31.     Maltz's marketing efforts shall consist of, among other things, notice of the Auction: (i) in a multi-property auction brochure to 5,000+ recipients via USPS mail, (ii) on 200+ real estate and auction specific web sites, (iii) on the Maltz's website, which receives approximately 100,000 page views every month, (iv) in Maltz's weekly email broadcast to 40,000+ recipients, (v) in certain newspapers and other publications, and (vi) by contacting known interested parties through prior business dealings.

32.     Therefore, the Trustee believes that the aforementioned notice and marketing procedures are fair and reasonable, provide proper and effective notice of the Auction and the Terms of Sale, provide all interested parties with necessary information to bid on the Real Property and an opportunity to be heard prior to the Auction Date, and respectfully requests that this Court

approves such procedures.

## C.    The Sale Confirmation Hearing

33.    By this Motion, the Trustee seeks a hearing following the Auction where the Trustee will seek confirmation of the highest and best bid received for the Real Property (the "Successful Bidder").  Accordingly, the Trustee respectfully requests that the Court schedule a hearing to confirm the results of the Auction no later than ten (10) days following the Auction Date (the "Sale Confirmation Hearing").

34.    At the conclusion of the Auction and prior to the Sale Confirmation Hearing, the Trustee anticipates supplementing this Motion with evidence supporting a finding that the parties making the highest and/or best offers at the Auction acted in good faith and are deserving of the protections of a good faith purchaser under Bankruptcy Code § 363(m).

35.    Those supplements will also include information concerning the marketing efforts for the Real Property sold, the number of registered bidders, the number of registered bidders that actually tender bids, and the identity of the highest and best offeror(s) at the conclusion of the Auction, along with other relevant information.

36.    The Trustee respectfully submits that the proposed Sale Procedures are fair and reasonable.  As such, the Trustee requests that the Court enter an order substantially in the form annexed hereto as **Exhibit D** (the "Sale Procedures Order") approving the Terms of Sale and the Sale Procedures, scheduling the Sale Confirmation Hearing, and authorizing the Trustee to conduct the Auction.

## THE BASIS FOR THE RELIEF REQUESTED

**A.** **The Sale Procedures are Fair,
Appropriate and Should Be Approved**

37.     "When conducting an asset sale, the ultimate responsibility of the debtor, and the primary focus of the bankruptcy court, is the maximization of the value of the assets sold."  John J. Jerome & Robert D. Drain, *Bankruptcy Court Is Newest Arena for M&A Action*, N.Y.L.J., June 3, 1991.  In furtherance of that goal, bidding procedures, such as those proposed in this Motion, may be used in court-supervised asset sales because they streamline the acquisition process, "help to provide an adequate basis by which to compare offers" and, ultimately, maximize value.  *See id.*; *see also Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets").

38.     Here, the Trustee submits that the Sale Procedures are fair and appropriate under the circumstances, consistent with procedures routinely approved by courts in this District, and in the best interest of the Debtor's estate.  The Trustee believes that, in order to provide value to the Debtor's estate, he promptly moves forward with the sale process in an effort to solicit higher and/or better offers for the Real Property.  To that end, the Sale Procedures were designed with the objective of promoting active bidding on a prompt timeline that will hopefully result in the highest or otherwise best offer for the Real Property.

39.     Additionally, the Sale Procedures facilitate an orderly yet competitive bidding process that will maximize the net value realized from the sale of the Real Property.  In particular, the Sale Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the

information necessary to submit a timely and well-informed bid.

40.     At the same time, the Sale Procedures provide the Trustee with an adequate opportunity to consider competing bids and select the highest or otherwise best offer for the completion of the sale of the Real Property.  The Trustee believes that the terms of the Terms of Sale will enable the Trustee to obtain the fair market value for the Real Property by setting a minimum opening bid that will be tested in the marketplace.  Thus, the Trustee believes that the consideration that may be received in exchange for the Real Property will be fair and reasonable, and at or above market.

41.     In sum, the Trustee submits that the Sale Procedures are fair and reasonable, and will advance the Trustee's efforts to maximize the value received from the sale of the Real Property, and therefore respectfully requests this Court's approval.

**B.      The Sale Order Should be Approved as a Reasonable
          Exercise of the Trustee's Sound Business Judgment**

Sales Outside of the Ordinary Course of Business

42.     Section 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004 govern the sale of assets outside the ordinary course of business.

43.     Section 363(b)(1) provides, in relevant part, that the Trustee may, after notice and hearing, "use, sell or lease, other than in the ordinary course of business, property of the estate." *See* 11 U.S.C. § 363 (b)(1) and (f).  The terms of such sale are generally within the sound discretion of the Trustee's business judgment.  *See In re Ionosphere Clubs, Inc.*, 100 B.R. 670 (Bankr. S.D.N.Y. 1989) (sale of debtors' airline shuttle assets approved where the debtor articulated a compelling business reason for the sale and represented fair value in the exercise of independent good faith and non-coerced business judgment).  As recognized by the Second Circuit in *Comm.*

*of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d. Cir. 1983), a court may approve a section 363 application after expressly determining from the evidence presented at the hearing that a good business reason exists to grant such application.

44.     Additionally, Bankruptcy Rule 6004(f)(1) provides that sales of property outside the ordinary course of business may be conducted by private sale or public auction.  *See* F.R.B.P. 6004(f)(1).  Each proposed sale must be examined from its own facts to determine whether the proposed sale is justified with detailed factual findings being made in support thereof.

45.     Here, the Trustee respectfully submits a compelling business justification exists for the granting of this Motion and the approval of the Sale Procedures.  Accordingly, the Trustee respectfully requests that the Court authorizes him to sell the Real Property in accordance with the Terms of Sale, subject to higher or better offers received at the Auction, and free and clear of Liens and Interests, with such Liens and Interests to attach to the proceeds of the sale.

The Sale of the Real Property Represents A Reasonable
Exercise of the Trustee's Sound Business Judgment

46.     Under applicable law, for a proposed sale to be approved under section 363(b) of the Bankruptcy Code, that sale must represent the reasonable exercise of the trustee's business judgment.  *See, e.g.*, *In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992); *In re Lionel Corp.*, 772 F.2d at 1071; *see also In re Integrated Res., Inc.*, 147 B.R. at 656 (Bankr. S.D.N.Y. 1992) (stating that the business judgment rule is applicable in bankruptcy and presumes that, when making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company).

47.     Here, taking into consideration that the payment of any commission due to Maltz from the sale of the Real Property will be paid pursuant to the Buyer's Premium, as well as the

carve-out provided by the Lender pursuant to the Settlement Agreement, the Trustee has determined that the liquidation of the Real Property should provide a significant benefit to the Debtor's estate and its creditors. Therefore, the sale of the Real Property under the Terms of Sale is a reasonable exercise of the Trustee's business judgment.

The Real Property Should Be Sold Free and Clear of Asserted
Property Interests Under Section 363(f) of the Bankruptcy Code

48.     In order for the Trustee to maximize value to the Debtor's estate from the sale of the Real Property, potential bidders must be certain that the Trustee is authorized to sell the Real Property free and clear of all Liens and Interests. Accordingly, the Trustee requests that the Sales Procedures Order authorizes the sale of the Real Property free and clear of Liens and Interests.

49.     Bankruptcy Code §363(f)(2) permits the Trustee to sell property free and clear of any interest "if such party consents." The Trustee submits that Lender, the Debtor's only known secured creditor, has consented to the proposed sale free and clear of its lien subject to the terms of the Settlement Agreement.

50.     Moreover, Bankruptcy Code §363(f)(4) provides that the trustee may sell property free and clear of any interest in such property if "such interest is in *bona fide* dispute." 11 U.S.C. § 363(f)(4). While the term "*bona fide* dispute" is not defined by the Bankruptcy Code, bankruptcy courts have held that the standard for determining if such a dispute exists is to assess whether there is "an objective basis for either a factual or legal dispute" as to the validity of the interest. *See In re Downtown Athletic Club of New York City, Inc.*, No. M-47 (JSM), 2000 WL 744126, at *4 (S.D.N.Y. June 9, 2000) (citing *In re Collins*, 180 B.R. 447, 452 (Bankr. E.D. Va. 1995) (noting that there must be "an objective basis for either a factual or legal dispute as to the validity of the debt"); *Matter of Busick*, 831 F.2d 745, 750 (7th Cir. 1987); *see also* 3 Collier on Bankruptcy P

363.06 (16th 2020).  Under this standard, the court is not required to resolve the underlying dispute as a condition to authorizing the sale under section 363(f)(4), but rather, the court must determine that the *bona fide* dispute does in fact exist.  *See In re Collins*, 180 B.R. at 452 (citing *In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991)); *see also* 3 Collier on Bankruptcy P 363.06 (16th 2020).

51.      Thus, in order to meet this standard, the moving party must simply identify factual grounds upon which there is an "objective basis" for the dispute. *Id*.  In the Second Circuit, courts have found that where and adversary proceeding was filed, a *bona fide* dispute was present, and therefore the sale of the property was authorized under Section 363(f)(4).  *See e.g. In re Balco Equities Ltd.*, 323 B.R. 85, 91–92, (Bankr. S.D.N.Y. 2005) (authorizing sale of the property under 11 U.S.C. § 363(f)(4) where an adversary proceeding contesting ownership interest in the property was pending); *In re Downtown Athletic Club of New York City, Inc.*, No. M-47 (JSM), 2000 WL 744126, at *4 (finding a *bona fide* dispute where the debtors filed an adversary proceeding contesting the defendant's interest in the property).  Even where an adversary proceeding had not been filed, courts in this circuit have still authorized a sale under 363(f)(4), finding that a *bona fide* dispute was present.  *See In re Oneida Lake Dev., Inc.*, 114 B.R. 352, 357–58 (Bankr. N.D.N.Y. 1990) ("Code § 363(f)(4) has been satisfied even though the Debtor has not as yet commenced the adversary proceeding versus [the judgment creditor]."); *In re Millerburg*, 61 B.R. 125, 128 (Bankr. E.D.N.C.1986) ("The *potential* preference action . . . would certainly qualify as a *bona fide* dispute for purposes of § 363(f)(4).") (emphasis added).

52.      Here, the disputes between the Lender, the Receiver, the Debtor, Richie Rich, and Singh relating to the Real Property, as set forth at length above, have been the subject of litigation for years.  That litigation commenced prior to the Debtor's chapter 11 filing and well before the

appointment of the Trustee.  Moreover, the Trustee has now commenced the Adversary Proceeding which, among other things, seeks a declaratory judgment that neither Richie Rich nor Singh has any possessory interest in the Real Property.

53.      As set forth herein, ample evidence exists that, to the extent Richie Rich and Singh assert an interest in and to the Real Property, such interests are in *bona fide* dispute.  Accordingly, the Court should authorize the Trustee to sell the Real Property free and clear of such interests pursuant to Bankruptcy Code §363(f)(4).

Purchaser Should Be Afforded Protection
Under Bankruptcy Code Section 363(m)

54.      Section 363(m) of the Bankruptcy Code affords protection to a good faith purchaser in any interest in property purchased from the Trustee, notwithstanding that the sale conducted was later reversed or modified on appeal.  Section 363(m) provides, in pertinent part, as follows:

> The reversal or modification on appeal of an authorization under [section 363(b)] … does not affect the validity of a sale … to an entity that purchased … such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m).  *See Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (Bankr. S.D.N.Y. 1994) ("Section 363(m) provides that a good faith transfer of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[P]ursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal).  The Second Circuit has held that a party would have to show fraud or collusion between a purchaser and the debtor in possession (or trustee) to demonstrate a lack of good faith.  *See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would

destroy a good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."). *See also In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

55.     Here, the Trustee will demonstrate on or before the Sale Confirmation Hearing that the Successful Bidder is a good faith purchaser as required by Bankruptcy Code section 363(m). Accordingly, the Trustee will seek that the Court determine that, upon entry into the Terms of Sale, the Successful Bidder acted in good faith and is entitled to the protections of a good faith purchaser under Bankruptcy Code section 363(m).

**WHEREFORE**, the Trustee respectfully requests that this Court enters an order, substantially in the form annexed hereto as **Exhibit D,** granting this Motion and approving the Terms of Sale and the Sale Procedures, authorizing the Trustee to conduct the Auction, finding that the Trustee is authorized to sell the Real Property free and clear of Liens and Interests, and granting such other and further relief as the Court deems just and proper.

Dated: Jericho, New York
        February 12, 2021

SILVERMANACAMPORA LLP
Counsel to Kenneth P. Silverman, Esq.,
the Chapter 7 Trustee


By: *s/ Brian Powers*
        Brian Powers
Member of the Firm
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300