# **TERMS OF SALE AND SALES PROCEDURES**

Set forth below are the terms and conditions of sale (the "Terms of Sale") and sales procedures (the "Sales Procedures") to be employed with respect to sale of certain real property located at 110-19 Atlantic Avenue, Richmond Hill, New York, together with all buildings and improvements thereon and fixtures therein and thereto (collectively, the "Real Property") owned by Atlantic 111st LLC (the "Debtor"), more fully described below.

## Background

1.  On April 18, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court" or "Bankruptcy Court").

2.  On November 18, 2020, the Court entered an order converting the Debtor's chapter 11 case to a case under chapter 7.

3.  On November 18, 2020, the Office of the United States Trustee filed the Notice of Appointment of Kenneth P. Silverman as interim Chapter 7 Trustee.

4.  On December 18, 2020, the initial Bankruptcy Code §341 meeting was held and the Trustee been duly qualified as the permanent trustee and is currently acting in that capacity.

5.  The Trustee is represented by Silverman Acampora, LLP ("SA"), with offices at 100 Jericho Quadrangle, Suite 300, Jericho, NY 11753.

6.  The Real Property is encumbered by two mortgages belonging to MLF3 Atlantic LLC (the "Lender" or "Lienholder"). Pursuant to a certain Stipulation And Order, Pursuant to Bankruptcy Rule 9019 and Sections 105, 362, 363, 364, and 502 of the Bankruptcy Code, (i) Settling and Allowing the Claims of MLF 3 Atlantic LLC; (ii) Determining That MLF3 Atlantic LLC Has Valid First And Second Priority Liens on the Debtor's Property; (iii) Directing the Sale of the Debtor's Real Property; and (iv) Granting Related Relief, which was so-ordered by the Bankruptcy Court on _____, 2021 (ECF No. ___) (the "Stipulation and Order Allowing Lender's Claims"), the Bankruptcy Court, among other things, (i) allowed the Lender's "Allowed First Priority Secured Claim" (as defined in the Stipulation and Order Allowing Lender's Claims); and (ii) allowed the Lender's "Allowed Second Priority Secured Claim" (as defined in the Stipulation and Order Allowing Lender's Claims). Notwithstanding anything to the contrary whatsoever, nothing in these Terms of Sale and Sale Procedures shall in any way modify any rights, claims or liens of the Lender under the Stipulation and Order Allowing Lender's Claims.

7.  These Terms of Sale and Sale Procedures are promulgated in connection with the Bankruptcy Court-authorized public auction (the "Auction") as described below.

## Description of Assets

8.  The assets to be sold at the Auction consist of the Real Property, which is being

offered as follows:

| Description | Tax ID |
|---|---|
| **110-19 Atlantic Avenue Richmond Hill, New York** | **Block: \_\_\_ Lot: \_\_\_\_** |

9. The Trustee shall sell at the Auction all right title and interest of the Trustee, the Debtor and the Debtor's bankruptcy estate (the "Estate") in and to the Real Property, which shall include, without limitation, any other rights, plans, and permits of whatever kind or nature, as set forth in documents "of record" pertaining to the Real Property.

Agent of Sale

10. The Auction shall be conducted by Maltz Auctions, Inc. (the "Broker"), who has been retained by a Bankruptcy Court order to act as the Trustee's real estate broker for the sale contemplated herein. The Trustee shall be the sole authorized party to execute any and all such documents as are necessary for the sale and transfer of the Real Property following the Auction.

Qualified Bidder

11. In order to be permitted to bid on the Real Property, prior to the commencement of the Auction, each prospective bidder ("Bidder") must not later than 10:00 a.m. least one (1) business day prior to the Auction Date (as defined below), (i) deliver to the Broker an executed copy of these Terms of Sale and Sale Procedures, agree to be bound thereby (the "Bid"), (ii) remit to the Broker or Trustee the Qualifying Deposit (as defined below) as provided herein, and (iii) deliver to the Broker with the Bid submission a writing and documents meeting the following requirements and containing the following terms and conditions:

(a) it sets forth the Bidder's opening offer for the Real Property; it is in writing and is irrevocable through a closing of the sale of the Real Property; it provides for a cash purchase price for the Real Property, expressed in U.S. Dollars;

(b) it includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Trustee and the Lienholder to make a reasonable determination as to the Bidder's financial and other capabilities to consummate the transaction contemplated by bid;

(c) it is not conditioned on any contingencies whatsoever, such as, without limitation: (i) the outcome of unperformed due diligence by the Bidder, (ii) the granting or extension of any permit rights, and/or (iii) obtaining financing;

(d) it includes an acknowledgement and representation that the Bidder: (i) has had an opportunity to conduct any and all required diligence regarding the Real Property prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Real Property in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or

guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Real Property or the completeness of any information provided in connection therewith or the Auction; and (iv) is not entitled to any expense reimbursement or break-up fee; and

(e) it is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Trustee), or certified check or such other form acceptable to the Trustee, payable to the order of the "Silverman Acampora LLP Attorney Escrow IOLA Account" and in the amount of $450,000.00 to be qualified to bid (the "Qualifying Deposit"), which shall serve as a partial good faith deposit against payment of the Purchase Price (as defined below).

12. Any Bidder who submits a Bid that the Trustee and Lender determine conforms to and satisfies all of the requirements of Paragraph 10 above, shall be considered a "Qualified Bidder" provided the Trustee timely receives all of the required supporting documentation and the Qualifying Deposit. A Bid submitted by a Qualified Bidder shall be considered a "Qualified Competing Bid".

13. Notwithstanding the foregoing or anything whatsoever to the contrary, the Lender (i) shall not be required to comply with Paragraph 10, (ii) is hereby permanently deemed a Qualified Bidder, (iii) is authorized to credit bid up the full amounts of both of Lender's "Allowed First Priority Secured Claim" (as defined in the Stipulation and Order Allowing Lender's Claims) "Allowed Second Priority Secured Claim" (as defined in the Stipulation and Order Allowing Lender's Claims), including all amounts Lender asserts are accrued through the date of the Auction, and (iv) shall not be required to pay any Buyer's Premium (as defined below) or any deposits in connection with the Auction.

14. For the avoidance of doubt, and notwithstanding anything whatsoever to the contrary, any bid submitted by the Lender at any Auction shall be a "Qualified Competing Bid."

15. If the Real Property is sold to a party other than the Lender or one of its' affiliates or designees, the sale will be subject to a buyer's premium (the "Buyer's Premium") in the amount of Three and 1/2 (3.5%) percent of the gross sales price of the Real Property.

The Auction

16. The Auction shall be held online-only on _____ __, 2021 at ___ p.m. (the "Auction Date for pre-registered bidders via the Broker's online bidding App available for download in the App Store or on Google Play, and via desktop bidding at RemoteBidding.MaltzAuctions.com.

17. On the tenth (10th) day before the Auction the Trustee will post the rules for the conduct at the Auction. The rules will be designed to ensure that the Auction will be conducted in a manner that will achieve the maximum value for the Real Property. Such terms and conditions may include, by way of example, one or more rounds of sealed or open bids from any Qualified Bidder who submitted a Qualified Competing Bid and the increments of such bids.

3

18. The highest or otherwise best bid, as determined by the Trustee in his reasonable discretion, in consultation with the Lienholder, shall be the starting bid at the Auction.

Selection of Successful Bid

19. Prior to the conclusion of the Auction, the Trustee will, in consultation with his professionals and the Lienholder, (a) review and evaluate each Qualified Competing Bid, (b) determine the highest or otherwise best offer for the Real Property received at the Auction (such bid, the "Successful Bid" and the bidder making such bid, the "Successful Bidder") and (c) communicate to each Qualified Bidder and the Lienholder the identity of the Successful Bidder and the details of the Successful Bid. The determination of the Successful Bid or Successful Bids by the Trustee, after consultation with the Lienholder, shall be final, subject to approval by the Bankruptcy Court.

20. The Trustee will sell the Real Property to the Successful Bidder pursuant to the terms of the Successful Bid upon the approval of the Successful Bid by the Bankruptcy Court at the Sale Hearing.

21. For the avoidance of doubt, the Trustee shall not consider or support any bid (whether or not such bid is a Qualified Competing Bid) for the Real Property received after the close of the Auction.

22. The Successful Bidder will, at the time and place of the conclusion of the Auction, sign a memorandum of sale (the "Memorandum of Sale") in accordance with these Terms of Sale and Sale Procedures substantially in the form annexed hereto. The amount bid by the Successful Bidder shall be set forth in the Memorandum of Sale as the purchase price (the "Purchase Price").

23. The Successful Bidder shall (a) pay any and all parts of the Purchase Price solely by wire transfer and (b) be responsible for the payment of: (i) any Buyer's Premium to the Broker (provided however, that neither the Lienholder nor any designee or assignee thereof shall be required to pay any Buyer's Premium, as long as such designee or assignee is affiliated with the Lender, and is not an unrelated third party); (ii) any and all real property taxes, transfer taxes, and water and sewer charges; and (iii) any amounts due on account of fines and violations.

Deposit, Sale and Closing

24. Within 48 hours after conclusion of the Auction, the Successful Bidder shall deliver to Silverman Acampora, by bank check or bank teller's check made payable to "Silverman Acampora LLP Attorney Escrow IOLA Account" or by wire in immediately available federal funds, an amount equal to ten (10%) percent of such Successful Bid minus the Qualifying Deposit (together with the Qualifying Deposit, collectively the "Initial Deposit") plus the Buyer's Premium. Failure of the Successful Bidder to tender the Initial Deposit and Buyer's Premium within 48 hours after the conclusion of the Auction shall result in an immediate and automatic default under the terms of these Terms of Sale and Sale Procedures and the Memorandum of Sale and shall result in the immediate and automatic forfeiture of all earnest monies paid, including any part of the Initial Deposit paid. If the Qualifying Bid exceeds 10% of the Successful Bid the Trustee shall retain the

2690015v1 / 010000.1654 / NBEBIRIAN
NBEBIRIAN/2690015.8/010000.1654

Qualifying Bid as the Initial Deposit. At the conclusion of the Auction, the competing Bidder who the Trustee (after consultation with the Lender) determines to have made the second highest or best bid for the Real Property (the "Second Highest Bidder") must also execute and deliver to the Trustee a Memorandum of Sale agreeing to be bound thereby and to these Terms of Sale and Sale Procedures. **At the conclusion of the Auction, the Trustee will return the Qualifying Deposits to all Bidders, except for the Successful Bidder and Second Highest Bidder. The Second Highest Bidder's Qualifying Deposit shall be returned within five (5) business days following approval of the Auction by the Bankruptcy Court ("Court Approval Date"). Notwithstanding anything to the contrary, the Lender shall not be required at any time to pay any Qualifying Deposit, Initial Deposit, Additional Deposit (as defined below), or Deposit (as defined below), or any other deposit**.

25. The Successful Bidder shall pay the balance of the Purchase Price for the Real Property to the Trustee solely by wire transfer in immediately available federal funds. The Successful Bidder must close title to the Real Property at a date that is no more than thirty (30) days after the Court Approval Date, **TIME BEING OF THE ESSENCE as to the Successful Bidder**, although such date may be extended solely by the Trustee if consented to by the Lender. If consented to by the Lender, the Trustee may grant the Successful Bidder a single thirty (30) day extension (the "Extension"), at the request of the Successful Bidder, provided the Successful Bidder posts an additional, non-refundable deposit of ten (10%) percent of the Purchase Price, for an aggregate non-refundable deposit equal to twenty percent (20%) of the Purchase Price prior to the twentieth (20th) day following the Court Approval Date (the "Additional Deposit"). The Additional Deposit shall be made by wire transfer to the Trustee in immediately available federal funds and, together with the Successful Bidder's Initial Deposit, shall be deemed the "Deposit." If the Successful Bidder elects to exercise the Extension, the Closing shall take place on or before the sixtieth (60th) day following the date the Court Approval Date, **TIME BEING OF THE ESSENCE as to the Successful Bidder.** If the Successful Bidder elects to exercise the Extension, the Successful Bidder shall pay interest on the Purchase Price at a nine (9%) percent annual rate from the 30th day after the Court Approval Date through to the actual day of closing.

26. If the Successful Bidder fails to post the total required Initial Deposit within 48 hours following the Auction ("Successful Bidder's Default"), the Trustee, in his sole and absolute discretion, may, within three (3) business days of the Successful Bidder's Default, deem the Second Highest Bidder to hold all benefits and obligations under the Terms of Sale and Sale Procedures and the Memorandum of Sale, as a new Successful Bidder (the "New Successful Bidder"). The New Successful Bidder shall not receive credit for any Initial Deposit or other deposit forfeited by the initial Successful Bidder. The New Successful Bidder must close title to the Real Property no later than thirty (30) days following receipt of written notice to the New Successful Bidder of the Successful Bidder's Default (the "New Successful Bidder's Closing"), **TIME BEING OF THE ESSENCE as to such New Successful Bidder**, although such date may be extended by the Trustee if the Lender consents to such extension. If the Lender consents, the Trustee may grant the New Successful Bidder a single thirty (30) day extension (the "New Successful Bidder's Extension"), at the request of the New Successful Bidder, provided the New Successful Bidder posts an additional, non-refundable deposit of ten percent (10%), so that the New Successful Bidder's aggregate non-refundable deposit is equal to twenty percent (20%) of the New Successful Bidder's Purchase Price prior to the twentieth (20th) day following the New

5

Successful Bidder's receipt of notification of the Successful Bidder's Default (the "New Successful Bidder's Additional Deposit"). The New Successful Bidder's Additional Deposit shall be made by wire transfer in immediately available federal funds and, together with the New Successful Bidder's Initial Deposit, shall be deemed the "Deposit." If the New Successful Bidder elects to exercise the New Successful Bidder's Extension, the Closing shall take place on or before the sixtieth (60th) day following receipt of notification of the Successful Bidder's Default, **TIME BEING OF THE ESSENCE as to the New Successful Bidder,** although such date may be extended solely by the Trustee if the lender consents thereto. If a New Successful Bidder elects to exercise a New Successful Bidder's Extension, the New Successful Bidder shall pay interest on the Purchase Price at a nine (9%) percent annual rate from the 30th day following receipt of notification of Successful Bidder's Default through to the actual day of closing.

27. The closing shall take place at the offices of Silverman Acampora, LLP, 100 Jericho Quadrangle, Suite 300, Jericho, NY, 11743 (the "Closing"), or such other location as the Trustee may direct.

28. The Successful Bidder, or the New Successful Bidder, as the case may be, shall pay any and all costs and expenses in connection with the Closing related to obtaining a survey; all unpaid property taxes and water and sewer charges and violations on the Real Property; fee title or mortgage insurance; title company endorsement, search and escrow charges; environmental, engineering or other property inspections; appraisals, reports and other costs of property due diligence; and County, State, New York City, or other real property transfer, deed or documentary tax, or other taxes imposed upon the sale due in connection with the transfer of the Real Property from the Trustee at Closing. The Successful Bidder acknowledges that it will be responsible for the completion of any ACRIS forms, if required. The Trustee shall not be required to execute any form of title affidavit (but may in his sole and absolute discretion) and all title exceptions customarily omitted from a title policy on account of such title affidavit shall be deemed permitted exceptions. The Successful Bidder, or the New Successful Bidder, as the case may be, acknowledges it will be responsible for the preparation of all Closing documents required including, but not limited to, transfer tax forms, if required. In connection with the Closing and Closing date, the Successful Bidder or the New Successful Bidder, as the case may be, is hereby given notice that **TIME IS OF THE ESSENCE against the Successful Bidder or the New Successful Bidder, as the case may be, and the failure of the Successful Bidder or the New Successful Bidder, as the case may be, to close for any reason whatsoever (except as otherwise provided herein) including its failure to pay the balance of the Purchase Price on the Closing date, will result in an immediate and automatic forfeiture (without any notice or opportunity to cure) of the Inital Deposit, any Additional Deposit and the Deposit, and the termination of the Successful Bidder's or the New Successful Bidder's, as the case may be, right to acquire the Real Property under** these Terms of Sale and Sale Procedures **and the Memorandum of Sale**. The Successful Bidder or the New Successful Bidder, as the case may be, shall be obligated to close title to the Real Property and, except as expressly set forth herein, there is no contingency of any kind or nature that will permit the Successful Bidder, or the New Successful Bidder, as the case may be, to cancel or avoid its obligation under these Terms of Sale and Sale Procedures and the Memorandum of Sale other than the Trustee's inability to deliver insurable title to the Real Property. Further, the Successful Bidder or the New Successful Bidder, as the case may be, shall have demonstrated, to the satisfaction of the Trustee and the Lienholder, evidence of its ability to

6

conclude the transaction upon these Terms of Sale and Sale Procedures and the Memorandum of Sale, without delay. The Trustee reserves the right to reject any Bidder who the Trustee believes, after consultation with the Lender, is not financially capable of consummating the purchase of the Real Property. Expenses incurred by the Successful Bidder, or any other Bidder, concerning any due diligence shall be the sole responsibility of such Bidder and, under no circumstances shall the Trustee, the Debtor, the Lender or their professionals be responsible for, or pay, such expenses.

29. The Successful Bidder or the New Successful Bidder shall have ten (10) days from the Court Approval Date to order title, a copy of which shall promptly be provided to the Trustee, otherwise the Successful Bidder or New Successful Bidder shall be required to utilize a reputable title insurance company of the Trustee's selection licensed in the State of New York which shall provide the title insurance. The Successful Bidder or the New Successful Bidder has twenty (20) days from the Court Approval Date to advise the Trustee (by electronic mail to bpowers@silvermanacampora.com) of any and all title issues or defects that would in any way be an impediment to the Closing on the sale of the Real Property, or any portion thereof. Failure of the Successful Bidder or the New Successful Bidder to advise the Trustee within twenty (20) days from the Court Approval Date of any such title issues or defects shall be deemed a waiver of any and all rights to raise any such title issues or defects, with Trustee reserving the right to specify a particular title company to insure title, provided said company is licensed in the State of New York.

Free and Clear, No Representations

30. All of the rights, title, and interests of the Debtor in and to the Real Property, or any portion thereof, will be sold, conveyed, transferred, and assigned free and clear of all liens, claims, interests, and encumbrances pursuant to Sections 363 and 365 of the Bankruptcy Code, such liens, claims, interests, and encumbrances to attach to the gross proceeds of the sale of the Real Property. Notwithstanding anything to the contrary: (i) the Lender shall have a first priority lien on all proceeds of the sale of the Real Property (including, without limitation, on any and all deposits paid, all proceeds paid at any closing, and all contract rights with respect to any contract to sell the Real Property), which liens shall secure the Lender's Allowed Secured Claims (a defined in the Stipulation and Order Allowing Lender's Claims); and (ii) if (x) the Successful Bidder (or the New Successful Bidder, if and only if the Successful Bidder has defaulted and the Second Highest Bidder has become the New Successful Bidder) and (y) the Lender both agree, in their sole and absolute discretion, the Lender's mortgages on the Real Property on account of the Lender's "Allowed First Priority Secured Claim" (as defined in the Stipulation and Order Allowing Lender's Claims) and/or the Lender's "Allowed Second Priority Secured Claim" (as defined in the Stipulation and Order Allowing Lender's Claims) shall remain of record on the Real Property and may be assigned by the Lender (in Lender's sole and absolute discretion) at the Closing of the sale of the Real Property for a fee to be agreed upon between the Lender and Successful Bidder (or New Successful Bidder, if applicable).

31. The Broker and the Trustee, and their respective professionals, have not made and do not make any representations or warranties as to the physical condition, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Real Property or this Auction, which might be pertinent to the purchase of the Real Property, or any portion thereof, including, without limitation, (i) the current or future real estate tax liability,

assessment or valuation of the Real Property; (ii) the potential qualification of the Real Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Real Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Real Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Real Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Real Property; (vi) the current or future rents, other operating income or expenses; (vii) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (viii) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos, any lead paint or other hazardous materials anywhere on the Real Property, or notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued by any governmental department, agency or bureau having authority as to but not limited to lands, housing, buildings, fire, health, environment and labor conditions affecting the Real Property. Each Bidder hereby expressly agrees and acknowledges that no such representations or warranties have been made. The Broker, the Trustee, the Debtor and their respective professionals shall not be liable or bound in any manner by expressed or implied warranties, guarantees, promises, statements, representations or information pertaining to the Real Property, made or furnished by the Broker, the Trustee, or the Debtor or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Broker, the Trustee, or Debtor unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing within these Terms of Sale and Sale Procedures and the Memorandum of Sale.

32. The Real Property being sold "**AS IS**" "**WHERE IS**", "**WITH ALL FAULTS**", without any representations, covenants, guarantees or warranties of any kind or nature, and free and clear of any liens, claims, or encumbrances of whatever kind or nature, with such liens, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the Closing, provided that the Lender's mortgages on the Real Property shall remain on the Real Property if the Lender and the Successful Bidder (or New Successful Bidder, if applicable) agree to keep the Lender's mortgages on the Real Property in accordance with Paragraph 29 above. The sale of the Real Property is subject to, among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions; <u>provided, however</u>, **the Real Property shall be delivered (x) vacant and unoccupied, and (y) free and clear of any and all (A) monetary liens and (B) leases or licenses or rights of any person or entity to use or occupy any portion of the Real Property. Without limiting the foregoing Notwithstanding anything to the contrary, if Lender is the Successful Bidder or New Successful Bidder, any obligation of the Lender to close on any sale of the Real Property pursuant to these Terms of Sale and Sale Procedures is expressly conditioned upon (i) the Trustee's delivery of the Real Property vacant and unoccupied by any person or entity; and (ii) the entry of an order of the Bankruptcy Court, in form satisfactory to the Lender, that the sale of the Real Property is**

8

**free and clear of any and all (A) monetary liens and (B) leases or licenses or rights of any person or entity whatsoever to use or occupy any portion of the Real Property**. By delivering their respective Qualifying Deposits, all Bidders acknowledge that they have had the opportunity to review and inspect the Real Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and inspections of the Real Property in making their bids. Neither the Broker, the Trustee, the Debtor nor any of their collective representatives makes any representations or warranties with respect to the permissible uses of the Real Property including, but not limited to, the zoning of the Real Property. All Bidders acknowledge that they have conducted their own due diligence in connection with the Real Property and are not relying on any information provided by the Broker, the Trustee, the Debtor, or their respective professionals. The Real Property will be sold subject to any and all violations requiring corrective action.

33. The Trustee shall convey the Real Property by delivery of a quitclaim or Trustee deed. The quality of title shall be that which any reputable title insurance company authorized to do business in the State of New York is willing to approve and insure. If the Successful Bidder or the New Successful Bidder, as the case may be, is unable to obtain title insurance, subject to the permissible exceptions contained herein, the Trustee may, at its option, arrange for the issuance of a title insurance policy by such a company at the sole cost and expense of the Successful Bidder, or the New Successful Bidder, as the case may be.

34. Nothing contained in these Terms of Sale and Sale Procedures is intended to supersede or alter any provisions of the "Bankruptcy Code," any ordered entered in the Debtor's chapter 7 bankruptcy case (including, without limitation, the Stipulation and Order Allowing Lender's Claims), or otherwise interfere with the jurisdiction of the Bankruptcy Court. All of the terms and conditions set forth in these Terms of Sale and Sale Procedures are subject to modification as may be directed by the Trustee, with the consent of the Lienholder, or by the Court. The Trustee reserves the right to modify these Terms of Sale and Sale Procedures at the Auction or thereafter to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Court.

35. These Terms of Sale and Sale Procedures will be read into the record, or specifically incorporated by reference, at the Auction of the Real Property. By making a bid for the Real Property all Bidders will be deemed to have acknowledged having read and understood these Terms of Sale and Sale Procedures and have agreed to be bound by them.

36. If the Trustee is unable to deliver the Real Property, in accordance with these Terms of Sale and Sale Procedures for any reason whatsoever, the Trustee's and Broker's only obligation will be to refund the Deposit, without interest, to the Successful Bidder or the New Successful Bidder, as the case may be, and upon such refund, the Successful Bidder or the New Successful Bidder, as the case may be, will have no claim or recourse against the Trustee, the Broker, the Debtor, the Lender, or any of their respective professionals and shall have no further rights under these Terms of Sale and Sale Procedures or Memorandum of Sale.

<u>Sale Hearing</u>

37. The Auction of the Real Property is subject to confirmation by the Trustee and pursuant to a further order of the Bankruptcy Court confirming the results of the Auction.

38. A hearing to approve the sale of the Real Property to the Successful Bidder will be held on _____, 2021 before the United States Bankruptcy Court for the Eastern District of New York, located at _____.

39. The Trustee shall notify the Successful Bidder or the New Successful Bidder, as the case may be, and the Lender whether the Auction is confirmed by the Bankruptcy Court.

40. Neither the Trustee, Trustee's counsel, Broker, the Lender, nor the Debtor's Estate is liable or responsible for the payment of fees or any broker other than the Broker.

41. The Bankruptcy Court shall determine any disputes concerning the Auction of the Real Property. By participating in the Auction, all Bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending case.

I have read these Terms of Sale and Sale Procedures and agree to be bound by them.

By:_____ Date:_____

Print Name: _____

2690015v1 / 010000.1654 / NBEBIRIAN
NBEBIRIAN/2690015.8/010000.1654

# **MEMORANDUM OF SALE – SUCCESSFUL BIDDER**

Bid Realized at Auction: _____
3.5% Buyer's Premium: _____
**Purchase Price:** _____

The undersigned has this _____ 2021, agreed to purchase the Real Property (as defined in the annexed Terms of Sale and Sale Procedures) and sold by Kenneth P. Silverman, Esq., as Chapter 7 Trustee pursuant to the Order of the United States Bankruptcy Court for the Eastern District of New York entered on _____2021 authorizing the sale of the Real Property, for the sum of $_____ DOLLARS and hereby promises and agrees to comply with the annexed Terms of Sale and Sale Procedures concerning the Real Property and this Memorandum of Sale.

_____
SUCCESSFUL BIDDER (Signature)

_____
PRINT NAME

_____
ADDRESS

_____
ADDRESS (City, State, Zip)

_____
TELEPHONE NUMBER

_____
EMAIL ADDRESS

Received from _____ the sum of $_____ DOLLARS, as a non-refundable deposit for the purchase of the Real Property pursuant to the Terms of Sale and Sale Procedures.

Received from _____ the sum of $_____ DOLLARS, as the Buyer's Premium.

This is to verify that the final Purchase Price in the above sale was for the sum of $_____.

_____
[BROKER]

**SUCCESSFUL BIDDER ATTORNEY INFORMATION**

Name _____

Address _____

Phone _____

2690015v1 / 010000.1654 / NBEBIRIAN
NBEBIRIAN/2690015.8/010000.1654

# **MEMORANDUM OF SALE – SECOND HIGHEST BIDDER**

Bid Realized at Auction: _____
3.5% Buyer's Premium: _____
**Purchase Price:** _____

The undersigned has this _____, 2021, agreed to purchase the Real Property (as defined in the annexed Terms of Sale and Sale Procedures) and sold by Kenneth P. Silverman, Esq., the Chapter 7 Trustee of the Debtor for the sum of $_____ DOLLARS in the event of the Successful Bidder's Default and if deemed by the Trustee, in his sole and absolute discretion, and to hold all benefits and obligations of a Successful Bidder under the Terms of Sale and Sale Procedures and this Memorandum of Sale and hereby promises and agrees to comply with the annexed Terms of Sale and Sale Procedures of said Real Property and this Memorandum of Sale.

_____
SECOND HIGHEST BIDDER (Signature)

_____
PRINT NAME

_____
ADDRESS

_____
ADDRESS (City, State, Zip)

_____
TELEPHONE NUMBER

_____
EMAIL ADDRESS

Received from _____ the sum of $_____ DOLLARS, as a non-refundable deposit for the purchase of the Real Property pursuant to the Terms of Sale and Sale Procedures.

Received from _____ the sum of $_____ DOLLARS, as the Buyer's Premium.

This is to verify that the final Purchase Price in the above sale was for the sum of $_____.

This is to verify that the final Purchase Price for the 2nd Highest Bid was in the above sale was for the sum of $_____.

2690015v1 / 010000.1654 / NBEBIRIAN
NBEBIRIAN/2690015.8/010000.1654

_____
[BROKER]

**SECOND HIGHEST BIDDER ATTORNEY INFORMATION**

Name _____

Address _____  Phone: _____